**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **MASTERPIECE CAKESHOP INCORPORATED, a Colorado corporation; and JACK PHILLIPS, Plaintiffs,** | | |
| **Intervening Plaintiffs GRACE HARLEY, Special Forces Of Liberty, SGM JOHN GUNTER JR., Special Forces Of Liberty, 1LT CHRIS SEVIER ESQ., De Facto Attorney Generals, WHITNEY KOHL, Special Forces Of Liberty** | | **Case No: 1:18-cv-02074-WYD-STV** |
| **V.** | | |
| **AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her official and individual capacities; ANTHONY ARAGON, as member of the Colorado Civil Rights Commission, in his official capacity; MIGUEL "MICHAEL" RENE ELIAS, as member of the Colorado Civil Rights Commission, in his official capacity; CAROL FABRIZIO, as member of the Colorado Civil Rights Commission, in her official capacity; CHARLES GARCIA, as member of the Colorado Civil Rights Commission, in his official capacity; RITA LEWIS, as member of the Colorado Civil Rights Commission, in her official capacity; JESSICA POCOCK, as member of** | | |

| the Colorado Civil Rights Commission, in her official capacity; CYNTHIA H. COFFMAN, Colorado Attorney General, in her official capacity; and JOHN HICKENLOOPER, Colorado Governor, in his official capacity, *Defendants*. | | |
|---|---|---|

## MOTION FOR LEAVE TO FILE AND PERMIT AMERICAN FAMILY ASSOCIATION AND WW BRIDAL TO APPEAR AMICUS CURIAE IN SUPPORT OF THE PLAINTIFFS

NOW COMES, WW Bridal and the American Family Association of PA, by and through Counsel, respectfully seeking leave to file *Amicus Curiae*. The attached brief supports the Plaintiffs' causes of action but for reasons that are asserted by the Intervening Plaintiffs. If Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) are unconstitutional and unenforceable against the Plaintiffs, then so are similar proposed statutes in Pennsylvania that put WW Bridal out of business. The *amicus* has an interest in the outcome of this case, since the amicus' profession has been damaged by the threat of enforcement of statutes that are just like Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) in Pennsylvania. See the Declaration of Boucher and the attached timeline of events that but a Mother and her daughters out of business for sticking to their Christian faith, while refusing to convert to the religious moral relativism promoted by the Defendants.

*Amicus* appears to address whether marriage policies must be based on the historic norm as the First Amendment Establishment Clause requires or based on the total equality norm as the Fourteenth Amendment's Equal Protection and Substantive Due Process Clauses require. If gay marriage policies are unconstitutional so are Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev.

Stat. § 24-34-303(1)(b)(I)-(III). The fact of the matter is that any state or federal policy that endorses LGBTQ ideology or treats it as anything other than religious in nature is unconstitutional for failing the prongs of the *Lemon* Test. Alliance Defending Freedom's approach to this case is to float a bunch of emotional appeals that say one thing "poor Jack." It is an emotionally exploitative strategy that is crafted to raise donations. There is nothing wrong with that. But Jack Phillips is not the only victim of statutes like Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III). The story of WW Bridal is far more severe. The Attorney who would represent WW Bridal in Federal District Court, Chris Sevier, cannot even do so because the Tennessee commission targeted him for the same reasons that the Colorado Civil Rights Commission targeted Jack Phillips - he refuses to respect and condone Secular Humanist ideology.

Admittedly, it is a long standing jurisprudence that "a plaintiff is the master of his own complaint." Normally, the *amicus* would wait until a party had filed a motion for summary judgment before filing a brief. However, this brief is timely under the totality of the circumstances because the *amicus*' brief encourages the Plaintiffs to amend their complaint pursuant to FRCP 15 to assert a cause of action against the Defendants that Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) violates the First Amendment Establishment Clause for failing the prongs of the *Lemon* Test.[1] The *Amicus* should be granted

---

[1] What Is The Lemon Test?
*https://soundcloud.com/user-450634204/what-is-the-lemon-test*
To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at 592 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). It is important to understand that government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards*, 482 U.S. 578 at 583; *Agostini v. Felton*, 521 U.S. 203, 218 (1997). In view of the

leave to file because the brief explains how Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev.

Stat. § 24-34-303(1)(b)(I)-(III) fails prong one of *Lemon* in its making.[2]   The *Amicus* should be

---

testimony of ex-gays, medical professionals, and ministers, gay marriage policy, sexual orientation discrimination statutes, transgender bathroom ordinances, and conversion therapy bans violate all three prongs of the Lemon test by a landslide in their making and in their enforcement. It is not a close call. There are millions of taxpayers who believe that all forms of parody marriage are immoral. They also believe that to enable acts of immorality is itself an act of immorality. It is coercive for the tax dollars of non-observers of Secular Humanism to be used to endorse parody marriages that do not involve one man and one woman because it makes them feel culpable of condoning immorality. When a person is legally married they are entitled to what is called a "constellation of benefits" that flows from the general fund. These taxpayers in this State have standing to enjoin the State from making or enforcing parody marriage policy, sexual orientation discrimination statutes, transgender bathroom ordinances, and conversion therapy bans because the policies themselves are (1) a non-secular shams that (2) have the effect of creating an indefensible legal weapon against non-observers of the religion of Secular Humanism, while (3) serving to excessively entangle the government with the religion of Secular Humanism. Policies that promote parody marriages do not accomplish their intended purposes and are based on a series of unproven faith-based assumptions and naked assertions that are implicitly religious and inseparable from the Secular Humanism.

[2] How Does Gay Marriage Policy, Colo. Rev. Stat. § 24-34-601(2)(a), and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III)  Fail Prong One Of The Lemon Test?

*https://soundcloud.com/user-450634204/how-does-gay-marriage-policy-fail-prong-one-of-the-lemon-test*

The State's enforcement of gay marriage policy and the State's enforcement or perspective enforcement of sexual orientation discrimination statutes, transgender bathroom ordinances, or conversion therapy bans violate prong one of *Lemon* because those policies are not "secular" and because they are the ultimate "sham" for purposes of the Establishment Clause, since they have an underlying primary religious objective. At the core of the "Establishment Clause is the requirement that a government justify in secular terms its purpose for engaging in activities which may appear to endorse the beliefs of a particular religion." *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.,* 698 F.2d 1098, 1111 (11th Cir. 1983). This secular purpose must be the "pre-eminent" and "primary" force driving the government's action, and "has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary Cnty, Ky. v. ACLU of Ky.,* 545 U.S. 844 (2005). There are at least seven reasons why legally recognized gay marriage violates prong one of *Lemon* p rovided in motions for summary judgment and *amicus* briefs posted under the tab called "Law for Attorney Generals." First, in the wake of *Obergefell* there has not been a land rush on gay marriage. The raw numbers tell the tale. Prior to the *Obergefell* decision two years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples. Second, gay marriage policies are a total sham because while there has not been a land rush on gay marriage, there has been a land rush on Christian persecution. Third, while their has not been a land rush on gay marriage, there has been a land rush by Secular Humanists to

allowed to file a belief because it provides evidence that Colo. Rev. Stat. § 24-34-601(2)(a) and

Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) fails prong II of *Lemon* for creating an indefensible

legal weapon against all non-observers of the religion of Secular Humanism, not just the

Plaintiffs.[3]  It is obvious to everyone that Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat.

