# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  1:18-cv-02074-WYD-STV

MASTERPIECE CAKESHOP INCORPORATED, a Colorado
corporation; and
JACK PHILLIPS,

     *Plaintiffs*,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her
official and individual capacities;
ANTHONY ARAGON, as member of the Colorado Civil Rights
Commission, in his official and individual capacities;
MIGUEL "MICHAEL" RENE ELIAS, as member of the Colorado Civil
Rights Commission, in his official and individual capacities;
CAROL FABRIZIO, as member of the Colorado Civil Rights
Commission, in her official and individual capacities;
CHARLES GARCIA, as member of the Colorado Civil Rights
Commission, in his official and individual capacities;
RITA LEWIS, as member of the Colorado Civil Rights Commission, in
her official and individual capacities;
JESSICA POCOCK, as member of the Colorado Civil Rights
Commission, in her official and individual capacities;
AJAY MENON, as member of the Colorado Civil Rights
Commission, in his official and individual capacities;
CYNTHIA H. COFFMAN, Colorado Attorney General, in her official
capacity; and
JOHN HICKENLOOPER, Colorado Governor, in his official capacity,

     *Defendants*.

---

# FIRST AMENDED VERIFIED COMPLAINT

---

**Introduction**

1.     The U.S. Constitution stands as a bulwark against state officials who target people—and seek to ruin their lives—because of the government's anti-religious animus. For over six years now, Colorado has been on a crusade to crush Plaintiff Jack Phillips ("Phillips") because its officials despise what he believes and how he practices his faith.[1] After Phillips defended himself all the way to the U.S. Supreme Court and won, he thought Colorado's hostility toward his faith was over. He was wrong. Colorado has renewed its war against him by embarking on another attempt to prosecute him, in direct conflict with the Supreme Court's ruling in his favor. This lawsuit is necessary to stop Colorado's continuing persecution of Phillips.

2.     Phillips is a Christian and expert cake artist who owns and operates a small family business, Plaintiff Masterpiece Cakeshop Incorporated ("Masterpiece Cakeshop"). Both Phillips and Masterpiece Cakeshop serve everyone. All people—no matter who they are, what they believe, or what protected characteristics they have—are welcome in Phillips's shop and may purchase anything available for sale. But as a devout man of faith, Phillips cannot create custom cakes that express messages or celebrate events in conflict with his religious beliefs.[2] When a customer asks him to create such a cake, he cannot do it, no matter who requests it. Conversely, when someone asks Phillips to design a cake expressing a message or celebrating an event that is not contrary to his faith, he will create it, no matter who requests it. For exercising his faith this way, Colorado has doggedly pursued Phillips, turning his life upside down.

---

[1] Whenever possible, references to "Colorado" should be read to include all Defendants.

[2] Whenever possible, references to "Phillips" should be read to include both Phillips and Masterpiece Cakeshop.

3.      It started when Phillips declined to create a custom wedding cake celebrating a view of marriage that conflicts with his faith's teachings. Colorado punished Phillips for that, while allowing other cake artists—those whose views the state likes—to refuse to create cakes with messages they deem objectionable. Making matters worse, state officials publicly compared Phillips's religious exercise to defenses of slavery and the Holocaust, a deeply offensive accusation against a man whose father helped liberate a concentration camp during World War II.

4.      To punish Phillips, Colorado mandated that he implement comprehensive staff reeducation to teach him and his employees—most of whom are his family members—that it is wrong for him to operate his business according to his faith. The state also ordered him to either violate his religious beliefs or shut down his wedding-cake business. Because Phillips could not turn his back on his faith, he was forced to give up that part of his work, which cost him and his family 40% of their income and caused more than half of his employees to lose their jobs. Phillips also endured death threats and countless hateful phone calls and emails—venomous treatment that escalated with each new wave of media attention. It got so bad that Phillips's wife was afraid to set foot in their family's own shop.

5.      After six grueling years, the Supreme Court vindicated Phillips in a 7-to-2 decision. It declared that Colorado acted with "clear and impermissible hostility toward [his] sincere religious beliefs." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018) ("*Masterpiece*"). The Supreme Court held that the state manifested its anti-religious hostility by "disparag[ing]" Phillips's religion, "describing it as despicable," and enforcing a double standard that harshly punishes Phillips while exonerating other cake artists who similarly decline requests for cakes with messages they deem objectionable. *Id.* at 1729-31.

6. In the meantime, some Colorado citizens, emboldened by the state's prosecution of Phillips, have targeted him. On the same day that the Supreme Court announced it would hear Phillips's case, a Colorado lawyer called his shop and requested a cake designed with a blue exterior and pink interior, which the caller said would visually depict and celebrate a gender transition. Throughout the next year, Phillips received other requests for cakes celebrating Satan, featuring satanic symbols, depicting sexually explicit materials, and promoting marijuana use. Phillips has confirmed that at least one of those requests came from the same Colorado lawyer.

7. Phillips declined to create the cake with the blue and pink design because it would have celebrated messages contrary to his religious belief that sex—the status of being male or female—is given by God, is biologically determined, is not determined by perceptions or feelings, and cannot be chosen or changed. A mere 24 days after Phillips prevailed in the Supreme Court, Colorado told him that he violated Colorado law by declining to create that cake. In so doing, the state went back on what it told the Supreme Court in its *Masterpiece* briefing—that its public-accommodation law *allows* Phillips to decline to create cakes with pro-LGBT designs or themes. Br. for Resp't Colo. Civil Rights Comm'n at 35, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111) (U.S. Oct. 23, 2017). And by citing the *Masterpiece* decision as *support* for the state's renewed efforts to harass Phillips, Colorado ignored the Supreme Court's numerous references to the state's anti-religious bias and hostility.

8. It is now clear that Colorado will not rest until Phillips either closes Masterpiece Cakeshop or agrees to violate his religious beliefs. The state's continuing efforts to target Phillips do not just violate the Constitution; they cross the line into bad faith. This Court should put a stop to Colorado's unconstitutional bullying.

## Jurisdiction and Venue

9.      This civil-rights action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11.      This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57, the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65, the requested damages under 28 U.S.C. § 1343(a)(3), and costs and attorneys' fees under 42 U.S.C. § 1988.

12.      Plaintiffs demand a jury trial on the claims raised in this Complaint.

13.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because all events underlying the claims in this Complaint occurred within the District of Colorado and all Defendants reside in the District of Colorado.

## Plaintiffs

14.      Plaintiff Jack Phillips is a Christian who bases his beliefs on the Bible.

15.      He resides in Colorado and is a citizen of the United States of America.

16.      Together with his wife, he owns and operates Masterpiece Cakeshop Incorporated.

17.      Masterpiece Cakeshop is a for-profit corporation formed under Colorado law.

18.      Masterpiece Cakeshop's principal place of business is located in Colorado.

## Defendants

19.      Aubrey Elenis is the Director of the Colorado Civil Rights Division and has authority to enforce Colo. Rev. Stat. § 24-34-601(2)(a). *See* Colo. Rev. Stat §§ 24-34-302, -306.

20.      Elenis is named as a defendant in her official and individual capacities.

21.     Commissioners Anthony Aragon, Miguel "Michael" Rene Elias, Carol Fabrizio, Charles Garcia, Rita Lewis, Jessica Pocock, and Ajay Menon, as members of the Colorado Civil Rights Commission, have authority to enforce Colo. Rev. Stat. § 24-34-601(2)(a). *See* Colo. Rev. Stat. §§ 24-34-305, -306, -605.

22.     These commissioners are named as defendants in their official and individual capacities.

23.     Colorado Attorney General Cynthia H. Coffman has authority to enforce Colo. Rev. Stat. § 24-34-601(2)(a). *See* Colo. Rev. Stat. § 24-34-306.

24.     Attorney General Coffman is named as a defendant in her official capacity.

25.     Colorado Governor John Hickenlooper has authority to appoint Commission members under Colo. Rev. Stat. § 24-34-303.

26.     Governor Hickenlooper is named as a defendant in his official capacity.

27.     All Defendants reside in the District of Colorado.

## Statement of Facts

### Defendants enforce Colorado's public-accommodation law.

28.     Colorado's Anti-Discrimination Act ("CADA")[3] makes it "unlawful for a person, "directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of … creed … , sex, [or] sexual orientation," "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." Colo. Rev. Stat. § 24-34-601(2)(a).

---

[3] Unless otherwise indicated, "CADA," "the public-accommodation law," and "the law" refer to Colo. Rev. Stat § 24-34-601(2)(a) and its related provisions.

29.     That law defines "[p]erson" as "one or more individuals, limited liability companies, partnerships, associations, corporations, [or] legal representatives." Colo. Rev. Stat. § 24-34-301(5)(a).

30.     That law defines "place of public accommodation" as "any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesale or retail sales to the public." Colo. Rev. Stat. § 24-34-601(1).

31.     Colorado considers Masterpiece Cakeshop a place of public accommodation under Colo. Rev. Stat. § 24-34-601(1).

32.     The public-accommodation law defines "[s]exual orientation" as "an individual's orientation toward heterosexuality, homosexuality, bisexuality, or transgender status or another individual's perception thereof." Colo. Rev. Stat. § 24-34-301(7).

33.     While the public-accommodation law protects "transgender status," it does not protect any person whose gender identity is something other than transgender.

34.     The public-accommodation law exempts some organizations from its requirements. For example, it does not apply to "a church, synagogue, mosque, or other place that is principally used for religious purposes." Colo. Rev. Stat. § 24-34-601(1). The law does not define "place that is principally used for religious purposes."

35.     The public-accommodation law allows a person to make some distinctions based on protected characteristics. For instance, it allows a person to "restrict admission to a place of public accommodation to individuals of one sex if such restriction has a bona fide relationship to

7

the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." Colo. Rev. Stat. § 24-34-601(2)(a).

36.     That law created the Colorado Civil Rights Division ("Division") to help implement its requirements. Colo. Rev. Stat. § 24-34-302(1).

37.     The executive director of the Colorado Department of Regulatory Agencies has the power and duty to appoint a director of the Colorado Civil Rights Division ("Director").

38.     The executive director of the Colorado Department of Regulatory Agencies "shall give good faith consideration to the recommendations of the commission" before appointing the Director. Colo. Rev. Stat. § 24-34-302(1).

39.     The Director has the power and duty to appoint "investigators and other personnel … to carry out the functions and duties" of the Division. Colo. Rev. Stat. § 24-34-302(2).

40.     The Director also has the power and duty to "receive, investigate, and make determinations on charges alleging unfair or discriminatory practices" in violation of the public-accommodation law. Colo. Rev. Stat. § 24-34-302(2).

41.     The public-accommodation law also created the Colorado Civil Rights Commission ("Commission") within the Division. Colo. Rev. Stat. § 24-34-303(1)(a).

42.     The Commission includes "seven members appointed by the governor, with the consent of the senate … for terms of four years." Colo. Rev. Stat. § 24-34-303(1)(b)(I).

43.     The Commission has the power and duty "to adopt, publish, amend, and rescind rules" to help implement the public-accommodation law. Colo. Rev. Stat. § 24-34-305(1)(a).

44.     The Commission has the power and duty "[t]o investigate and study the existence, character, causes, and extent of unfair or discriminatory practices … and to formulate plans for the

elimination of those practices by educational or other means." Colo. Rev. Stat. § 24-34-305(1)(c)(I).