_____

infiltrate elementary schools with the purpose of indoctrinating minors to the Secular Humanism ideology on sex, faith, morality, marriage, and truth. Fourth, the fact that majority in *Obergefell* pretended that gay rights were civil rights like race-based civil right are, when race-based civil rights are actually based on immutability, shows that gay marriage policy and all other pro-gay policies are sham. Fifth, the fact that in the wake of *Obergefell* self-identified homosexuals continue to protest ex-gay conventions because the testimony of ex-gays causes the legal basis behind the fake gay civil rights plight to implode shows that the government's endorsement of LGBTQ ideology is a sham. Sixth, the fact that parody marriages have never been a part of American history and tradition and that gay marriage was basically illegal until *Lawrence v. Texas*,  539 U.S. 558 (2003) recently overturned *Bowers v. Hardwick*, 478 U. S. 186 (1986), and yet the Court pretended otherwise by monkeying with the Fourteenth amendment's Substantive Due Process Clause shows that gay marriage policy is a sham. The purpose of the government's decision to entangle itself with the LGBTQ church was to promote tolerance and equality for a pretend people group, and because the "stated purpose [of the government's entanglement with the LGBTQ church has] not [been] actually furthered...then that purpose [must be] disregarded as being insincere or a sham." *Church of Scientology v. City of Clearwater*,. 2 F.3d 1514, 1527 (11th Cir. 1993).

[3] How Does Gay Marriage Policy, Colo. Rev. Stat. § 24-34-601(2)(a), and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) Fail Prong Two Of The Lemon Test
*https://soundcloud.com/user-450634204/how-does-gay-marriage-policy-fail-prong-two-of-the-lemon-test*
Under this second prong of the *Lemon* t est, courts ask, "irrespective of the . . . stated purpose, whether [the state action] . . has the primary effect of conveying a message that the [government] is advancing or inhibiting religion." *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 771 (7th Cir. 2001). The "effect prong asks whether, irrespective of government's actual purpose," *Wallace v. Jaffree,* 4 72 U.S. 38, 56 n.42 (1985), the "symbolic union of church and state...is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. v. Ball*, 473 U.S. 373, 390 (1985); *see also Larkin v. Grendel's Den*, 459 U.S. 116, 126-27 (1982)(even the "mere appearance" of religious endorsement is prohibited).
In the wake of the *Obergefell* and *Windsor* p utsch, there has not been a land rush on gay marriage, but there has been a land rush by Secular Humanists to persecute Christians for refusing to endorse a religious worldview that non-observers of Secular Humanism believe is self-evidently immoral, obscene, and subversive to human flourishing. While "gay marriage" is "fake marriage," the government's endorsement of homosexual orthodoxy has lead to the "very real" persecution of Christians. The unconstitutional codification of the fake gay civil rights

§ 24-34-303(1)(b)(I)-(III) offend prong two of Lemon but Alliance Defending Freedom because

they have the same financial incentive that the ACLU has for not acknowledging that fact.  The

*amicus* does not care about money. The *amicus* only cares about the same thing that this

Honorable Court should  - justice and strengthening the rule of law.  The *amicus* should be

granted leave because the brief provides arguments for how the enforcement of gay marriage

policy, Colo. Rev. Stat. § 24-34-601(2)(a), and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) violate

prong III of *Lemon* for excessively entangling the government of Secular Humanism.[4]  The Court

---

movement amount to an indefensible "legal weapon that no [Christian or non-observer of
Secular Humanism] can obtain." *City of Boerne v. Flores,* 521 U.S. 507 (1997). A "gay marriage
license" issued by the state amounts to a government issued "license to oppress." That is the
effect of the government's unconstitutional entanglement with the religion of Secular Humanism.
It is an evil that the Establishment Clause does not allow. The CADA statute that Jack Phillips
was sued under violated the Establishment Clause in its making (it took state action to create it)
and in its enforcement for failing prong two of Lemon. Alliance Defending Freedom refused to
make that argument because they are more interested in defending donations and persecution is
good for their business model.

[4] How Does Gay Marriage Policy, Colo. Rev. Stat. § 24-34-601(2)(a), and Colo. Rev. Stat. §
24-34-303(1)(b)(I)-(III), Fail Prong Three Of Lemon?
*https://soundcloud.com/user-450634204/how-does-gay-marriage-policy-fail-prong-three-of-lem
o n*
The State's enforcement of gay marriage policy or its potential enforcement of transgender
bathroom policies, conversion therapy bans, or sexual orientation discrimination statutes
excessive entangles the government with the religion of Secular Humanism because it enshrines
one narrow and exclusive version postmodern western individualistic moral relativism, i.e.
Secular Humanism, as the irrefutable supreme national religion. *In re Young*, 141 F.3d 854 (8th
Cir 1998); *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).
In the wake of the *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and *United States v. Windsor,* 1
33 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) judicial putsch, there has not been a land rush on gay
marriage, but there has been a land rush by Secular Humanists to infiltrate elementary schools
with the purpose of indoctrinating minors to a worldview on marriage, morality, and sex that is
questionably real, moral, decent, and non-secular. The Supreme Court has emphasized that there
are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in
the elementary and secondary public schools," *Lee v. Weisman*, 505 U.S. 577, 592 (1992). The
Federal courts have thus "been particularly vigilant in monitoring compliance with the
Establishment Clause" in the public-school context, see *Edwards v. Aguillard*, 482 U.S. 578, 583
(1987). the legislature has a duty under Article VI to be vigilant as well to keep Secular
Humanists from indoctrinating minors to Secular Humanist's religious worldview. The

"can take judicial notice of legislative facts." *Landell v. Sorrell*, 382 S3d. 91 (2nd Cir. 2004);;

*Lebron v. Secretary of Florida*, 772 F3d 1352 (11th Cir 2014);; Brand v. Motley, 526 F3d 921

(6th Cir. 2008).  Leave to file should be granted because the *amicus* is working with the Special

Forces of Liberty and De Facto Attorney Generals to compel the Colorado House and Senate

introduce an act to be entitled the Marriage And Constitution Restoration Act in a manner that

will better enable the red states and the federal Congress to pass the same the bill in a way that

will cause Colo. Rev. Stat. § 24-34-601(2)(a), Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III), and

gay marriage policy to be done away with for good.[5] In the scheme of things, these proceedings