45.     The Commission has the power and duty "[t]o hold hearings upon any complaint issued against a respondent … ; to subpoena witnesses and compel their attendance; to administer oaths and take … testimony … ; and to compel [a] respondent to produce for examination any books and papers" about matters in the complaint. Colo. Rev. Stat. § 24-34-305(1)(d)(I).

46.     The Commission, a commissioner, the attorney general, or any person "claiming to be aggrieved by a discriminatory or unfair practice" may file a charge alleging a discriminatory or unfair practice with the Division. Colo. Rev. Stat. § 24-34-306(1)(a)-(b).

47.     When the Division receives a charge, it must first "notify the respondent of the charges filed against him or her." Colo. Rev. Stat. § 24-34-306(1)(c).

48.     The Director must then "make a prompt investigation of the charge." Colo. Rev. Stat. § 24-34-306(2)(a).

49.     To support the Director's investigations, she "may subpoena witnesses," compel testimony, and order "the production of books, papers, and records" about matters in the charge. Colo. Rev. Stat. § 24-34-306(2)(a).

50.     After completing the Director's investigations, she must "determine as promptly as possible whether probable cause exists for crediting the allegations of the charge." Colo. Rev. Stat. § 24-34-306(2)(b).

51.     At all times, the Division and Director must "presume that the conduct of any respondent is not unfair or discriminatory until proven otherwise." Colo. Rev. Stat. § 24-34-305(3).

52.     If the Director finds probable cause, she must "serve the respondent with written notice stating with specificity the legal authority and jurisdiction of the commission and the matters of fact and law asserted." Colo. Rev. Stat. § 24-34-306(2)(b)(II).

53.     The Director must also "order the charging party and the respondent to participate in compulsory mediation." Colo. Rev. Stat. § 24-34-306(2)(b)(II).

54.     At that point, the Director must "endeavor to eliminate the discriminatory or unfair practice by conference, conciliation, and persuasion and by means of the compulsory mediation." Colo. Rev. Stat. § 24-34-306(2)(b)(II).

55.     If the Director fails to "settle the matter," she must report this to the Commission. Colo. Rev. Stat. § 24-34-306(4).

56.     The Commission then reviews the matter. And if the Commission "determines that the circumstances warrant, it shall issue … a written notice and complaint requiring the respondent to answer the charges at a formal hearing before the commission, a commissioner, or an administrative law judge." Colo. Rev. Stat. § 24-34-306(4).

57.     At all times, the Commission must "presume that the conduct of any respondent is not unfair or discriminatory until proven otherwise." Colo. Rev. Stat. § 24-34-305(3).

58.     At the hearing, the Commission's attorney or agent must present the case "in support of the complaint." Colo. Rev. Stat. § 24-34-306(8).

59.     If the Commission or its assigned decisionmaker concludes "that a respondent has engaged in or is engaging in any discriminatory or unfair practice," the Commission must order respondent "to cease and desist from" this activity and "to take such action as it may order" consistent with the public-accommodation law. Colo. Rev. Stat. § 24-34-306(9).

60. The Commission has used its power to order business owners—including Phillips—to change their policies, to implement comprehensive reeducation programs, and to report to the Commission every declined order.

61. Any party who disagrees with the Commission's final order "may obtain judicial review" by filing an action in the Colorado Court of Appeals. Colo. Rev. Stat. § 24-34-307(1)-(3).

62. The Commission's fact-finding "shall be conclusive if supported by substantial evidence." Colo. Rev. Stat. § 24-34-307(6).

**_Colorado generally allows expressive business owners to decline requests to communicate messages that they will not express for anyone._**

63. The Division and Commission interpret and apply Colorado's public-accommodation law.

64. Colorado claims the power to use its public-accommodation law to compel the speech of people who earn a living creating and selling expression. It believes that the U.S. Constitution, including the First Amendment, provides _no_ protection against the state's use of its public-accommodation law to compel the speech of expressive business owners like Phillips. Br. for Resp't Colo. Civil Rights Comm'n at 19-35, _Masterpiece_, 138 S. Ct. 1719 (2018) (No. 16-111) (U.S. Oct. 23, 2017). All Defendant Commissioners except Commissioner Menon were members of the Commission when the Commission announced this position in its brief filed with the U.S. Supreme Court.

65. To make that extreme view seem more acceptable, Colorado has announced the general rule that expressive business owners, including cake artists, do not violate the public-accommodation law if they decline to create a custom item expressing a message that they would not communicate for anyone.

66.     In the *Masterpiece* case, Colorado told the Supreme Court how this general rule applies to cake artists. All Defendant Commissioners except Commissioner Menon were members of the Commission when the Commission announced this position in its brief filed with the U.S. Supreme Court.

67.     Colorado said that it allows cake artists to decline to create custom cakes featuring pro-LGBT themes or symbols: "[I]f [a cake artist] would not sell a … cake with a particular artistic theme," such as a "cake featuring a symbol of gay pride," "to any customer, regardless of that customer's protected characteristics, he need not sell one to [anyone]." Br. for Resp't Colo. Civil Rights Comm'n at 25, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111) (U.S. Oct. 23, 2017).

68.     Colorado further explained that it allows cake artists to decline to create custom cakes with pro-LGBT designs and messages: "Under the Act, [a cake artist] is free … to *decline* to sell cakes with 'pro-gay' designs or inscriptions." Br. for Resp't Colo. Civil Rights Comm'n at 35, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111) (U.S. Oct. 23, 2017).

69.     And Colorado announced that it allows cake artists to decline to create custom cakes that they consider offensive: "Businesses are entitled to reject orders … because they deem a particular product requested by a customer to be 'offensive.'" Br. for Resp't Colo. Civil Rights Comm'n at 52, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111) (U.S. Oct. 23, 2017).

70.     Colorado applied these principles when William Jack, a man who identifies as Christian, filed discrimination charges against three Colorado cake shops: Azucar Bakery, Le Bakery Sensual Inc., and Gateaux, Ltd.

71.     All three of those complaints arose out of similar facts.

72.     William Jack asked each cake shop to provide quotes for two cakes expressing his religious beliefs against same-sex marriage.

73.     William Jack asked the cake shops to make cakes that looked like Bibles, that bore an image depicting two groomsmen covered with a red "X," and that included Bible verses conveying the religious basis for his opposition to same-sex marriage.

74.     The cake shops refused to make those cakes because their owners objected to those cakes' messages and would not create them for anyone.

75.     William Jack then filed with the Division a discrimination charge against each of those three cake shops alleging that they discriminated against him based on his "creed" in violation of Colo. Rev. Stat. § 24-34-601(2)(a).

76.     The Commission defines "creed" as "all aspects of religious beliefs, observances or practices, as well as sincerely-held moral and ethical beliefs as to what is right and wrong, … ultimate ideas or questions regarding the meaning of existence," and "the beliefs or teachings of a particular religion, church, denomination or sect." 3 Colo. Code Regs. 708-1:10.2.(H).

77.     After completing its investigation, the Division issued determinations finding no probable cause for each of these complaints, even though the cake shops refused a religious person's request to create cakes that expressed a religious belief.

78.     The Division made these determinations because the requested cakes included "wording and images [that the cake shop] deemed derogatory," *Jack v. Gateaux, Ltd.*, Charge No. P20140071X, at 4 (Colo. Civil Rights Div. Mar. 24, 2015), featured "language and images [that the cake shop] deemed hateful," *Jack v. Le Bakery Sensual, Inc.*, Charge No. P20140070X, at 4 (Colo. Civil Rights Div. Mar. 24, 2015), and displayed a message that the cake shop "deemed as

discriminatory," *Jack v. Azucar Bakery*, Charge No. P20140069X, at 4 (Colo. Civil Rights Div. Mar. 24, 2015).

79.     The Division also made these determinations because the cake shops would not create cakes expressing the same message for any other customer.

80.     The Division's determinations in these cases noted that the cake shops would create other cakes expressing different messages for people of faith.

81.     The Commission later affirmed these determinations in June 2015.

82.     Commissioners Aragon, Fabrizio, and Lewis were all members of the Commission at that time.

***Phillips is a cake artist who operates Masterpiece Cakeshop based on his religious beliefs.***

83.     Phillips is a cake artist.

84.     In 1993, Phillips started Masterpiece Cakeshop.

85.     Phillips and his wife are the sole owners of Masterpiece Cakeshop.

86.     Through Masterpiece Cakeshop, Phillips designs and creates custom cakes. These pictures show some custom cakes that Phillips has created:

  



87.     Masterpiece Cakeshop is not just a bakery; it is an art gallery of cakes.

88.     Phillips approaches cake design as an art form.

89.     Phillips blends his skills as a pastry chef, sculptor, and painter to design beautiful, expressive, and artistic custom cakes.

90.     After Phillips and his customer agree on a project, Phillips begins the design and creation process.

91.     Phillips starts by sketching the custom cake design on paper.

92.     Phillips then bakes the cake and sculpts it into the desired form.

93.     Phillips then decorates the cake, using painting and sculpting techniques and inscribing words, numbers, or designs.

94.     When Phillips creates a custom cake that expresses a message, he is engaged in speech.

95.     In addition to being a cake artist, Phillips is a follower of Jesus Christ who bases his religious beliefs on the Bible.

96.     Phillips's religious beliefs are central to his life, his identity, and his understanding of goodness, truth, beauty, morality, and existence.

97.     Phillips believes that everything he does, including how he operates his business, should be done to glorify God. *See* 1 Corinthians 10:31; 2 Corinthians 5:15; Colossians 3:17; 1 Peter 4:11.

98.     Phillips runs Masterpiece Cakeshop based on his religious beliefs.

99.     Phillips's operation of Masterpiece Cakeshop is an exercise of his religion.

100.     Because of his faith, Phillips hosts Bible studies at Masterpiece Cakeshop.

101.     Because of his faith, Phillips welcomes homeless men and women into his store, offers them cookies and brownies free of charge, and befriends them.

102.     Because of his faith, Phillips closes Masterpiece Cakeshop on Sundays, which honors God and allows him and his employees to attend religious worship services.

***Phillips serves all people but will not create cakes that express messages or celebrate events contrary to his religious beliefs.***

103.     Phillips serves all people—individuals of all races, faiths, sexual orientations, and gender identities—and will design and create custom cakes for anyone.

104.     What Phillips cannot do is create cakes that express messages or celebrate events contrary to his religious beliefs.

105.     Phillips's decisions on whether to create a custom cake do not focus on *who* the customer is, but instead depend on *what* the custom cake will express or celebrate.

106.     Neither Phillips nor any staff member at Masterpiece Cakeshop asks customers about their protected characteristics, such as their race, faith, sexual orientation, or gender identity, because those characteristics do not matter to Phillips in deciding whether to accept a custom-cake order.

107.     Phillips believes that he would violate God's commands if he were to create custom cakes that express messages or celebrate events in conflict with his religious beliefs. *See* Ephesians 4:29; Ephesians 5:1-14; 1 Timothy 5:22; 1 Corinthians 10:1-22; 2 Corinthians 6:14-18.

108.     It is standard industry practice for cake artists to decline to create custom cakes that express messages or celebrate events that they do not want to support or that violate their beliefs. For example, numerous bakeries turned down a request to create a "Donald Trump cake" for a nine-year-old boy who wanted that cake for his birthday. Bradford Richardson, *Bakers refused to make pro-Trump birthday cake for 9-year-old boy*, The Washington Times, Aug. 7, 2017, https://www.washingtontimes.com/news/2017/aug/7/bakers-refused-make-pro-trump-birthday-cake-9-year/.