---

government's endorsement of gay marriage policy has had the effect of entitling Secular
Humanists to impose their religious beliefs on minors in public schools in a manner that
demonstrates that gay marriage policy and sexual orientation statutes are religious shams that
violate the Establishment Clause. Because tax dollars are flowing from the general fund to
finance the distribution of a constellation of benefits to self-identified homosexuals who legally
marry and because there are hundreds of thousands of taxpayers in every state who do not want
to play a role in enabling parody marriages, the enforcement of gay marriage policy fails prong
three of the Lemon Test for excessively entangling the government with the religion of Secular
Humanism and therefore violates the First Amendment Establishment Clause.
What Is Religion Really?
*https://soundcloud.com/user-450634204/what-is-religion-really*
All "religion" amounts to is a a set of answers to the greater questions, like "why are we here"
and "what should humans be doing." "Religion" is, therefore, a set of unproven truth claims and
naked assertions that can only be taken on faith. The Establishment Clause was never designed to
single out "institutionalized religions," like Christianity and Judaism, which tends to parallel
transcultural self-evident truth that serves as the master narrative of the Constitution itself. The
Establishment Clause also was designed - if not more so - to prohibit the government from
legally codifying the truth claims floated by "non-institutionalized religions" as well, to include
the truth claims asserted by the religion of postmodern western moral relativism and expressive
individualism. Currently, "secularism" is having a full blown crisis because "secularism" is a
"religion" in most respects that only pretends to be neutral.
[5]*https://soundcloud.com/user-450634204/the-marriage-and-constitution-restoration-act-summary-overview*
Does the Marriage And Constitution Restoration Act single out gay marriage?
*https://soundcloud.com/user-450634204/does-the-marriage-and-constitution-restoration-act-single-out-gay-marriage*
There are some bills that single out the LGBTQ community or gay marriage. But this is not one
of them. This act does not single out self-identified homosexuals or gay marriage. This act bars

are just a formality.  But because the Judiciary played a huge role in creating this

LGBTQ/transgender nightmare that has damaged the public's health, this Court should get out

ahead of the issues and side with the Plaintiffs by providing them with relief that does not just

impact them, but the entire nation. The governments entanglement with the LGBTQ church is a

ticking time bomb that is going to implode despite the temper tantrums that LGBTQ activists and

dishonest Democrats put on.

The fact of the matter is that continued attempts to arbitrarily limit marriage to two

people in an effort to sneak around the Establishment Clause will no long fly. Attempts to

arbitrarily limit marriage to two people has always been a non-secular sham that is without merit

and is just an excuse for Democrats to entangle the government with the ideology floated by the

largest denomination within the church of Secular Humanism.[6]  With Justice Kennedy stepping

---

the State from endorsing, recognizing, respecting, or favoring any form of marriage that does not involve one man and one woman. This act acknowledges that all citizens can have wedding ceremonies of all kinds and live as married people do. It is simply the case that the government is prohibited from being in the parody marriage business.

[6] Why Can't The States Limit Marriage To Two Consenting People?

*https://soundcloud.com/user-450634204/why-cant-the-state-limit-marriage-to-two-consenting-people*

The Establishment Clause of the First Amendment of the United States Constitution prohibits all of the States from limiting marriage to two consenting adults. It is an arbitrary law state consideration that is undone by the holding in Obergefell and the Fourteenth Amendment if Obergefell was not a sham. Since the Supreme Court pretended that marriage is an "existing right," "individual right," and "fundamental right" based on a "personal choice" for self-identified homosexuals under the Fourteenth Amendment, then it follows that marriage must be an "existing right," "individual right," and "fundamental right" based on a personal choice for self-identified polygamists, zoophiles, and objectophiles as well under the Fourteenth Amendment. Zablocki v. Redhail, 434 U.S. 374, 384 (1978) (fundamental right); Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 63940 (1974) (personal choice); Loving v. Virginia, 388 U.S. 1, 12 (1967) (existing right/individual right); Lawrence v. Texas, 539 U.S. 558 (2003) (intimate choice). Otherwise, gay marriage plight is just a sham that is really barred by the Establishment Clause. The bottom line is that the Secular Humanists on the court are guilty of monkeying with the Fourteenth Amendment in a manner that makes Secular Humanists judges an internalized threat to American Democracy. The attempt by the blue states to limit marriage to two people is

down in the wake of *Masterpiece Cakeshop v. the Colorado Civil Rights Commission*, 584 U. S.

____ (2018), it is game over when it comes to the continuation of what the Honorable Justice

Scalia correctly called an "egotistic….putsch" that constitutes a "threat to American

Democracy."[7] The Plaintiffs should amend the complaint and include an Establishment Clause

claim because the Supreme Court has already recognized that Secular Humanism is a religion.[8]



merely another arbitrary marriage ban that violates the Fourteenth Amendment, if the Obergefell decision was valid. But it was not. The First Amendment has exclusive jurisdiction in informing the states how to respond to all marriage requests that do not involve one man and one woman and how to respond to self-asserted sex-based identity narratives that are questionably real, moral, and decent.

[7] What Was The Real Implication Of The Masterpiece Cakeshop Decision?
*https://soundcloud.com/user-450634204/what-was-the-real-implication-of-the-masterpiece-cake s hop-decision*
The 7 to 2 decision in *Masterpiece Cakeshop v. the Colorado Civil Rights Commission*, 584 U. S. ____ (2018) shows that the decisions in *Obergefell* and *Windsor* were a political ploy and an unprincipled misapplication of the Fourteenth and Fifth Amendments. There is no such thing as "partial civil rights movements." If the "gay civil rights movement" was an actual a "civil rights movement," then Jack Phillips should have been required to defy his religious beliefs and bake the cake for the self-identified homosexual couple. Secular Humanists on the Supreme Court have been behaving like children who have been caught in a lie because they have been exposed for having monkeyed with the Fourteenth Amendment by misapplying it to create law that entangles the government with Secular Humanism. Imaging if after the race-based civil rights movement of the 1960s, blacks could still be barred from military service or they still could be required to ride on the back of the bus. Discrimination on the basis for color is an evil that cuts across aspects of society because unlike sexual orientation it really is based on immutability and genetics. The gay civil rights movement is about Secular Humanists entangling the government with their private code to ratify a moral superiority complex that is dangerous, desensitizing, depersonalizing, dehumanizing, and destructive and most importantly non-secular. The fake gay civil rights movement is an effort by devout moral relativists to use government to explain away the natural feelings of shame and inadequacy that come from engaging in forms of sex that violate the givenness of our nature and the truth about the way things are and the way we are. Instead of trying to make all sides happy, the Federal Court judges should have just done their job by enforcing the Constitution as it was written and not as how devout Secular Humanists wished that it was.