109.     Phillips has declined to create many custom cakes because of the messages that they would have expressed or the events that they would have celebrated.

110.     Because Phillips holds the religious belief that all people are of equal dignity and worth, he has declined—and will continue to decline—to create custom cakes that demean people.

111.     Phillips has declined requests to create custom cakes that demean LGBT people.

112.     Phillips has declined to create custom cakes that express racist views, including white-supremacy ideology.

113.     Phillips has declined to create custom cakes that express hateful, vulgar, or profane messages.

114.     Because of Phillips's religious beliefs, he will not design or create custom cakes celebrating Halloween.

115.    Phillips declines to design or create custom cakes celebrating Halloween even though Halloween cakes are a significant source of income for many cake artists.

116.    Because of Phillips's religious beliefs, he will not design or create custom cakes promoting the use of illegal drugs or other controlled substances like marijuana and alcohol.

117.    Phillips has declined to create custom cakes promoting the use of illegal drugs or other controlled substances like marijuana and alcohol.

118.    Because Phillips's faith teaches him that human life is precious and valuable from conception to natural death, he will not design or create custom cakes that express support for abortion, euthanasia, or assisted suicide.

119.    Because Phillips's faith teaches him that Satan is the cause of great evil and suffering in the world, he will not design or create custom cakes that celebrate or otherwise express support for Satan or satanic themes or beliefs.

120.    Phillips has declined to create custom cakes that celebrate or otherwise express support for Satan or satanic themes or beliefs.

121.    Phillips's religion teaches him that marriage is a lifelong union between one man and one woman.

122.    Phillips will not design or create custom cakes that express or celebrate contrary messages about marriage.

123.    Phillips has declined requests to create custom cakes celebrating divorce and cakes celebrating same-sex marriage.

124.    Phillips will not create such cakes no matter who requests them.

125.    Phillips will create countless other custom cakes for same-sex couples and gay and lesbian individuals.

126.    Phillips also believes as a matter of religious conviction that sex—the status of being male or female—is given by God, is biologically determined, is not determined by perceptions or feelings, and cannot be chosen or changed.

127.    Phillips will not create custom cakes that express or celebrate messages in conflict with these religious beliefs about sex.

128.    Phillips will not create such cakes no matter who requests them.

129.    Phillips will create countless other custom cakes for people who identify as transgender.

130.    To ensure that Phillips does not design or create custom cakes that express messages or celebrate events in violation of his religious beliefs, he reviews every custom-cake request at Masterpiece Cakeshop.

131.    When customers request a custom cake, Phillips or his staff asks them about the kind of cake they want, the desired content, messages, colors, themes, words, and styles, and what event, if any, the cake will celebrate.

132.    While most of Phillips's work involves the creation of custom cakes, he also sells pre-made items like brownies, cookies, coffee, and generic cakes.

133.    Phillips sells those items to anyone who wants them.

134.    Phillips has never declined to sell those items to anyone.

***Phillips associates with and endorses his custom cakes.***

135.    After Phillips creates a custom cake, he typically places it in a box bearing the Masterpiece Cakeshop logo.

136.    This is Masterpiece Cakeshop's logo:



137.    By placing his custom cakes in boxes bearing this logo, Phillips associates with and expresses approval of the cake and any messages it conveys.

138.    Phillips gives the box with the cake to the customer who commissioned it.

139.    When people see Masterpiece Cakeshop's name and logo on a cake box or otherwise learn that Masterpiece Cakeshop created a custom cake, they believe that Phillips does not object to the created cake, to any message that the cake conveys, or to the event that the cake celebrates. They also believe that Phillips supports or endorses the created cake, any message that the cake conveys, and the event that the cake celebrates.

***Colorado begins its practice of treating Phillips worse than other cake artists because it despises his religious beliefs and how he practices his faith.***

140.    Colorado refuses to treat Phillips the same as it treats other cake artists under Colo. Rev. Stat. § 24-34-601(2)(a).

141.    In 2013, the Division found probable cause to believe that Phillips violated this law when he declined to create a custom cake celebrating same-sex marriage.

142.     The Commission then filed a formal complaint against Phillips alleging that he had violated Colo. Rev. Stat. § 24-34-601(2)(a) by declining to create that cake, and it assigned an administrative law judge ("ALJ") to adjudicate the complaint.

143.     After the parties filed cross-motions for summary judgment, the ALJ ruled against Phillips, finding that his decision not to create that cake violated Colo. Rev. Stat. § 24-34-601(2)(a).

144.     The ALJ explained that under Colorado's public-accommodation law "a black baker could … refuse to make a cake bearing a white-supremacist message for a member of the Aryan Nation" and "an Islamic baker could … refuse to make a cake denigrating the Koran for the Westboro Baptist Church" because "[i]n both [of those] cases, it is the explicit, unmistakable, offensive message that the bakers are asked to put on the cake that gives rise to the[ir] … right to refuse."

145.     The Commission affirmed the ALJ's decision.

146.     When ruling in that case, the members of the Commission made comments "endors[ing] the view that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome in Colorado's business community." *Masterpiece*, 138 S. Ct. at 1729.

147.     Religious hostility and bias surfaced at one meeting when a Commission member named Raju Jairam publicly stated "that Phillips can believe 'what he wants to believe,' but cannot act on his religious beliefs 'if he decides to do business in the state.'" *Masterpiece*, 138 S. Ct. at 1729.

148.    The Chair of the Commission at the time—a woman named Katina Banks—agreed with Jairam's comments.

149.    Banks has served on the Board of Directors of the One Colorado Education Fund.

150.    One Colorado is an LGBT advocacy organization that has been an outspoken opponent of Phillips and has filed multiple amicus briefs against him.

151.    Later during the Commission meeting in which Phillips's case was discussed, Jairam went further and stated: "[I]f a businessman wants to do business in the state and he's got an issue with the—the law's impacting his personal belief system, he needs to look at being able to compromise." *Masterpiece*, 138 S. Ct. at 1729.

152.    About two months later, the Commission met again to discuss Phillips's case, and a Commission member named Diann Rice had this to say:

> I would also like to reiterate what we said in the hearing or the last meeting. Freedom of religion and religion has been used to justify all kinds of discrimination throughout history, whether it be slavery, whether it be the holocaust, whether it be—I mean, we—we can list hundreds of situations where freedom of religion has been used to justify discrimination. And to me it is one of the most despicable pieces of rhetoric that people can use to—to use their religion to hurt others.

*Masterpiece*, 138 S. Ct. at 1729.

153.    The other Commission members did not object to those comments, nor did the state disavow those comments in the briefs that it subsequently filed.

154.    The Commission's specific references to the Holocaust were particularly offensive to Phillips because his father was a soldier in World War II who was part of military efforts that liberated a concentration camp.

155.    One of the other Commission members at the time was Heidi Hess. Earlier that same year, Hess publicly tweeted about Phillips's case, religious freedom, and a Colorado bill on civil unions, and in those tweets, she either wrote or retweeted: "I'm really sick of the phrase 'deeply held religious beliefs'"; "So deeply held religious beleifs [sic] that discriminate [are] ok?"; "Woot! The Cake Lawyer is up! #gaycake"; "Freedom OF religion does NOT mean freedom FOR YOUR religion."

156.    Hess is currently the Western Slope Field Organizer for One Colorado.

157.    Governor Hickenlooper sought to keep Hess on the Commission when her term expired in 2017. Jesse Paul & John Frank, *Hickenlooper-appointed LGBT advocate still on civil rights commission despite Colorado GOP lawmakers' vote to block her*, The Denver Post, May 25, 2017, https://dpo.st/2vGyoXw. And when the Colorado Senate refused to confirm her, Governor Hickenlooper declined to appoint anyone else, thereby allowing her to remain on the Commission under a holdover provision. Following this, the legislature amended state law to provide that individuals cannot remain Commission members following the senate's rejection of their nomination. Colo. Rev. Stat. § 24-34-303(b)(IV).

158.    Once the Commission concluded that Phillips had violated the public-accommodation law, it ordered him (1) to stop creating wedding cakes altogether unless he agreed to violate his faith by designing custom cakes celebrating same-sex marriage, (2) to implement comprehensive staff reeducation to teach that Phillips was wrong to operate his business according to his faith, and (3) to provide quarterly compliance reports to the Division identifying the custom-cake requests that Phillips declines and detailing the reasons why.

159.    Because Phillips chose not to violate his religious beliefs, the Commission's order forced him to stop creating wedding cakes altogether, which caused him to lose approximately 40% of his income and most of his employees.

160.    Phillips appealed the Commission's order to the Colorado Court of Appeals.

161.    Around that same time, the Division and Commission issued their determinations in the three cases involving William Jack and his requests for custom cakes with messages criticizing same-sex marriage. Those determinations exonerated the cake artists who declined to create those cakes.

162.    The Colorado Court of Appeals affirmed the Commission's order in Phillips's case.

163.    The Colorado Court of Appeals distinguished Colorado's decision to punish Phillips from its decision not to punish the three cake shops that declined William Jack's requests. Here is what the Court of Appeals said about that:

> The Division found that the bakeries did not refuse [William Jack's] request because of his creed, but rather because of the offensive nature of the requested message. Importantly, there was no evidence that the bakeries based their decisions on the patron's religion, and evidence had established that all three regularly created cakes with Christian themes. Conversely, Masterpiece [Cakeshop] admits that its decision to refuse [a] requested [same-sex] wedding cake was because of its opposition to same-sex marriage which, based on Supreme Court precedent, we conclude is tantamount to discrimination on the basis of sexual orientation.

*Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 282 n.8 (Colo. Ct. App. 2015).

164.    Phillips then asked the Colorado Supreme Court to weigh in, but it declined.

165.    The U.S. Supreme Court granted review on June 26, 2017.

166.    Throughout the nearly six years that this case was litigated, Phillips endured multiple death threats, repeated harassment, and countless hateful phone calls and emails as a result of Colorado's intolerance toward him.

167.   The death threats, harassment, and hateful communications escalated with each new wave of media attention focusing on the case.

168.   The death threats, harassment, and hateful communications got so bad that Phillips's wife was afraid to set foot in Masterpiece Cakeshop.

169.   Phillips also had rocks thrown through the window of Masterpiece Cakeshop.

170.   Because of the threats, harassment, and vandalism, Phillips was forced to install security cameras at Masterpiece Cakeshop to protect himself, his family, his employees, and his customers.

**The Supreme Court rebukes Colorado for its anti-religious hostility toward Phillips.**

171.   On June 4, 2018, the Supreme Court released its decision in *Masterpiece*, which reversed the Colorado Court of Appeals' decision and cemented victory for Phillips by declining to remand the case for further proceedings.

172.   The Court rebuked Colorado for violating Phillips's free-exercise rights by manifesting hostility toward his religious beliefs and failing to act with the religious neutrality that the First Amendment requires.

173.   Colorado showed its anti-religious bias in at least two ways.

174.   First, Colorado discriminated against Phillips's religious beliefs by treating his "religious objection" to creating a custom cake celebrating same-sex marriage worse than the three other cake artists' non-religious "objections" to creating a custom cake criticizing same-sex marriage. *Masterpiece*, 138 S. Ct. at 1730.