[8] What Is The Religion Of Secular Humanism?
*https://soundcloud.com/user-450634204/what-is-the-religion-of-secular-humanism*
Ex-gays, medical professionals, and licensed ministers have provided testimony under oath in support of this bill that sexual orientation has nothing to do with immutability or the Fourteenth Amendment, but rather, sexual orientation is a religious orthodoxy that is inseparably linked to

the religion of Secular Humanism. The United States Supreme Court (and most of the Federal Courts of appeals) have held that Secular Humanism is religion for purposes of the Establishment Clause. See the Supreme Court decisions in Torcaso v. Watkins, 367 U.S. 488 (1961) and Edwards v. Aguillard, 482 U.S. 578, 583 (1987). ( "Among religions in this country, which do not teach what would generally be considered a belief in the existence of God, are Buddhism, Toaism, Ethical Culture, Secular Humanism, and others." See Also Washington Ethical Society v. District of Columbia, 101 U.S. App. D.C. 371, 249 F. 2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J.Archer, Faiths MenLive By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & P feffer,supra, n.3 ,at 560. Welsh v. U.S, 1970398 U.S. 333 (U.S. Cal. June 15);; Wells v. City and Cnty. of Denver, 257 F.3d 1132 (2001)). There is hardly anything "secular" about the religion of "Secular Humanism." The first amendment was never just designed to single out institutionalized religions to keep the government from respecting its doctrine. The Establishment Clause was designed, if not more so, to prevent moral relativists from using government to enshrine their Secular Humanist dogma. In Real Alternatives, the Seventh Circuit Court of Appeals stated: "w e detect a difference in the "philosophical views" espoused by [the litigants], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in Center for Inquiry, 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." Id. at 872. "These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities." Instead having across or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments,such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closest are baptized gay consists of a series of unproven faith based assumptions that are implicitly religious and take a huge amount of faith to believe are even plausible.  Here is a video on Secular Humanism is a religion. https://www.youtube.com/watch?v=TeSM7cbXSEI;

What Is The Problem With The ACLU And The Freedom From Religion Foundation?
*https://soundcloud.com/user-450634204/what-is-the-problem-with-the-aclu-and-the-freedom-from-religion-foundation*
The ACLU and Freedom From Religion Foundation are constantly pushing to entangle the government with the religion of Secular Humanism that they ardently subscribe to. Both of these organizations are too intellectually blind and dishonest to see or admit that they have been working for decades to entangle the government with their religion - establishing Secular Humanism as the national supreme religion. The problem for the ACLU and the Freedom From Religion Foundation is that the Supreme Court and just about every Circuit Court has held that Atheism is a religion. *Wells v. City and Cnty. of Denver,* 257 F.3d 1132 (2001). The reason why in *Van Orden v. Perry,* 545 U.S. 677 (2005), Justice Breyer in his concurrence stated that "the Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious" because "[s]uch absolutism is not only inconsistent with our national traditions, but would also tend to promote the kind of social conflict the Establishment

The legislatures are recognizing it as well through legislative instruments authored by the Special Forces Of Liberty created directly out of a series of federal actions.

Leave should be granted because this brief seeks to demonstrate that sexual orientation has nothing to do with genetics, science, immutability, the Fourteenth Amendment, Equal Protection, or Substantive Due Process. The Defendants desire to live in a persistent state of denial creates a tab that taxpayers like Jack Phillips should not be required to pay.  Leave should be granted because the *amicus* is defending the integrity of the race-based civil rights movement lead by Pastor Martin Luther King Jr, which the political and Constitutional malpractice of the Defendants threatens.[9] From a medical standpoint, race is based on genetics and immutability. Sexual orientation is not. Leave should be granted because when the Defendants suggest "love is love," it does not mean what the public thinks.[10] This brief ties in with the briefs filed by the

---

Clause seeks to avoid" was because western postmodern moral relativism is a religion whose faith-based dogmatic unproven truth claims cannot be respected through government recognition.

[9]  Anyone who compares the "gay civil rights plight" to the "race-based civil rights plight," whereas the race-based civil rights plight was actually based on immutability, only to not really mean it, has engaged in acts of fraud and racial animus in-kind that manages to be emotionally, intellectually, sexually, and racially exploitative. To oppose the government's unconstitutional endorsement of homosexual ideology is to defend the civil rights movement lead by Pastor Martin Luther King Jr. To embrace the fake gay rights movement is deeply offensive to people of color who were required at one point to walk to school, drink from the colored water fountain, and undergo mistreatment for characteristics that are without question based on genetics and immutability, not emotional faith-based beliefs. If a government official supports the government's endorsement of gay rights, they are refusing to think logically and can be accused of bigotry in-kind. Legislators support this act support the rule of law and the supremacy of the United States Constitution. Those who oppose this act that balances the Free Exercise Clause with the Establishment Clause are on the wrong side of history and reality. While there are thousands of ex-gays, there is no such thing as an "ex-black person." Help us safeguard and restore the integrity of the civil rights movement lead by Dr. Martin Luther King Jr. by standing behind the Marriage And Constitution Restoration Act.

[10] What Does Love Is Love Really Mean?
*https://soundcloud.com/user-450634204/what-does-love-is-love-really-mean*
When people say that "love is love" what they really mean is that they are perfectly ok with

National Alliance of Black Pastors, the Center for Garden State Families, and Doctors Defending

Reparative Therapy, all of which make different points of law and point to different undisputed

facts that will help the Court find the law, as Article III requires.  It is important that this brief be

in the record because it is the position of *Amicus* that for any government official to falsely

equate the gay plight to the race based civil rights movement lead by Pastor Martin Luther King

is an act of intellectual dishonesty that amounts to racism in kind in a manner that manages to be

sexually, intellectually, emotionally, and racially exploitative. It is true that black lives matter

and that all lives matter, and it matters that the race-based civil rights movement not be exploited

by people who are really just advocates for perversion, the erosion of community standards of

decency, and the governments entanglement with a religion that has been the catalyst for most of

the evil since the inception of humanity.[11]  *Amicus* has a vested interest in defending the integrity

---

government assets being used to crush anyone who believes that homosexuality is immoral or subversive to human flourishing. Such a position is categorically "unloving." It is more accurate to say that "love without truth is shallow sentimentality." One thing that the fake gay civil rights movement has managed to prove is that people who are "intolerant" of "intolerant people" are "intolerant;" people who are "judgmental" against "judgmental people" are "judgmental;" people who are "dogmatic" about not being "dogmatic" are themselves "dogmatic." As Justice Kennedy stated in *Masterpiece Cakeshop*, "tolerance has to cut both ways."

[11] Do gay people exist or do only self-identified gay people exist?
*https://soundcloud.com/user-450634204/do-gay-people-exist*
There is no such thing as "homosexuals." There are only some people who "self-identify" as "homosexual" for at least some period of time. While people have the right under the Free Exercise clause to form self-asserted sex-based identity narratives, the Establishment Clause prohibits the government from respecting and recognizing identify narratives that are questionably real, moral, and decent. Sex-based identity narratives are semi-religious in nature. While there are no such thing as "ex-blacks," there are thousands of ex-gays. The First Amendment in balancing the Free Exercise Clause and the Establishment Clause has exclusive jurisdiction in resolving the question as to which marriages the States can recognize and how the States must respond to self-asserted sex-based identify narratives that are questionably real, moral, and have a tendency to erode community standards of decency. It is intellectually, racially, sexually, and emotionally dishonest for Secular Humanists advocate the unprincipled ploy that the Fourteenth Amendment has anything to do with answering how the States must legally define marriage.

of the race-based civil rights movement and in defending ex-gays who have converted to a new identity narrative from being socially marginalized and violently oppressed by intolerant brainwashed Secular Humanists, who do not even believe in objective right and wrong.