175.   The Supreme Court rejected the Colorado Court of Appeals' basis for distinguishing Phillips's case from the cases involving the three other cake artists. It said that "[a]

principled rationale for the difference in treatment of these two instances cannot be based on the government's own assessment of offensiveness," and that "[t]he Colorado court's attempt to account for the difference in treatment elevates one view of what is offensive over another and itself sends a signal of official disapproval of Phillips' religious beliefs." *Masterpiece*, 138 S. Ct. at 1731.

176.   Second, Commission members showed anti-religious hostility when they "disparaged [Phillips's] religion … by describing it as despicable, … by characterizing it as merely rhetorical—something insubstantial and even insincere"—and by comparing Phillips's "religious beliefs to defenses of slavery and the Holocaust." *Masterpiece*, 138 S. Ct. at 1729.

177.   Commission members showed further anti-religious hostility when they made comments "endors[ing] the view that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome in Colorado's business community." *Masterpiece*, 138 S. Ct. at 1729.

178.   Every Justice in *Masterpiece* who opined on the proper interpretation of Colorado's public-accommodation law—including the two dissenting Justices—indicated that cake artists do not violate that law by declining to create cakes that express messages they will not communicate for anyone. Justices Kagan and Breyer expressed that view in their concurrence. 138 S. Ct. at 1733 (Kagan, J., concurring) (it is not unlawful for cake artists to decline a request for an expressive cake that "they would not have made for any customer" because doing that treats the requester "the same way they would have treated anyone else—just as [Colorado's public-accommodation law] requires"); *id.* at 1733 n.* (cake artists do "not engage in unlawful discrimination" when they decline to "sell [a] requested cake[] to anyone"). So did Justices Ginsburg and Sotomayor in their

dissent. *Id.* at 1750 (Ginsburg, J., dissenting) (cake artists do not violate the public-accommodation law by "refus[ing] to make a cake with [a] requested message for any customer" because an individual who requests that message is "treated as any other customer would have been treated—no better, no worse"). As did Justices Gorsuch and Alito in their concurrence. *Id.* at 1735 (Gorsuch, J., concurring) (business owners do not "*intend[]* to refuse service *because of* a customer's protected characteristic" if "they would not sell [a] requested cake[] to anyone").

179.    Despite Phillips's victory at the Supreme Court, he still lost his wedding business as a result of the state's unconstitutional actions, and he is unsure whether he will ever restore it to the prior success he achieved before Colorado launched its unconstitutional crusade against him.

180.    Neither Phillips nor his family has recovered from the distress of Colorado's unconstitutional actions toward them—the death threats, the state's open hostility toward their faith, and the loss of 40% of their family income.

**Colorado continues its practice of treating Phillips worse than other cake artists because it despises his religious beliefs and how he practices his faith.**

181.    Colorado responded to the Supreme Court's stinging rebuke of its anti-religious practices by doubling down on its efforts to punish Phillips.

182.    A mere 24 days after the Supreme Court released its decision in *Masterpiece*, the Division once again issued a probable-cause determination against Phillips for allegedly violating Colo. Rev. Stat. § 24-34-601(2)(a).

183.    The events that gave rise to that probable-cause determination started in June 2017.

184.    On June 26, 2017, the same day that the Supreme Court announced that it would hear the *Masterpiece* case, a Colorado lawyer named Autumn Scardina googled Masterpiece Cakeshop's information and called the shop on the phone.

185.    That lawyer "take[s] great pride" in suing businesses that allegedly "discriminate against lesbian, gay, bisexual, and transgender people and serving them their just desserts." Scardina Law, *Standing up for employees in employment disputes*, https://www.scardinalaw.com/Employment-Disputes.shtml (last visited Oct. 19, 2018).

186.    During this phone call, the lawyer asked Masterpiece Cakeshop to create a custom cake with "a blue exterior and a pink interior"—a cake "design" that, according to the lawyer, "reflect[ed] … the fact that [the lawyer] transitioned from male-to-female and that [the lawyer] had come out as transgender." *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 2 (Colo. Civil Rights Div. June 28, 2018) (attached as Exhibit A).

187.    That custom cake would have expressed messages.

188.    That custom cake would have celebrated an event.

189.    Both the message that the cake would have expressed and the event that it would have celebrated conflict with Phillips's religious beliefs.

190.    Phillips has never created a cake like that one before.

191.    After the lawyer disclosed the design and message of the desired cake, Masterpiece Cakeshop politely declined the request because Phillips cannot in good conscience express the messages that the cake would have communicated and celebrated (i.e., that sex can be changed, that sex can be chosen, and that sex is determined by perceptions or feelings) or celebrate the event that the cake would have commemorated (i.e., the anniversary of a change from one sex to the other based on perceptions and feelings).

192.    The requested cake would have expressed messages to those viewing it—the six to eight people attending the celebration of the anniversary of the lawyer's gender transition—and

those viewers would have understood that the pink and blue design reflected a gender transition, that the cake communicated some or all of the messages that Phillips deemed objectionable, and that the cake communicated celebration for those messages.

193. Phillips would not create a custom cake that expresses those messages for any customer, no matter the customer's protected characteristics.

194. Masterpiece Cakeshop did not decline this request because of the customer's transgender status or other protected characteristic. Rather, it declined the request because of the messages that the cake would have expressed.

195. When Masterpiece Cakeshop told the lawyer that it could not create the requested cake, the lawyer asked the shop's representative to repeat that statement so that someone listening over the speaker phone could hear it.

196. Masterpiece Cakeshop offered to create a different custom cake for the lawyer or to sell the lawyer any of the pre-made items available for purchase in the shop.

197. The lawyer did not request that Phillips create a different custom cake; nor did the lawyer attempt to buy any of the pre-made items available for purchase in the shop.

198. When discussing this cake request, Masterpiece Cakeshop communicated with this lawyer only via telephone.

199. Phillips believes that this lawyer, on other occasions, has requested that he create other custom cakes with messages that violate his faith. Phillips has confirmed through telephone records that he received another call from this lawyer's cell phone requesting a cake celebrating Satan.

200.    About a month later, Phillips received a notice from the Division informing him that the lawyer filed a discrimination charge against him for his decision not to create the cake with the blue and pink design.

201.    The charge alleged that Masterpiece Cakeshop violated Colo. Rev. Stat. § 24-34-601(2)(a)'s prohibition against discrimination "because of" sex and transgender status by declining to create the requested cake.

202.    In that charge, the lawyer wrote that Masterpiece Cakeshop declined an "order for a cake with pink interior and blue exterior, which I disclosed was intended for the celebration of my transition from male to female."

203.    The lawyer's "Statement of Discrimination" said: "They asked what I wanted the cake to look like, and I explained I was celebrating my birthday on July 6, 2017 and that it would also be the 7th year anniversary of my transition from male to female. When I explained I am a transexual and that I wanted my birthday cake to celebrate my transition by having a blue exterior and a pink interior, they told me they will not make the cake based on their religious beliefs."

204.    The attorney also wrote: "I believe that I was not allowed to order a birthday cake because I requested that its color and theme celebrate my transition from male to female."

205.    Phillips responded to this charge by denying the allegations of discrimination and by raising statutory and constitutional defenses.

206.    In his response, Phillips explained that Masterpiece Cakeshop did not decline the custom cake that the lawyer requested "based on the Charging Party's sex or gender identity"; rather, Masterpiece Cakeshop declined the request because the shop "does not create artistic expression addressing [the subject of gender transitions] for any customer."

207.    In his response, Phillips also wrote that the lawyer who requested the cake "is welcome to purchase any of the cake shop's premade items or obtain a different custom cake," and that the lawyer "remains welcome in [the shop] and to all goods and artistic services that [it] offers."

208.    In his response, Phillips also wrote that a Masterpiece Cakeshop employee told the lawyer who requested the cake that the lawyer "is welcome to purchase any of the cake shop's premade items or obtain a different custom cake," just that "the cake shop could not fulfill this particular custom cake request."

209.    The Division rarely finds probable cause to credit a charge of discrimination in the public-accommodation context.

210.    In Fiscal Year 2016-17, the Division issued two probable-cause determinations, and 66 findings of no probable cause. In Fiscal Year 2015-16, the Division issued two probable-cause determinations, and 55 findings of no probable cause. And in Fiscal Year, 2014-15, the Division issued one probable-cause determination, and 55 findings of no probable cause.

211.    On June 28, 2018, a mere 24 days after the Supreme Court released its decision in *Masterpiece*, the Division issued its probable-cause determination against Phillips.

212.    The Division found that the lawyer telephoned Masterpiece Cakeshop and "requested a custom cake," not a pre-made one. *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 2 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

213.    The Division found that the lawyer requested a custom cake with "a blue exterior and a pink interior" and "explained that the design was a reflection of the fact that [the lawyer] transitioned from male-to-female and that [the lawyer] had come out as transgender." *Scardina v.*

*Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 2 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

214.    The Division found that only after Masterpiece Cakeshop learned of the requested design and message did it decline to create the cake. *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 3 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

215.    The Division acknowledged Masterpiece Cakeshop's position that it declined to create that custom cake because Phillips did not want to express through his cake art "the idea that a person's sex is anything other than an immutable God-given biological reality." *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 3 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

216.    But the Division ignored Masterpiece Cakeshop's message-based reason for declining to create the cake; instead, the Division concluded that Masterpiece Cakeshop declined to create the cake "based on [the lawyer's] transgender status." *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 4 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

217.    The Division determined that Masterpiece Cakeshop violated Colo. Rev. Stat. § 24-34-601(2)(a) and ordered Phillips to participate in mandatory mediation. *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 4 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

218.    Director Elenis left no doubt about her position against Phillips when she stated: "I [Director Elenis] determine that [Phillips and Masterpiece Cakeshop] have violated" the public-accommodation law. *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, at 4 (Colo. Civil Rights Div. June 28, 2018) (Ex. A).

219.     Director Elenis cited the Supreme Court's decision in *Masterpiece* in her determination, indicating that she had read and interpreted that decision before she issued her determination.

220.     Director Elenis acted in bad faith when she made this determination.

221.     Director Elenis disregarded the Supreme Court's holding that Colorado is motivated by "clear and impermissible hostility toward [Phillips's] sincere religious beliefs." *Masterpiece*, 138 S. Ct. at 1729.

222.     Director Elenis disregarded that every Justice in *Masterpiece* who opined on the proper interpretation of Colorado's public-accommodation law indicated that cake artists do not violate that law by declining to create cakes that express messages they will not communicate for anyone.

223.     Director Elenis disregarded Colorado's practice of allowing other cake artists to decline requests to create custom cakes that express messages they deem objectionable and would not express for anyone.

224.     Director Elenis disregarded what Colorado represented to the Supreme Court—that cake artists may decline to create cakes with pro-LGBT designs, themes, and messages.

225.     Director Elenis's decision to disregard the Supreme Court's holding in *Masterpiece*, the Supreme Court's view of Colorado's public-accommodation law, Colorado's practice when enforcing its public-accommodation law, and Colorado's representations to the Supreme Court is explainable only by bad faith and animus toward Phillips's religious beliefs.

226.     Phillips has lost and continues to lose work time and profits—he also has incurred and continues incurring expenses—as a result of Director Elenis's determination and the rest of Colorado's unconstitutional conduct toward him.

227.     Phillips has suffered and continues to suffer humiliation, emotional distress, inconvenience, and reputational damage as a result of Director Elenis's determination and the rest of Colorado's unconstitutional conduct toward him.

228.     On October 2, 2018, more than a month and a half after Phillips filed this lawsuit, the Commission met in a private executive session to discuss the lawyer's charge against Phillips, and it voted to notice the matter for a hearing and to file a formal complaint against Phillips.