Comparing the dilemmas of same-sex couples to the centuries of discrimination faced by Black Americans is a deceptive distortion of our country's culture and history. The disgraces in our nation's history pertaining to the civil rights of Black Americans are unmatched. No other class of individuals, including individuals who are same-sex, objectophilic, or polygamously attracted, have ever been enslaved, or lawfully viewed not as human, but as property.[12] Self-identified homosexuals, polygamists, transgenders, zoophiles and objectofile have never lawfully been forced to attend different schools, walk on separate public sidewalks, sit at the back of the bus, drink out of separate drinking fountains, denied their right to assemble, or denied their voting rights. Id. The legal history of these disparate classifications, i.e., immutable racial discrimination and same-sex attraction, is incongruent. Yet, some devout Moral Relativists in office have mistakenly understated this incongruence to manufacture and mandate the ill-conceived and apparently limitless concept of "marriage equality."

This brief, in-part, focuses on how *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) was a sham because the Supreme Court lacked subject matter jurisdiction to impose gay marriage just as the Defendants cannot impose Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III). This brief makes the case that the Fourteenth and Fifth Amendment Due Process and Equal Protection Clauses have nothing to do with how the states are permitted to

---

[12] *See, e.g.*, Stacy Swimp, *LGBT Comparison of Marriage Redefinition to Historical Black Civil Rights Struggles is Dishonest and Manufactured* (March 7, 2014), (http://stacyswimp.net/2014/03/07/lgbt-comparison-of-marriage-redefinition-to-historical-Black-civil-rights-struggles-is-dishonest-and- manufactured).

define marriage and react to self-asserted sex-based identity narratives that are questionably real,

moral, decent, and have the tendency to erode community standards of decency.  It follows that

if gay marriage policy is unconstitutional and unenforceable under the Establishment Clause

under the "historic norm," then so are Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. §

24-34-303(1)(b)(I)-(III) on the same Constitutional prescription.  A State has no responsibility to

promote any person's sexual proclivities, whether heterosexual, homosexual, or otherwise—and

certainly is not required to accept that one's sexual conduct preference is the same as an

immutable characteristic like race. The Supreme Court in *Obergefell* should have upheld the

State's marriage bans because the underlying legal basis for the marriage bans was the First

Amendment Establishment Clause. Plus the states have a compelling interest to uphold

community standards of decency as the marriage bans and as Jack Phillips has done at great

expense to himself.[13]  If the Attorney General actually understood her job, she would know that

all forms of parody marriage erode community standards of decency and affront the obscenity

---

[13] What Was The Real Purpose Behind The Original Gay Marriage Bans?
*https://soundcloud.com/user-450634204/what-was-the-real-purpose-behind-the-original-gay-ma*
*rriage-bans*
The original legal basis behind State's bans on parody marriages rested on the notion that parody
marriages erode community standards of decency.The State's Constitution and the Supreme
Court of the United States has made it clear that the States have a compelling interest to uphold
community standards of decency. *Paris Adult Theatre I v. Slaton*, 413 US 49 (1973). Courts have
held that "any school boy knows that a homosexual act is immoral, indecent, lewd, and
obscene.Adult persons are even more conscious that this is true." *Schlegel v. United States,* 416
F. 2d 1372, 1378 (Ct. Cl. 1969). The Supreme Court has long since held that "to simply adjust
the definition of obscenity to social realities has always failed to be persuasive before the Courts
of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d
195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56
(1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668,
671 (1966). Community standards do not evolve but groups of people can become desensitized
to objective immorality. While that is a state law argument, what is without question is that all
parody marriage policies and sexual orientation discrimination states fail all three prongs of the
Lemon test and violate the Establishment Clause in their making and in their enforcement.

codes which she is charged to enforce. So does the enforcement of Colo. Rev. Stat. §

24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) because of "sexula orientation"

discrmination.  The fact that the Defendants do not know that homosexual and transgenderism

are obscene, immoral, and non-secular demonstrates that they lack the character fitness to be in

office and are a danger to the public's safety, health, and welfare.  By rejecting the transgenders

and self-identified homosexuals' requests imposed on Masterpiece Cake shop, the *amicus*

believes that the Plaintiffs are fulfilling a narrowly tailored compelling state interest. Anyone

with a semblance of common sense can see that. But the hallmark of the Colorado Civil Rights

Commission is that it is intellectually blind because it has allowed itself to unwisely become

brainwashed through a subscription to the unexamined assumption of the superiority of our

cultural moment. By allowing the *amicus* to file it might illuminate the truth and help the blind

see so that human flourishing can be advanced in a meaningful way in the formation of a more

perfect union. Here is the truth - there is no such thing as "gay people." There are only some

people who self-identify as gay for some period of time. Thousands of those people realize that

they have been duped, having only conformed to society's messages only to discover a great

truth allows them to be set free from the lies floated by the LGBTQ community that the

Defendants promote for self-serving reasons.

"Although there is no formal rule governing the filing of *amicus* curiae briefs, district

courts possess the inherent authority to grant or refuse leave to *amicus* parties." *Georgia*

*Aquarium, Inc. v. Pritzker,* 135 F.Supp.3d 1280 (N.D.Ga.2015). "A district court exercises wide

discretion in deciding whether to grant or deny leave to file an *amicus* brief." *United States v.*

*Board of County Commissioners of the County of Otero,* 184 F.Supp.3d 1097 (D.N.M. 2015).

See also: Brief of an *Amicus Curiae* FRAP Rule 29;; Pleadings Allowed; Form of Motions and

Other Papers FRCP Rule 7. *Amicus* should be granted leave because this case has the potential

to strike down all sexual orientation statutes like Colo. Rev. Stat. § 24-34-601(2)(a) and Colo.

Rev. Stat. § 24-34-303(1)(b)(I)-(III) that exist in other states as the United States First

Amendment Establishment Clause requires based on arguments that the *amicus* and the Special

Forces Of Liberty have been making before a litany of legislative bodies.  While self-identified

homosexuals force homosexual orthodoxy on the whole of America, it will be the testimony of

ex-gays who were transformed by the same God that Jack Phillips worships that will completely

end the governments entanglement with LGBTQ ideology - which does tend to cultivate mental

illness.   Furthermore, leave should be granted because the *amicus* is providing the Constitutional

basis for *Obergefell* to be overruled.  *Obergefell a*nd the enforcement of  Colo. Rev. Stat. §

24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(III) against the Plaintiffs were based

on emotion - nothing more.  Due to their profuse refusal to think logically, the Defendants seem

incapable of understanding that emotional appeals do not allow government actors to usurp the

Establishment Clause.[14]  Perhaps this brief, which seeks to safeguard the integrity of the

---

[14] Do Emotional Appeals Or Sincerity Of Belief Allow The Government To Usurp The
Establishment Clause?
*https://soundcloud.com/user-450634204/do-emotional-appeals-or-sincerity-of-belief-allow-the-g
overnment-to-usurp-the-establishment-clause*
Emotional appeals do not allow the government to usurp the Establishment Clause. When
President Obama came into office, he emphasized that he wanted to appoint Judges to the Court
who would demonstrate empathy. The entire basis for the Supreme Court in *Obergefell t*o force
the government to respect gay marriage policy was predicated on a series of emotional appeals
and naked assertions that were implicitly religious in nature. Justices, like Ginsburg and
Sotomayor, were moved by the the stories of self-identified homosexuals who were dropped off
in the middle of nowhere by taxi cab drivers, denied medical treatment, and assaulted, simply
because they identified as homosexual. While those stories are tragic, they do not justify the
Supreme Court's decision to misuse the Fourteenth Amendment in a manner in which it was
never designed. There are other forms of relief already in place for victims who were wronged

race-based civil rights plight lead by Pastor Martin Luther King might help the Defendants

awaken to transcultural reality about the way things are and the way we are.