229.     The Commission could have declined to file a formal complaint, and had it done that, it would have lost jurisdiction over the matter on October 12, 2018, and that would have authorized the complainant lawyer to file "a civil action in the district court for the district in which the alleged discriminatory or unfair practice occurred." Colo. Rev. Stat. § 24-34-306(11).

230.     On October 9, 2018, the Commission filed that Notice of Hearing and Formal Complaint. *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, Notice of Hearing and Formal Complaint (Colo. Civil Rights Comm'n Oct. 9, 2018) (attached as Exhibit B).

231.     The formal complaint names as a respondent not only Masterpiece Cakeshop but also Phillips in his individual capacity. It does this even though the complainant lawyer did not name Phillips as a respondent in the charge of discrimination.

232.     The Commission's recitation of the facts in its formal complaint is entirely one-sided. It ignores practically all of the facts that Masterpiece Cakeshop asserted in response to the

charge and recounts a version of the facts that is even more favorable to the complainant lawyer than what is stated in the lawyer's charge of discrimination.

233.   For example, the Commission's recitation of the facts in its formal complaint ignores the lawyer's statements in the charge of discrimination admitting that the lawyer "disclosed" to Masterpiece Cakeshop that the cake's design "was intended for the celebration of my transition from male to female," that the lawyer told Masterpiece Cakeshop that the lawyer "wanted my birthday cake to celebrate my transition by having a blue exterior and a pink interior," and that the lawyer "requested that its color and theme celebrate my transition from male to female."

234.   Despite the Commission's attempt to slant the facts, its formal complaint still acknowledges that the lawyer "requested a cake with a blue exterior and a pink interior" and explained to Masterpiece Cakeshop that "the design was a reflection of the fact that [the lawyer] had transitioned from male to female and that [the lawyer] had come out as transgender."

235.   The Commission's formal complaint also acknowledges that only after Masterpiece Cakeshop learned of the requested design and message did it decline to create the cake.

236.   The Commission's formal complaint omits the Division's acknowledgement in its probable-cause determination that Masterpiece Cakeshop declined to create that custom cake for a message-based reason—namely, because Phillips did not want to express through his cake art "the idea that a person's sex is anything other than an immutable God-given biological reality."

237.   The Commission's formal complaint leaves no doubt that the Commission members are convinced that Phillips violated the public-accommodation law because the formal complaint unequivocally states that "Masterpiece denied service to [the lawyer] based on her

sexual orientation (transgender status), as defined by § 24-34-301(7), C.R.S. (2018), in a violation of § 24-34-601(2)(a), C.R.S. (2018)."

238.    The Commission's request for relief further assumes that Phillips engages in "practices of discriminating against persons based on their sexual orientation" (including transgender status), and that those practices include "refusing to provide goods and services to persons due to their sexual orientation" (including transgender status).

239.    The Commission members acted in bad faith by proceeding with the formal complaint, particularly because the formal complaint provides a one-sided recitation of the facts that ignores practically all of the facts that Masterpiece Cakeshop asserted in response to the charge of discrimination and recounts a version of the facts that is even more favorable to the complainant lawyer than what is stated in the lawyer's charge.

240.    The Commission members disregarded the Supreme Court's holding that Colorado is motivated by "clear and impermissible hostility toward [Phillips's] sincere religious beliefs." *Masterpiece*, 138 S. Ct. at 1729.

241.    The Commission members disregarded that every Justice in *Masterpiece* who opined on the proper interpretation of Colorado's public-accommodation law indicated that cake artists do not violate that law by declining to create cakes that express messages they will not communicate for anyone.

242.    The Commission members disregarded Colorado's practice of allowing other cake artists to decline requests to create custom cakes that express messages they deem objectionable and would not express for anyone.

243. The Commission members disregarded what they represented to the Supreme Court in the brief that they filed in October 2017—that cake artists may decline to create cakes with pro-LGBT designs, themes, and messages.

244. The Commissioner members' decision to disregard the Supreme Court's holding in *Masterpiece*, the Supreme Court's view of Colorado's public-accommodation law, Colorado's practice when enforcing its public-accommodation law, and their own representations to the Supreme Court is explainable only by bad faith and animus toward Phillips's religious beliefs.

245. Phillips has lost and continues to lose work time and profits—he also has incurred and continues incurring expenses—as a result of the Commission members' formal complaint and the rest of Colorado's unconstitutional conduct toward him.

246. Phillips has suffered and continues to suffer humiliation, emotional distress, inconvenience, and reputational damage as a result of the Commission members' formal complaint and the rest of Colorado's unconstitutional conduct toward him.

### Colorado's current practice is to treat Phillips worse than others because it despises his religious beliefs and how he practices his faith.

247. As a general matter, if a discrimination complaint is filed against a Colorado cake artist for declining to create a custom cake expressing a message he or she opposes, Colorado defers to the cake-shop owner's message-based objection and, consistent with what state law requires, does not "presume" that the owner discriminated against the customer based on his or her protected status. Colo. Rev. Stat. § 24-34-305(3).

248. But if a discrimination complaint is filed against Phillips for declining to create a custom cake expressing a message that conflicts with his faith, Colorado rejects his message-based

objection and presumes that he discriminated against the customer based on his or her protected status.

249.    Colorado does this even though state law requires its enforcement officials to "presume that the conduct of any [person accused of violating the public-accommodation law] is *not* unfair or discriminatory." Colo. Rev. Stat. § 24-34-305(3) (emphasis added).

250.    This unequal treatment confirms Colorado's continuing hostility toward Phillips and his religious beliefs.

251.    Colorado has not disavowed its unequal enforcement policy or its hostile comments toward Phillips's faith, even after the Supreme Court condemned them.

252.    In fact, the Division has released a statement that acknowledges the *Masterpiece* decision but does not disavow either the state's unequal enforcement policy or its hostile comments. *Statement from the Colorado Civil Rights Division*, Colorado Dep't of Regulatory Agencies (June 4, 2018), https://www.colorado.gov/pacific/dora/CCRD-statement-SCOTUS-decision-June-4-2018-Masterpiece-CCRC.

253.    And Defendant Coffman, as the Colorado Attorney General, released a similar statement that acknowledged the *Masterpiece* decision but did not disavow the state's unequal enforcement policy or its hostile comments. *Statement from Attorney General Cynthia H. Coffman*, Attorney General Cynthia H. Coffman (June 4, 2018), https://coag.gov/press-room/press-releases/06-04-18.

254.    Nor has Diann Rice—the former Commission member who said that Phillips's faith is despicable and akin to that of slaveholders and Nazis—recanted. Even after the Supreme Court's decision, she maintains that "she doesn't regret what she said."

255.   In other cases, Colorado continues to manifest the sort of anti-religious hostility that the Supreme Court condemned in *Masterpiece*.

256.   In one case, for example, Colorado similarly labeled a website designer's conservative Christian beliefs "offensive" and "discriminat[ory]." Appellees' Br. at 42, 45-46, *303 Creative LLC v. Elenis*, No. 17-1344 (10th Cir. Feb. 1, 2018).

257.   Colorado still harbors hostility toward Phillips and his religious beliefs.

258.   Some of the current Commission members have publicly exhibited their opposition and even open antagonism toward Phillips.

259.   For example, Commissioner Pocock—a former field coordinator for One Colorado who spearheaded the group's Southern Colorado grassroots efforts—addressed Phillips's first case in a series of January 2013 tweets in which she referred to him as the "cake hater," commented that "apparently cake bakers should be able to discriminate," and retweeted comments about Phillips made by former Commissioner Hess.

260.   The day that Phillips's first case was argued before the Supreme Court, Commissioner Aragon—a former board member of One Colorado—posted on Facebook that "[t]oday's an important day in our Nation's Capital" along with a picture of the White House lit up in rainbow colors.

261.   Commissioner Aragon currently serves with an advocacy group—the National LGBTQ Task Force—that filed an amicus brief against Phillips.

262.   Some of the current Commissioner members, including Commissioners Aragon and Pocock, have publicly described themselves as LGBT "activists."

263.    No reasonable person could think that allowing Phillips to undergo another round of proceedings before the Commission satisfies the appearance of fairness, neutrality, and impartial justice.

264.    Not even Governor Hickenlooper is sure whether Phillips will get a fair proceeding.

265.    When asked about this case and specifically about whether he "think[s] all of the people who come before the Civil Rights Commission get a fair shake," Governor Hickenlooper stated: "I don't have enough information to give you an exact answer there, but certainly that's the goal."

**Colorado prohibits Phillips from telling others the messages that he cannot express because of his religious beliefs and from explaining the religious beliefs that compel him to decline those messages.**

266.    Phillips seeks to inform people about Colorado's continuing hostility toward his religious beliefs.

267.    Phillips will publish, distribute, and display communications that discuss Colorado's continuing hostility toward his religious beliefs, including but not limited to the recent probable-cause determination and formal complaint against him.

268.    Those communications will disclose some of the messages that Phillips cannot express through his cake art because of his religious beliefs.

269.    Those communications will also discuss the religious beliefs that compel Phillips not to express those messages.

270.    The following is an example of what Phillips wants to communicate in written, electronic, and printed form on his website and in the media: "Masterpiece Cakeshop serves all people—no matter who they are or what protected characteristics they have. Our desire to serve

all people is part of our religious beliefs and our calling to love our neighbors. We find great joy in serving our customers and working with people in our community. Often we get custom orders that require us to express messages or celebrate events, and we create the cakes requested in the vast majority of those orders. But because our religious beliefs guide us in all parts of our lives, we cannot create custom cakes that express messages or celebrate events in conflict with our faith. For example, because of our belief in the teachings of the Bible and our reliance on those teachings as the only source of ultimate truth, we cannot create custom cakes that through words, designs, symbols, themes, or images express messages that demean people, celebrate divorce, express racist views, are vulgar or profane, celebrate Halloween, promote use of illegal drugs, marijuana, or alcohol, celebrate gender transitions, or support Satan or satanic themes or beliefs. This list provides examples of some messages that we have declined to express in the past and will decline to express in the future. It is not intended to be exhaustive. Please understand that if we were to express messages that violate our beliefs, we'd be turning our backs on the faith that inspires our lives. We respect your freedom to decline to speak messages that violate your beliefs. We thank you in advance for respecting ours."

271.    But Colorado's interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-701 forbids Phillips from posting the statement in the preceding paragraph on his website.

272.    Colo. Rev. Stat. § 24-34-601(2)(a) makes it unlawful for a person, "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public

accommodation will be refused, withheld from, or denied an individual … because of … sexual orientation," which includes transgender status, and "creed," which includes Satanism and satanic beliefs. Colo. Rev. Stat. § 24-34-601(2)(a).

273.    Colo. Rev. Stat. § 24-34-601(2)(a) also makes it illegal for a person, "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates … that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of … sexual orientation," which includes transgender status, and "creed," which includes Satanism and satanic beliefs. Colo. Rev. Stat. § 24-34-601(2)(a).

274.    Colo. Rev. Stat. § 24-34-601(2)(a) nowhere defines "unwelcome," "objectionable," "unacceptable," or "undesirable."