Leave should be granted because "Stare Decisis" does not keep *Obergefell v. Hodges,*

135 S.Ct. 2584 (2015) from being overruled for the reasons that the *amicus* and the Special

Forces Of Liberty have been asserting at legislative hearings on the Marriage And Constitution

Restoration Act and in the Courts' records all across the United States. While the Judiciary has

been attempting to circle the wagons to defend an unprincipled ploy for reasons that are

immature, the legislative branch is not having it. The *Obergefell* and *Windsor* decisions were

calculated shams that has caused real suffering - see the declaration of Lisa Bouch from WW

Bridal and Pastor Penkoski.[15]  The Supreme Court found that "questions which merely lurk in the

---

by taxi drivers, hospitals, and assailants. In *Holloman v. Harland,* 3 70 F.3 1252 (11th Cir.
2004), an elementary school teacher required her students to have a moment of silent to start the
day. She had really good emotional and pragmatic reasons for doing so. Yet, the Eleventh Circuit
found that the moment of silence had a primary religious purpose. The effect of the *Holloman*
decision was that emotional appeals do not allow government actors to usurp the Establishment
Clause. The *Windsor* and *Obergefell* Courts allowed emotional and pragmatic appeals to
override the Establishment Clause by pretending that self-identified gay people were a class of
people for purposes of the Fourteenth Amendment. Yet, the truth is that self-identified gay
people are a part of a denominational sect within the over all religion of Secular Humanism.
While there are no such thing as ex-blacks, ex-whites, ex-asians, and ex-hispanics, there are
thousands of ex-gays, whose testimony voids the Federal Courts of Subject Matter and Personal
Jurisdiction under claims brought by self-identified homosexuals under the Fourteenth and Fifth
Amendments. The government cannot respect or recognize the LGBTQ dogma through creating
or enforcing policies because the ideology is based on a series of unproven faith-based
assumptions and naked assertions that are implicitly religious in nature.
[15] Why Can't The States Limit Marriage To Two Consenting People?
*https://soundcloud.com/user-450634204/why-cant-the-state-limit-marriage-to-two-consenting-pe
ople*
The Establishment Clause of the First Amendment of the United States Constitution prohibits all
of the States from limiting marriage to two consenting adults. It is an arbitrary law state
consideration that is undone by the holding in Obergefell and the Fourteenth Amendment if
Obergefell was not a sham. Since the Supreme Court pretended that marriage is an "existing
right," "individual right," and "fundamental right" based on a "personal choice" for
self-identified homosexuals under the Fourteenth Amendment, then it follows that marriage must

record, neither brought to attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc*. 543 U.S. 157 (2004). The Establishment Clause claims were "lurking" in the record but undecided in *Obergefell*. "[Stare Decisis]is at its weakest when [the courts] interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996); *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 94, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of stare decisis ... has only a limited application in the field of constitutional law"). The *amicus* is asking the Honorable District Court in this case to re-interpret the Constitution correctly and to provide relief that Plaintiffs is asking for and then some.[16] Judges and

---

be an "existing right," "individual right," and "fundamental right" based on a personal choice for self-identified polygamists, zoophiles, and objectophiles as well under the Fourteenth Amendment. *Zablocki v. Redhail,* 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974) (personal choice); *Loving v. Virginia,* 388 U.S. 1, 12 (1967) (existing right/individual right); *Lawrence v. Texas*, 539 U.S. 558 (2003) (intimate choice). Otherwise, gay marriage plight is just a sham that is really barred by the Establishment Clause. The bottom line is that the Secular Humanists on the court are guilty of monkeying with the Fourteenth Amendment in a manner that makes Secular Humanists judges an internalized threat to American Democracy. The attempt by the blue states to limit marriage to two people is merely another arbitrary marriage ban that violates the Fourteenth Amendment, if the Obergefell decision was valid. But it was not. The First Amendment has exclusive jurisdiction in informing the states how to respond to all marriage requests that do not involve one man and one woman and how to respond to self-asserted sex-based identity narratives that are questionably real, moral, and decent.

[16] By allowing the *Amicus* filer to submit its brief it can allow to this Honorable Court and the Defendants to do its job under the Article 6 of the United States Constitution which reads:This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.The Senators and Representatives before mentioned, and the members of the several state legislatures, and all

politicians in the other branches are human. They make mistakes. *Amicus*'s brief may help the

Court relegate *Obergefell* to the line of overruled Supreme Court cases that were decided

incorrectly.[17]  None of us are perfect, but we can change course and do what is right. That is the

---

executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution.

[17] Swift v. Tyson, 41 U.S. 1 (1842), overruled by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938). Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138 (1896) held that "equal but separate" segregated facilities were constitutionally permissible. Overruled by Brown v. Board of Education of Topeka, Shawnee County, Kan., 347 U.S. 483, 495, 74 S.Ct. 686, 692 (1954) ("Separate educational facilities are inherently unequal."). Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539 (1905) held that a state statute could not invalidate employer-employee contracts that required more than 60 hours/week of work. Overruled in part by Day-Brite Lighting Inc. v. State of Mo., 342 U.S. 421, 72 S.Ct. 405 (1952); and Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028 (1963). Coppage v. State of Kansas, 236 U.S. 1, 35 S.Ct. 240 (1915) held invalid a state statute that forbade employers to condition employment on a promise not to join a labor union. Overruled in part by Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 61 S.Ct. 845 (1941). Adkins v. Children's Hospital of the District of Columbia, 261 U.S. 525, 43 S.Ct. 394 (1923) invalidated minimum wage statutes. Overruled in part by West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578 (1937). Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443 (1932), overruled in part by Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616 (1938) and Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623 (1938). Minersville School District v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010 (1940) held that a public school could expel pupils who refused to salute the flag because they were Jehovah's Witnesses. Overruled by West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178 (1943).cases overruled after 1 Jan 1960: Minturn v. Maynard, 58 U.S. 477 (1854) held that an agent was barred from suing a principal under admiralty law. Overruled by Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 111 S.Ct. 2071 (1991). Low v. Austin, 80 U.S. 29 (1871), overruled by Michelin Tire Corp. v. Wages, 423 U.S. 276, 96 S.Ct. 535 (1976). Pennoyer v. Neff, 95 U.S. 714 (1878), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569 (1977). Kring v. State of Missouri, 107 U.S. 221 (1883), overruled by Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715 (1990). The Harrisburg, 119 U.S. 199, 7 S.Ct. 140 (1886) held that federal maritime law did not recognize a cause of action for wrongful death. Overruled by Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772 (1970). See also Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199 (1996). Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673 (1895), overruled by South Carolina v. Baker, 485 U.S. 505, 108 S.Ct. 1355 (1988). Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600 (1896), overruled by Hughes v. Oklahoma, 441 U.S. 322, 99 S.Ct. 1727 (1979). Thompson v. State of Utah, 170 U.S. 343, 18 S.Ct. 620 (1898), overruled by Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715 (1990). Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573 (1904), overruled by Dunn v. Blumstein, 405 U.S. 330, 337, n. 7, 92 S.Ct. 995, 1000 (1972) ("To the extent that dicta in that opinion are inconsistent with the test we apply or the result we reach today, those dicta are rejected."). Evans v. Gore, 253 U.S. 245, 40 S.Ct.