275.    Colo. Rev. Stat. § 24-34-701 provides that no person shall publish, distribute, or display "any communication … [1] that is intended or calculated to discriminate or actually discriminates against any … creed … [or] sexual orientation," which includes transgender status, "or against any of the members thereof in the matter of furnishing or neglecting or refusing to furnish to them or any one of them any lodging, housing, schooling, or tuition or any accommodation, right, privilege, advantage, or convenience offered to or enjoyed by the general public or [2] which states that any of the accommodations, rights, privileges, advantages, or conveniences of any such place of public accommodation, resort, or amusement shall or will be refused, withheld from, or denied to any person or class of persons on account of … creed … [or] sexual orientation," which includes transgender status, "or [3] that the patronage, custom, presence, frequenting, dwelling, staying, or lodging at such place by any person or class of persons

belonging to or purporting to be of any particular … creed … [or] sexual orientation," which includes transgender status," "is unwelcome or objectionable or not acceptable, desired, or solicited." Colo. Rev. Stat. § 24-34-701.

276.    Colo. Rev. Stat. § 24-34-701 nowhere defines "unwelcome," "objectionable," or "not acceptable, desired, or solicited."

277.    Any person who violates Colo. Rev. Stat. § 24-34-701 "is guilty of a misdemeanor" for "each and every violation thereof" and "shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the country jail for not less than thirty days nor more than ninety days, or by both such fine and imprisonment." Colo. Rev. Stat. § 24-34-705.

278.    Colorado forbids Phillips from publishing, distributing, or displaying any communication indicating that Phillips will not create custom cakes communicating that sex can be changed, that sex can be chosen, or that sex is determined by perceptions or feelings, or custom cakes celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs.

279.    Colorado also forbids Phillips from publishing, distributing, or displaying any communication discussing the religious beliefs that compel Phillips not to express those messages.

280.    Colorado's interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-701 under these circumstances restricts Phillips's freedom to communicate about the messages that he will not express through his custom cakes and the religious beliefs that compel him not to express those messages.

281.    Colorado's interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-701 under these circumstances has caused Phillips to chill his speech

on his website and in the media about the messages that he will not express through his custom cakes and the religious beliefs that compel him not to express those messages.

282.    Colorado discriminates based on content and viewpoint in its application of Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-701.

283.    Businesses do not violate Colorado law if they publicize their beliefs that sex can be changed, that sex can be chosen, or that sex is determined by perceptions or feelings, or if they publicize their desire to express those beliefs through the custom items they create.

284.    Businesses do not violate Colorado law if they publicize their desire not to express messages supporting a "cisgender" celebration or any gender identity other than transgender since the public-accommodation law forbids discrimination because of "transgender status" but does not protect any gender identity other than transgender. Colo. Rev. Stat. § 24-34-301(7).

285.    Nor do businesses violate Colorado law if they publicize their support for or desire to celebrate Satan or satanic themes or beliefs, or if they publicize their desire to express those messages through the custom items they create.

***Colorado rigs the system against people of faith like Phillips.***

286.    Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(II) prescribes non-neutral criteria for selecting Commission members and assigns them non-neutral interests to represent.

287.    All Commissioner members—both present and future—are assigned non-neutral interests that they must represent.

288.    Commissioner Fabrizio and Lewis represent the interests of the business community. One of the Commission members who replaces them must represent a small business, and the other one must represent a large business. Colo. Rev. Stat. § 24-34-303(1)(b)(I)(A).

289.     Commissioner Aragon represents the interests of government entities. His government role is serving as the LGBTQ Liaison for the Mayor of Denver, staffing the Denver LGBTQ Commission, and functioning as Senior Advisor on the Community Affairs team in Denver's Agency for Human Rights and Community Partnerships who focuses on outreach efforts to the LGBTQ community.

290.     The Commission member who replaces Commissioner Aragon must either "represent[] a statewide chamber of commerce or other statewide organization representing business and industry" or "represent[] employee associations that represent workers in Colorado." Colo. Rev. Stat. § 24-34-303(1)(b)(I)(B).

291.     Commissioner Menon represents the interests of government entities. The Commission member who replaces him must either "represent[] a statewide chamber of commerce or other statewide organization representing business and industry" or "represent[] employee associations that represent workers in Colorado." Colo. Rev. Stat. § 24-34-303(1)(b)(I)(B).

292.     Commissioners Elias, Garcia, and Pocock represent the community at large. One of the Commission members who replaces them must also represent the community at large, and the other two must "represent[] employee associations that represent workers in Colorado." Colo. Rev. Stat. § 24-34-303(1)(b)(I)(C).

293.     The Commission must be chosen according to certain selection criteria. At all times, the Commission must include at least four Commission members who are "members of groups of people who have been or who might be discriminated against because of disability, race, creed, color, sex, sexual orientation, national origin, ancestry, marital status, religion, or age." Colo. Rev. Stat. § 24-34-303(1)(b)(II)(A).

294.   Governor Hickenlooper administers and enforces Colo. Rev. Stat. § 24-34-303 by appointing Commission members.

295.   For nearly the last eight years, every member of the Commission has been appointed by Governor Hickenlooper.

296.   Upon information and belief, during the last six years, the Commission has not had a Christian member who shares Phillips's religious beliefs about marriage and sex.

297.   Upon information and belief, during the last six years, the Commission has not had any religious member who believes that marriage is the union of one man and one woman and that sex is given by God and cannot be chosen or changed.

298.   In contrast, Governor Hickenlooper has appointed many Commission members—including current members—who are openly hostile or opposed to Phillips, his religious beliefs, and his religious practices.

299.   The Commission's non-neutral selection criteria, its assignment of non-neutral interests for each Commission member to represent, the absence of members who share Phillips's religious beliefs, and the presence of members (including current members) who are openly hostile or opposed to Phillips, his religious beliefs, and his religious practices played a role in creating—and have served to entrench—the Commission's hostility toward Phillips's religious beliefs.

300.   The Commission's non-neutral selection criteria and its assignment of non-neutral interests for each Commission member to represent embed bias into the very structure that Colorado uses to enforce its public-accommodation law.

301.   That bias has manifested itself in Colorado's unconstitutional treatment of Phillips.

***Phillips's future as a cake artist is threatened.***

302.    The way in which Colorado enforces its public-accommodation law against Phillips empowers anyone to harass and prosecute him by simply requesting a cake with a message that conflicts with his faith on a topic that implicates one of the classifications protected under that law.

303.    Based on Colorado's past conduct, Phillips reasonably fears that discrimination charges will continue to be filed against him and that he will continue to face punishment from biased state officials.

304.    Since June 2017, Phillips has declined several requests to create custom cakes because of the messages that they would have communicated or the events that they would have celebrated.

305.    Phillips believes that many of these requests are not genuine; rather, they are setups designed to get him to decline the desired message.

306.    Phillips believes that the originator of a number of these requests is attorney Autumn Scardina.

307.    In late September 2017, someone emailed Phillips asking for a custom cake "to celebrate" Satan's "birthday."

308.    The customer requested that the cake have "red and black icing" and include "an upside down cross, under the head of Lucifer."

309.    The customer described the cake as "religious in theme" and reminded Phillips that "religion is a protected class."

310.    Phillips declined to create that cake because it included designs that would have expressed messages in violation of his religious beliefs.

311.    A few days later, someone called Phillips asking for a similar custom cake.

312.    Phillips noticed that "Scardina" appeared on the caller-identification screen.

313.    Telephone records confirm that the call came from Autumn Scardina's cell phone.

314.    The caller asked Phillips to create a "birthday" cake for Satan.

315.    The caller requested that the cake feature a red and black theme and an image of Satan smoking marijuana.

316.    Phillips declined to create that cake because it included designs that would have expressed messages in violation of his religious beliefs.

317.    On June 4, 2018, the day that the Supreme Court issued its *Masterpiece* decision, someone emailed Phillips claiming to be "a member of the Church of Satan."

318.    That person asked for the following custom cake:

> I'm thinking a three-tiered white cake. Cheesecake frosting. And the topper should be a large figure of Satan, licking a 9" black Dildo. I would like the dildo to be an actual working model, that can be turned on before we unveil the cake. I can provide it for you if you don't have the means to procure one yourself.

319.    Phillips declined to create that cake because it included designs that would have expressed messages in violation of his religious beliefs.

320.    A few weeks later, two people visited Masterpiece Cakeshop and asked for a custom cake with a pentagram, a symbol commonly linked to witchcraft.

321.    When Phillips asked for the customers' names, one responded "Autumn Marie."

322.    Phillips originally believed that customer was Autumn Scardina, but after seeing Scardina in person on August 16, 2018, he no longer thinks that that customer was Scardina.

323.     Phillips declined to create that cake because it included designs that would have expressed messages in violation of his religious beliefs.

324.     The requested satanic cakes would have expressed messages to those viewing them, and those viewers would have understood that the cakes communicated, among other things, messages supporting Satan, Satanism, or satanic themes or beliefs.

325.     Colorado interprets and enforces CADA to forbid Phillips from declining the requests for satanic cakes that he has received.

326.     When discussing this case, Governor Hickenlooper said that "just because you don't agree with someone's religion," you should not "be able to deny them service."

327.     Whether sincere inquiries or setups, Phillips will keep receiving and declining requests for custom cakes expressing messages in conflict with his faith.

328.     Colorado's actions in crediting and pursuing these claims is encouraging and enabling people to continue to file these claims against Phillips.

329.     So long as Colorado remains hostile to Phillips because it despises his religious beliefs and practices, Phillips's future as a cake artist is in jeopardy.

330.     Phillips cannot remain a cake artist if Colorado continues to declare that he is in violation of the public-accommodation law whenever someone wanting to harass him for his religious beliefs files a discrimination charge after requesting a custom cake that expresses a message in conflict with Phillips's beliefs about a subject that relates to a protected classification.

## Legal Allegations

331.     Phillips and Masterpiece Cakeshop are subject to and must comply with Colorado laws, including the public-accommodation law.

332.    Defendants acted under color of a Colorado statute, ordinance, regulation, custom, or policy when committing all of the acts alleged in this Complaint.

333.    Defendants' treatment of Phillips and Masterpiece Cakeshop under Colorado's public-accommodation law violates their constitutional rights.

334.    Defendants' treatment of Phillips and Masterpiece Cakeshop under Colorado's public-accommodation law prevents them from exercising their constitutional rights.

335.    Phillips and Masterpiece Cakeshop suffer ongoing irreparable harm as well as economic and non-economic injury, including emotional distress and other compensable damages, from Defendants' conduct.

336.    Unless Defendants' conduct is enjoined, Phillips and Masterpiece Cakeshop will continue suffering irreparable harm as well as economic and non-economic injury, including emotional distress and other compensable damages.

337.    Director Elenis and Defendant Commission members acted and are continuing to act intentionally either with malice or reckless indifference to Phillips's and Masterpiece Cakeshop's constitutional rights.

338.    Director Elenis and Defendant Commission members acted and are continuing to act in bad faith and with hostility and animus toward Phillips and Masterpiece Cakeshop.

339.    Phillips and Masterpiece Cakeshop seek punitive damages against Director Elenis and Defendant Commission members in order to deter them and others similarly situated from engaging in similar conduct in the future.

**First Cause of Action: Free Exercise of Religion**

340.    Plaintiffs restate each allegation contained in Paragraphs 1 through 339 of this Complaint.

341.    Defendants interpret and enforce Colo. Rev. Stat. § 24-34-601(2)(a) to require Phillips and Masterpiece Cakeshop to violate their religious beliefs by creating custom cakes that express messages in conflict with their faith, including but not limited to the gender-transition and satanic cakes that they declined to create.

342.    The First Amendment to the U.S. Constitution protects Phillips's and Masterpiece Cakeshop's rights to freely exercise their religion.