550 (1920). Overruled by U.S. v. Hatter, 532 U.S. 557, 121 S.Ct. 1782 (2001).  Quaker City Cab Co. v. Commonwealth of Pennsylvania, 277 U.S. 389, 48 S.Ct. 553 (1928), abrogated by Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 365, 93 S.Ct. 1001, 1006 (1973) ("Quaker City Cab Co. v. Pennsylvania is only a relic of a bygone era. We cannot follow it and stay within the narrow confines of judicial review, which is an important part of our constitutional tradition."). Olmstead v. U.S., 277 U.S. 438, 48 S.Ct. 564 (1928) held that telephone wiretaps are not forbidden by the Fourth Amendment. Overruled by Berger v. State of N.Y., 388 U.S. 41, 64, 87 S.Ct. 1873, 1886 (1967) (Douglas, J., concurring) ("I join the opinion of the Court because at long last it overrules sub silentio Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, and its offspring and brings wiretapping and other electronic eavesdropping fully within the purview of the Fourth Amendment.") and by Katz v. U.S., 389 U.S. 347, 362, n. *, 88 S.Ct. 507, 517 (1967) (Harlan, J., concurring) ("... today's decision must be recognized as overruling Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, which essentially rested on the ground that conversations were not subject to the protection of the Fourth Amendment."). Louis K. Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57 (1928), overruled by North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407 (1973). Sinclair v. U.S., 279 U.S. 263, 49 S.Ct. 268 (1929), overruled by U.S. v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310 (1995). Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310 (1935), overruled by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133 (1988). Aero Mayflower Transit Co. v. Georgia Public Service Commission, 295 U.S. 285, 55 S.Ct. 709, (1935), overruled by American Trucking Associations, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829 (1987). See also American Trucking Associations, Inc. v. Smith, 496 U.S. 167, 110 S.Ct. 2323 (1990). Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645 (1936), overruled in part by Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434 (1971). Puget Sound Stevedoring Co. v. Tax Com'n of State of Washington, 302 U.S. 90, 58 S.Ct. 72 (1937), overruled by Department of Revenue of State of Washington v. Association of Washington Stevedoring Companies, 435 U.S. 734, 98 S.Ct. 1388 (1978). Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754 (1941), overruled in part by Andrews v. Louisville & Nashville Railroad Co., 406 U.S. 320, 92 S.Ct. 1562 (1972). Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920 (1942) held commercial speech had no First Amendment protection. Overruled by Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817 (1976). Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163 (1942), overruled by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133 (1988). Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 65 S.Ct. 347 (1945), overruled by Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640 (2002). House v. Mayo, 324 U.S. 42, 65 S.Ct. 517 (1945) held that the U.S. Supreme Court lacks jurisdiction to review denials of certificates of probable cause. Overruled by Hohn v. U.S., 524 U.S. 236, 118 S.Ct. 1969 (1998). Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546 (1946) held that embezzled money was not taxable as income. Overruled in part by James v.         U.S., 366 U.S. 213, 81 S.Ct. 1052 (1961). Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815 (1947), overruled by Department of Revenue of State of Washington v. Association of Washington Stevedoring Companies, 435 U.S. 734, 98 S.Ct. 1388 (1978). Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198 (1948), disapproved of by Craig v. Boren,

429 U.S. 190, 210, n. 23 (1976) ("Insofar as Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948), may be inconsistent, that decision is disapproved."). International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516 (1949), overruled by Lodge 76, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission, 427 U.S. 132, 96 S.Ct. 2548 (1976). Bryan v. U.S., 338 U.S. 552, 70 S.Ct. 317 (1950), overruled by Burks v. U.S., 437 U.S. 1, 98 S.Ct. 2141 (1978). Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508 (1951), overruled by Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076 (1977). Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182 (1953) held that the Securities Act prohibited arbitration of disputes. Overruled by Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 109 S.Ct. 1917 (1989). U.S. v. Bramblett, 348 U.S. 503, 75 S.Ct. 504 (1955), overruled by Hubbard v. U.S., 514 U.S. 695, 715, 115 S.Ct. 1754, 1765 (1995). Yates v. U. S., 354 U.S. 298, 77 S.Ct. 1064 (1957), overruled by Burks v. U.S., 437 U.S. 1, 98 S.Ct. 2141 (1978). Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344 (1957), overruled by City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513 (1976). Roth v. U.S., 354 U.S. 476, 484, 77 S.Ct. 1304, 1309 (1957) and A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977 (1966) (plurality opinion) held speech was unprotected obscenity if "the material is utterly without redeeming social value." Abrogated by Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615 (1973) (third criteria in Roth changed to: "do not have serious literary, artistic, political, or scientific value."). Forman v. U.S., 361 U.S. 416, 80 S.Ct. 481 (1960), overruled by Burks v. U.S., 437 U.S. 1, 98 S.Ct. 2141 (1978). Jones v. U.S., 362 U.S. 257, 80 S.Ct. 725 (1960), overruled by U. S. v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547 (1980). Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961) held local governments were immune from litigation under 42 U.S.C. § 1983. Overruled by Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018 (1978). Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745 (1963), overruled by Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715 (1992). Parden v. Terminal Railway of Alabama State Docks Dept., 377 U.S. 184, 84 S.Ct. 1207 (1964) held that state-operated railroad could not plead sovereign immunity. Overruled by Welch v. Texas Dept. of Highways and Public Transportation, 483 U.S. 468, 107 S.Ct. 2941 (1987) and College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 119 S.Ct. 2219 (1999). General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564 (1964), overruled by Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue, 483 U.S. 232, 107 S.Ct. 2810 (1987) Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964), overruled by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983). Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824 (1965), overruled by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986). See also Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878 (1986) (per curiam). Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254 (1966), abrogated by Healy v. Beer Institute, Inc., 491 U.S. 324, 109 S.Ct. 2491 (1989). Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869 (1968) held that vertical price fixing was a per se violation of antitrust statutes. Overruled by State Oil Co. v. Khan, 522 U.S. 3, 118 S.Ct. 275 (1997). Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017 (1968), overruled by *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465 (1976). (Usery was later overruled.) *U. S. v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856 (1967),* overruled by Continental *Television, Inc. v. GTE Sylvania Inc., 433 U.S. 36, 97 S.Ct. 2549 (1977). Desist v. U.S.*, 394 U.S. 244, 89 S.Ct. 1030 (1969), disapproved of by *Griffith v.*