343.    The First Amendment protects Phillips and Masterpiece Cakeshop from government hostility, targeting, and discrimination because of their religious beliefs and practices.

344.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) targets, shows hostility toward, and discriminates against Phillips and Masterpiece Cakeshop because of their religious beliefs and practices.

345.    The First Amendment requires Defendants to act in a neutral and generally applicable manner toward Phillips and Masterpiece Cakeshop and their religious beliefs and practices. "The Free Exercise Clause bars even '*subtle* departures from neutrality' on matters of religion," and its protection applies "upon even *slight* suspicion that … state [actions] stem from animosity to religion or distrust of its practices." *Masterpiece*, 138 S. Ct. at 1731 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534, 547 (1993)) (emphasis added).

346.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) is neither neutral nor generally applicable toward Phillips and Masterpiece Cakeshop and their religious beliefs and practices. Defendants' actions are not just subtle departures from neutrality; they are blatantly and brazenly hostile toward religion.

347.    The First Amendment also protects Phillips's and Masterpiece Cakeshop's rights to operate consistently with their religious beliefs, to decline to operate in violation of their religious beliefs, to express messages that are consistent with their religious beliefs, and to decline to express messages that conflict with their religious beliefs.

348.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) prevents Phillips and Masterpiece Cakeshop from operating consistently with their religious beliefs, from declining to operate in violation of their religious beliefs, from speaking their religiously motivated messages, from declining to speak messages that would violate their religious beliefs, and from adhering to key aspects of their faith.

349.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) has created a system of individualized exemptions that, on a case-by-case basis, allows some cake artists to decline to create custom cakes expressing messages that they do not want to communicate but that withholds that freedom from Phillips and Masterpiece Cakeshop when they decline to express messages for religious reasons.

350.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) violates the hybrid-rights doctrine.

351.     Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) imposes severe coercive pressure on Phillips and Masterpiece Cakeshop to change or violate their religious beliefs or exercise.

352.     Defendants do not further any compelling or even legitimate interest in a narrowly tailored way by infringing on Phillips's and Masterpiece Cakeshop's free-exercise rights.

353.     Phillips and Masterpiece Cakeshop suffer ongoing harm because of Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a).

354.     Accordingly, as applied to Phillips and Masterpiece Cakeshop, Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) violates Phillips's and Masterpiece Cakeshop's First Amendment right to freely exercise their religion.

### Second Cause of Action: Free Speech

355.     Plaintiffs restate each allegation contained in Paragraphs 1 through 339 of this Complaint.

356.     The First Amendment to the U.S. Constitution protects Phillips's and Masterpiece Cakeshop's rights to speak, to decline to speak, to create speech, to decline to create speech, to distribute speech, to sell speech, to operate an expressive business, to associate with others for the purpose of engaging in expression, to decline to associate with others for the purpose of engaging in expression, to be free from content and viewpoint discrimination, to be free from unconstitutional conditions, to be free from vague laws giving unbridled discretion to government officials, and to be free from overbroad laws regulating speech.

357.     Phillips and Masterpiece Cakeshop engage in protected expression.

358.    Phillips and Masterpiece Cakeshop are constitutionally protected speakers when they create custom cakes that express messages.

359.    The gender-transition and satanic cakes that Phillips and Masterpiece Cakeshop declined to create are protected expression.

360.    The gender-transition and satanic cakes expressed messages to those who would have viewed them.

361.    The viewers of the gender-transition and satanic cakes would have understood that those cakes communicated the messages that Phillips and Masterpiece Cakeshop deem objectionable.

362.    The first clause of Colo. Rev. Stat. § 24-34-601(2)(a) makes it "unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of" a protected classification like transgender status or creed, "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

363.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s first clause infringes Phillips's and Masterpiece Cakeshop's First Amendment free-speech rights.

364.    It does so by forcing Phillips and Masterpiece Cakeshop to speak and create custom expressive cakes that communicate messages in violation of their religious beliefs. This includes the gender-transition and satanic cakes that Phillips and Masterpiece Cakeshop declined to create.

365.    It also does so by pressuring Phillips and Masterpiece Cakeshop to stop speaking and creating custom expressive cakes altogether in order to avoid violating their religious beliefs.

366.     Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s first clause is both content and viewpoint based in application.

367.     Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s first clause also infringes Phillips's and Masterpiece Cakeshop's First Amendment freedom of expressive association.

368.     It does so by forcing Phillips and Masterpiece Cakeshop to collaborate and associate with others in order to create and disseminate expression that violates their religious beliefs.

369.     Forcing Phillips and Masterpiece Cakeshop to create and disseminate expression that violates their religious beliefs significantly impairs their ability to express their desired messages.

370.     Phillips and Masterpiece Cakeshop suffer ongoing harm because of Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s first clause.

371.     The second clause of Colo. Rev. Stat. § 24-34-601(2)(a) makes it unlawful for a person, "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual … because of" a protected classification like transgender status or creed.

372.     Similar language appears in Colo. Rev. Stat. § 24-34-701.

373.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s second clause and Colo. Rev. Stat. § 24-34-701 infringes Phillips's and Masterpiece Cakeshop's First Amendment free-speech rights.

374.    It does so because Defendants interpret Colo. Rev. Stat. § 24-34-601(2)(a)'s second clause and Colo. Rev. Stat. § 24-34-701 to prohibit Phillips and Masterpiece Cakeshop from speaking about their religious beliefs and the messages that they cannot express as a result of those religious beliefs. In particular, Defendants interpret those provisions to prohibit Phillips and Masterpiece Cakeshop from announcing that they will not create custom cakes communicating that sex can be changed, that sex can be chosen, or that sex is determined by perceptions or feelings, or custom cakes celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs. Nor may Phillips or Masterpiece Cakeshop explain their religious reasons for declining to speak those messages.

375.    The third clause of Colo. Rev. Stat. § 24-34-601(2)(a) makes it unlawful for a person, "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates … that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of" a protected characteristic like transgender status or creed.

376.    Similar language appears in Colo. Rev. Stat. § 24-34-701.

377.    Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause and Colo. Rev. Stat. § 24-34-701 infringes Phillips's and Masterpiece Cakeshop's First Amendment free-speech rights.

378.   It does so because Colorado interprets Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause and Colo. Rev. Stat. § 24-34-701 to prohibit Phillips and Masterpiece Cakeshop from speaking about their religious beliefs and the messages that they cannot express as a result of those religious beliefs. In particular, Defendants interpret those provisions to prohibit Phillips and Masterpiece Cakeshop from announcing that they will not create custom cakes communicating that sex can be changed, that sex can be chosen, or that sex is determined by perceptions or feelings, or custom cakes celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs. Nor may Phillips or Masterpiece Cakeshop explain their religious reasons for declining to speak those messages.

379.   Colo. Rev. Stat. § 24-34-701 forbids a person from publishing, distributing, or displaying "any communication …that is intended or calculated to discriminate or actually discriminates against any … creed … [or] sexual orientation," which is defined to include transgender status, "or against any of the members thereof in the matter of furnishing … any accommodation … offered to or enjoyed by the general public." Colo. Rev. Stat. § 24-34-701.

380.   Defendants' interpretation and enforcement of this part of Colo. Rev. Stat. § 24-34-701 infringes Phillips's and Masterpiece Cakeshop's First Amendment free-speech rights.

381.   It does so because Colorado interprets that part of Colo. Rev. Stat. § 24-34-701 to prohibit Phillips and Masterpiece Cakeshop from speaking about their religious beliefs and the messages that they cannot express as a result of those religious beliefs. In particular, Defendants interpret those provisions to prohibit Phillips and Masterpiece Cakeshop from announcing that they will not create custom cakes communicating that sex can be changed, that sex can be chosen, or that sex is determined by perceptions or feelings, or custom cakes celebrating or otherwise

expressing support for Satan, Satanism, or satanic themes or beliefs. Nor may Phillips or Masterpiece Cakeshop explain their religious reasons for declining to speak those messages.

382.   Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause also affords unbridled discretion to enforcement officials to decide the kinds of communications that, in Defendants' view, indicate that "an individual's patronage or presence … is unwelcome, objectionable, unacceptable, or undesirable because of" their transgender status or creed.

383.   The similar language in Colo. Rev. Stat. § 24-34-701 is likewise unconstitutionally vague.

384.   Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause is also facially overbroad because it outlaws Phillips's and Masterpiece Cakeshop's communications about the messages that they will not express due to their religious beliefs.

385.   The similar language in Colo. Rev. Stat. § 24-34-701 is likewise facially overbroad.

386.   Phillips and Masterpiece Cakeshop currently suffer ongoing harm because of Defendants' interpretation of Colo. Rev. Stat. § 24-34-601(2)(a)'s second and third clauses and Colo. Rev. Stat. § 24-34-701.

387.   Defendants do not further any compelling or even legitimate interest in a narrowly tailored way by infringing Phillips's and Masterpiece Cakeshop's free-speech rights.

388.   Accordingly, as applied to Phillips and Masterpiece Cakeshop, Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a)'s first, second, and third clauses and Colo. Rev. Stat. § 24-34-701 violates their First Amendment free-speech rights.

389.   And both facially and as applied to Phillips and Masterpiece Cakeshop, Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause and the similar language in Colo. Rev. Stat. § 24-34-701

violate their First Amendment right to be free from laws affording unbridled discretion to enforcement officials and to be free from overbroad speech regulations.

### Third Cause of Action: Due Process

390.   Plaintiffs restate each allegation contained in Paragraphs 1 through 339 of this Complaint.

391.   The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

392.   Phillips and Masterpiece Cakeshop have a liberty interest in exercising their constitutional rights, creating custom cakes that express messages consistent with their faith, declining to create custom cakes that express messages in violation of their faith, selling custom cakes that express messages, operating an expressive business, pursuing their chosen profession, and maintaining their standing and reputation in their chosen profession.

393.   Phillips and Masterpiece Cakeshop have a property interest in operating their business, operating their business freely without unconstitutional restrictions, pursuing their chosen profession, and maintaining their standing and reputation in their chosen profession.

394.   The Due Process Clause guarantees Phillips's and Masterpiece Cakeshop's right to a fair and unbiased administrative enforcement, adjudication, and review process.

395.   The Due Process Clause guarantees Phillips's and Masterpiece Cakeshop's right to proceedings not only that are fair and unbiased but also that satisfy the appearance of fairness, neutrality, and impartial justice.

396.    Defendants interpret and enforce Colo. Rev. Stat. § 24-34-601(2)(a) in an unfair and biased way against Phillips and Masterpiece Cakeshop.

397.    Defendants' actions subject Phillips and Masterpiece Cakeshop to an unfair and biased administrative enforcement, adjudication, and review process.

398.    Colorado deprives Phillips and Masterpiece Cakeshop of liberty and property by subjecting them to an unfair and biased administrative enforcement, adjudication, and review process.

399.    Past and current Commission members have expressed open opposition to and hostility toward Phillips and Masterpiece Cakeshop.

400.    Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(II) prescribes non-neutral selection criteria and non-neutral interests for each Commission member to represent.

401.    The non-neutral selection criteria in Colo. Rev. Stat. § 24-34-303(1)(b)(II)(A) require the Governor to choose Commission members from "groups of people who have been or who might be discriminated against"—in other words, he must deliberately select them based on discriminatory grounds.