*Kentucky,* 479 U.S. 314, 321-322, 107 S.Ct. 708, 712-713 (1987) (agreeing with Justice Harland's dissent in Desist).*Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322 (1969), overruled in part by *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347 (1974). *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683 (1969) held that military personnel could not be tried in military courts for crimes unrelated to their military service. Overruled by *Solorio v. U.S.*, 483 U.S. 435, 107 S.Ct. 2924 (1987). *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072 (1969) held that there was a presumption of vindictiveness (and denial of due process) when the sentence at trial was greater than in a pervious trial or plea bargain. Overruled by *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989). *Durham v. U.S.,* 401 U.S. 481, 91 S.Ct. 858 (1971), overruled by *Dove v. U. S.*, 423 U.S. 325, 96 S.Ct. 579 (1976). *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390 (1972), disagreed with by 44 *Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 516 (1996) ("Without questioning the holding in LaRue, we now disavow its reasoning insofar as it relied on the Twenty-first Amendment."). *Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 94 S.Ct. 517 (1973), overruled by *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 97 S.Ct. 582 (1977). *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800 (1974), overruled in *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874 (1989). *U. S. v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006 (1975), overruled by *U.S. v. Scott,* 437 U.S. 82, 98 S.Ct. 2187 (1978). *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753 (1975) absolutely prohibited tax money being disbursed to religious elementary and secondary schools for education of pupils. Overruled by *Mitchell v. Helms,* 530 U.S. 793, 120 S.Ct. 2530 (2000). *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465 (1976), overruled by *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005 (1985). *Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593 (1977), overruled by *Mitchell v. Helms,* 530 U.S. 793, 120 S.Ct. 2530 (2000). *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586 (1979), abrogated by *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982 (1991). *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908 (1981), overruled by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 (1986). *City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 103 S.Ct. 2481 (1983), overruled by *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791 (1992). *School District of City of Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3216 (1985) and *Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232 (1985) held that teachers paid by taxpayers could not teach in schools operated by religions. Overruled by *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997 (1997). *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169 (1986)*,* overruled by *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791 (1992). *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841 (1986) held valid a Georgia statute that criminalized sodomy between two consenting adults. Overruled by *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472 (2003). *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529 (1987), overruled by *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597 (1991). *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207 (1989), overruled by *Payne v. Tennessee,* 5 01 U.S. 808, 111 S.Ct. 2597 (1991). *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273 (1989), overruled by *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114 (1996). *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084 (1990), overruled by *U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849 (1993). *Metro Broadcasting, Inc. v. F.C.C.,* 497 U.S. 547, 110 S.Ct. 2997 (1990) held that governmental favoritism for some racial groups could be justified if they were "substantially related to achievement of legitimate government interest". Overruled by *Adarand*

point of the brief. The Amicus, like the Defendants, are flawed humans, but they left behind the

lies of the LGBTQ church, converting to a new identity narrative that accords with their

self-evident design.

The Court should grant leave to file because while in the wake of *Obergefell v. Hodges,*

135 S. Ct. 2584 (2015)*,* there has been no landrush on gay marriage, there has been a landrush on

the LGBTQ church to infiltrate elementary schools with the intent of indoctrinating minors to a

worldview on sex that is questionably legal, moral,  and obscene and clearly non-secular. The

Supreme Court has emphasized that there are "heightened concerns with protecting freedom of

conscience from subtle coercive pressure in the elementary and secondary public schools," *Lee v.*

*Weisman,*  505 U.S. 577, 592 (1992), and the federal courts have thus "been particularly vigilant

in monitoring compliance with the Establishment Clause" in the public-school context, see

*Edwards v. Aguillard,* 482 U.S. 578-583 (1987). These "heightened concerns" should compel

this Honorable Court to grant leave for *Amicus*to file so that children can be better safeguarded.

By granting leave, the Court will be in a better position to make the correct decision that

might restore Constitutional integrity and the Court's inherent authority. The *Amicus* does not

want the government telling people who have been seduced into buying into the LGBTQ

ideology that they cannot leave it behind. They can. They can transformed and redeemed, and set

free - just like Dr. Tara King was.  The Democrats have alienated everyone through their brain

dead power grab approach predicated on a series of imperialistic power plays. It is time that the

---

*Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097 (1995), which applied strict scrutiny
standard to all racial classifications. *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047 (1990) held
that a judge alone could impose the death penalty. Overruled by *Ring v. Arizona*, 536 U.S. 584,
122 S.Ct. 2428 (2002), which held that a jury must recommend the death penalty.

Courts tell the truth, and the truth is that the Democrats are going to have to stop pushing identity

politics. The government is going to have to get out of the parody marriage business, and the

government is not going to be allowed to enforce sexual orientation discrimination statutes that

have hurt Jack Phillips and put people like Lisa Bouch from WW Bridal out of business. It is

time to put the Colorado Civil Rights Commission's efforts to entangle the government with

Secular Humanism through coercive targeting of Christians out of business for good.  While gay

marriage is "fake marriage," the persecution of Christians by dishonest government officials like

WW Bridal is very real. This Court needs to put a stop to it. Justice Kennedy saw it. This is why

he stepped down. It was his way of apologizing.  There are no such thing as partial civil rights

movements. Leave should be granted.

/s/Anna C. Little, Esq./
SPECIAL FORCES OF LIBERTY
Attorney at Law
426 Route 36, suite 3
PO Box 382
Highlands, NJ  07732
513-435-1125, 732 391 2134 fax
anna@annaclittleesq.com
www.annaclittleesq.com
Lead Counsel For *Amicus Curiae*
Marriagerestorationact.com
https://www.facebook.com/marriageact/
Specialforcesofliberty.com
https://www.gardenstatefamilies.org/
Gator Six Alpha Tango

/s/Cynthia Burris Esq./
SPECIAL FORCES OF LIBERTY
(843) 822-3505
215 Bulter Court Apt. 215
Chapel Hill, NC 27514
bburris@lynchfoundationforchildren.org
Attorney For *Amicus Curiae*
Marriagerestorationact.com

https://www.facebook.com/marriageact/
Specialforcesofliberty.com
https://www.gardenstatefamilies.org/
Bravo One Zero

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document and attached exhibits were mailed with adequate postage to the Defendants and Plaintiffs in this actions on August 27, 2018 to James A. Campbell ALLIANCE DEFENDING FREEDOM 15100 N. 90th Street Scottsdale, AZ 85260; JESSICA POCOCK, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; ANTHONY ARAGON, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; AUBREY ELENIS, Director Colorado; Civil Rights Commission 1560 Broadway Denver, CO 80202; MIGUEL "MICHAEL" RENE ELIAS, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; CAROL FABRIZIO, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; CHARLES GARCIA, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; RITA LEWIS, Member Colorado Civil Rights Commission 1560 Broadway Denver, CO 80202; CYNTHIA H. COFFMAN Colorado Attorney General Office of the Attorney General Ralph L. Carr Judicial Building 1300 N. Broadway, 10th Floor Denver, CO 80203; JOHN HICKENLOOPER Colorado Governor Office of the Governor 136 State Capitol Building Denver, CO 80203


/s/Anna C. Little, Esq./