402.    And the non-neutral interests in Colo. Rev. Stat. § 24-34-303(1)(b)(I)(A)-(C) require every Commission member, both present and future, to represent some sort of business, community, or other interest in their capacity as Commission members. For example, Commission Aragon currently represents LGBT government interests in his role as the LGBTQ Liaison for the Mayor of Denver, the Denver employee who staffs the Denver LGBTQ Commission, and the Senior Advisor on the Community Affairs team in Denver's Agency for Human Rights and Community Partnerships who focuses on outreach efforts to the LGBTQ community.

60

403.     Selecting adjudicators based on discriminatory grounds, and tasking them with outside interests to represent is inconsistent with due process of law.

404.     The non-neutral selection criteria and non-neutral interests embed bias into the structure that Colorado uses to enforce its public-accommodation law, and subject Phillips and Masterpiece Cakeshop to an unfair and biased administrative enforcement, adjudication, and review process that deprives them of liberty and property.

405.     The discriminatory selection process deprives Phillips and Masterpiece Cakeshop of due process because it does not appear that the Commission, over the last six years, has had any religious member who shares Phillips's and Masterpiece's beliefs, while the Commission has had—and currently has—members who are hostile to Phillips and Masterpiece Cakeshop, their religious beliefs, and their religious practices.

406.     The Due Process Clause also forbids proceedings in which the same people approve a significant prosecutorial decision and act in an adjudicative role because such individuals cannot be wholly disinterested in the outcome of a case.

407.     Colo. Rev. Stat. § 24-34-306 requires the Commission members to approve a significant prosecutorial decision because they decide whether to file a formal complaint against a party.

408.     Colo. Rev. Stat. § 24-34-306 also requires the Commission members to act in an adjudicative role because they either hear evidence directly or review the decision of an administrative law judge by "voting on the case" after "hold[ing] a public hearing and deliberative session." *Masterpiece*, 138 S. Ct. at 1725.

409.    This administrative structure violates due-process guarantees because the risk is far too great that the Commission members will be committed to their initial decision to file a formal complaint.

410.    The Due Process Clause also guarantees Phillips's and Masterpiece Cakeshop's right to be free from vague laws.

411.    Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause makes it unlawful for any person to indicate that "an individual's … presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of" a protected characteristic like transgender status or creed. The vague language in this clause violates Phillips's and Masterpiece Cakeshop's due-process rights by granting unbridled discretion to enforcement officials and leaving Phillips and Masterpiece Cakeshop to guess at which protected communications are prohibited.

412.    Colo. Rev. Stat. § 24-34-701 contains language similar to Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause. That vague language violates Phillips's and Masterpiece Cakeshop's due-process rights by granting unbridled discretion to enforcement officials and leaving Phillips and Masterpiece Cakeshop to guess at which protected communications are prohibited.

413.    Defendants do not further any compelling or even legitimate interest in a narrowly tailored way by infringing on the due-process rights of Phillips and Masterpiece Cakeshop.

414.    Accordingly, Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) against Phillips and Masterpiece Cakeshop violates their Fourteenth Amendment due-process rights.

415.     Defendants' application and enforcement of Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(II)'s non-neutral selection criteria and non-neutral representational interests against Phillips and Masterpiece Cakeshop violates their Fourteenth Amendment due-process rights.

416.     Defendants' application and enforcement of the procedures in Colo. Rev. Stat. § 24-34-306 that require Commission members to approve a significant prosecutorial decision and to act in an adjudicative role violates Phillips's and Masterpiece Cakeshop's Fourteenth Amendment due-process rights.

417.     And both facially and as applied to Phillips and Masterpiece Cakeshop, Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause and the similar language in Colo. Rev. Stat. § 24-34-701 violate their Fourteenth Amendment due-process right to be free from vague laws.

### Fourth Cause of Action: Equal Protection

418.     Plaintiffs restate each allegation contained in Paragraphs 1 through 339 of this Complaint.

419.     The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

420.     Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) treats Phillips's and Masterpiece Cakeshop's decisions to create speech and their religious exercise differently from those similarly situated to them.

421.     Defendants' discriminatory interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) infringes on Phillips's and Masterpiece Cakeshop's fundamental rights, including their free-exercise, free-speech, and due-process rights.

422.    Defendants' discriminatory interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) singles out a suspect class of marginalized and disfavored people of faith for adverse treatment.

423.    The Fourteenth Amendment's equal-protection guarantee also ensures Phillips and Masterpiece Cakeshop the right to adjudicators selected based on nondiscriminatory criteria.

424.    Colo. Rev. Stat. § 24-34-303(1)(b)(II)(A) prescribes non-neutral selection criteria that require the Governor to choose Commission members based on their membership in groups "who have been or who might be discriminated against."

425.    The discriminatory selection process deprives Phillips and Masterpiece Cakeshop of equal protection under the law because it does not appear that the Commission, over the last six years, has had any religious member who shares Phillips's and Masterpiece's beliefs, while the Commission has had—and currently has—members who are hostile to Phillips and Masterpiece Cakeshop, their religious beliefs, and their religious practices.

426.    Defendants do not further any compelling or even legitimate interest in a narrowly tailored way by infringing on Phillips's and Masterpiece Cakeshop's equal-protection rights.

427.    Accordingly, as applied to Phillips and Masterpiece Cakeshop, Defendants' interpretation and enforcement of Colo. Rev. Stat. § 24-34-601(2)(a) and Colo. Rev. Stat. § 24-34-303(1)(b)(II)(A) violates Phillips's and Masterpiece Cakeshop's equal-protection rights.

## **Prayer for Relief**

Plaintiffs ask this Court to enter judgment against Defendants and provide the following relief:

1.       A preliminary and permanent injunction forbidding Defendants and any person acting in concert with them from enforcing Colo. Rev. Stat. § 24-34-601(2)(a) against Phillips and Masterpiece Cakeshop for declining to create custom cakes that through words, designs, symbols, themes, or images express messages that conflict with their religious beliefs, such as a custom cake with a blue exterior and pink interior communicating celebration for the idea that sex can be changed or chosen, or a custom cake celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs;

2.       A preliminary and permanent injunction forbidding Defendants and any person acting in concert with them from enforcing Colo. Rev. Stat. § 24-34-601(2)(a) or Colo. Rev. Stat. § 24-34-701 against Phillips and Masterpiece Cakeshop for disclosing the messages that they cannot express because of their religious beliefs—such as the message that sex can be changed or chosen or messages celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs—and for explaining the religious beliefs that cause them not to speak those messages;

3.       A preliminary and permanent injunction forbidding Defendants and any person acting in concert with them from enforcing Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause, which makes it unlawful for a person, "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates … that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of" a protected status like transgender status or creed, or the similar language in Colo. Rev. Stat. § 24-34-701;

4.      A preliminary and permanent injunction forbidding Defendants and any person acting in concert with them from administering and enforcing the non-neutral selection criteria and non-neutral representational interests prescribed in Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(II) or the procedures in Colo. Rev. Stat. § 24-34-306 that require the same Commission members to approve a significant prosecutorial decision and to act in an adjudicative role against Phillips and Masterpiece Cakeshop;

5.      A declaration that Defendants violate Phillips's and Masterpiece Cakeshop's free-exercise rights, free-speech rights, due-process rights, and equal-protection rights by enforcing Colo. Rev. Stat. § 24-34-601(2)(a) against Phillips and Masterpiece Cakeshop for declining to create custom cakes that through words, designs, symbols, themes, or images express messages that conflict with their religious beliefs, such as a custom cake with a blue exterior and pink interior communicating celebration for the idea that sex can be changed or chosen, or a custom cake celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs;

6.      A declaration that Defendants violate Phillips's and Masterpiece Cakeshop's free-exercise rights, free-speech rights, due-process rights, and equal-protection rights by enforcing Colo. Rev. Stat. § 24-34-601(2)(a) or Colo. Rev. Stat. § 24-34-701 against Phillips and Masterpiece Cakeshop for disclosing the messages that they cannot express because of their religious beliefs—such as the message that sex can be changed or chosen or messages celebrating or otherwise expressing support for Satan, Satanism, or satanic themes or beliefs—and for explaining the religious beliefs that cause them not to speak those messages;

7.      A declaration that Colo. Rev. Stat. § 24-34-601(2)(a)'s third clause and the similar language in Colo. Rev. Stat. § 24-34-701 is impermissibly vague and overbroad and affords

unbridled discretion to enforcement officials on its face in violation of the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment;

8.     A declaration that Colo. Rev. Stat. § 24-34-303(1)(b)(I)-(II) violates Phillips's and Masterpiece Cakeshop's rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by prescribing non-neutral selection criteria for Commission members and non-neutral interests for each Commission member to represent, and that Colo. Rev. Stat. § 24-34-306 violates Phillips's and Masterpiece Cakeshop's rights under the Due Process Clause by requiring the same Commission members to approve a significant prosecutorial decision and to act in an adjudicative role;

9.     An award of compensatory damages against Director Elenis and Defendant Commission members, including but not limited to damages for lost work time, lost profits, and expenses caused by their unconstitutional actions, as well as damages for the humiliation, emotional distress, inconvenience, and reputational damage caused by their unconstitutional actions;

10.     An award of punitive damages requiring Director Elenis and every Defendant Commission member each to pay $100,000 to Plaintiffs for their unconstitutional actions;

11.     An award of nominal damages that Director Elenis and every Defendant Commission member each must pay to Plaintiffs;

12.     An award of the costs, expenses, and attorneys' fees for this action;

13.     An award of pre-judgment and post-judgment interest;

14.     An order retaining jurisdiction over this matter for the purpose of enforcing the Court's orders;

15.     An order issuing the requested injunctive relief without requiring a bond or other security from Plaintiffs; and

16.     Any other relief that the Court deems equitable and just under the circumstances.

Respectfully submitted this 23rd day of October, 2018.

*s/ James A. Campbell*

Kristen K. Waggoner (Arizona Bar No. 032382)
James A. Campbell (Arizona Bar No. 026737)
Jonathan A. Scruggs (Arizona Bar No. 030505)
Jacob P. Warner (Arizona Bar No. 033894)
Katherine L. Anderson (Arizona Bar No. 033104)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
kwaggoner@ADFlegal.org
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman (Georgia Bar No. 188810)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE, Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org

Nicolle H. Martin (Colorado Bar No. 28737)
7175 W. Jefferson Avenue, Suite 4000
Lakewood, CO 80235
(303) 332-4547
(303) 425-3201 (facsimile)
nicollem@comcast.net

## DECLARATION UNDER PENALTY OF PERJURY

I, JACK PHILLIPS, a citizen of the United States and a resident of the State of Colorado, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of October, 2018, in Lakewood, Colorado.

Jack Phillips, on behalf of himself and Masterpiece Cakeshop Incorporated

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2018, the foregoing was filed with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to the following:

LeeAnn Morrill
First Assistant Attorney General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6159
Facsimile: (720) 508-6041
leeann.morrill@coag.gov

Grant T. Sullivan
Assistant Solicitor General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6349
Facsimile: (720) 508-6041
grant.sullivan@coag.gov

Vincent E. Morscher
Senior Assistant Attorney General
Civil Litigation and Employment Law
Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6588
Facsimile: (720) 508-6032
vincent.morscher@coag.gov

Jacquelynn Rich Fredericks
Assistant Attorney General
Higher Education Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6603
Facsimile: (720) 508-6041
jacquelynn.richfredericks@coag.gov

*Attorneys for Defendants*

*s/ James A. Campbell*
James A. Campbell