IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02074-WYD-STV

MASTERPIECE CAKESHOP INCORPORATED, a Colorado corporation, *et al.*,
        Plaintiffs,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her official and individual
capacities; *et al.*,
        Defendants.

## STATE OFFICIALS' RULE 12(b)(1) MOTION TO DISMISS
## THE FIRST AMENDED VERIFIED COMPLAINT

Defendants Aubrey Elenis, Director of the Colorado Civil Rights Division, in her official

and individual capacities (the "Division Director"), Anthony Aragon, Miguel "Michael" Rene

Elias, Carol Fabrizio, Charles Garcia, Rita Lewis, Jessica Pocock, and Ajay Menon, in their

individual and official capacities as members of the Colorado Civil Rights Commission

(collectively, "Commissioners" or the "Commission"), Cynthia H. Coffman, in her official

capacity as Colorado Attorney General (the "Attorney General"), and John Hickenlooper, in his

official capacity as Colorado Governor (the "Governor") (collectively, "State Officials"), hereby

move to dismiss the First Amended Verified Complaint [Doc. 51] under Fed. R. Civ. P. 12(b)(1).

## INTRODUCTION

The claims in the Amended Complaint are based solely on a misapprehension of the U.S.

Supreme Court's ruling concerning a *previous* civil enforcement action against Plaintiffs for

alleged violations of the Colorado Anti-Discrimination Act, §§ 24-34-301 to –804, C.R.S. (2018)

("CADA"). Indeed, the claims here attempt to impute as-applied factual findings from the

judicial review of the *previous* civil enforcement action in an effort to discredit a *new* civil enforcement action based on a *new* discrimination charge filed against Plaintiffs by a member of the public. This attempted imputation is without legal merit and, once rejected by this Court, their claims face numerous, insurmountable jurisdictional hurdles requiring their complete dismissal.[1] Simply put, Plaintiffs must still comply with CADA's valid and enforceable protections prohibiting discrimination in places of public accommodation.

## THE *MASTERPIECE I* PROCEEDINGS

Plaintiff Masterpiece Cakeshop, Inc. (the "bakery"), which is owned by Plaintiff Jack Phillips, was the respondent to a charge of discrimination in a place of public accommodation filed with the Colorado Civil Rights Division ("Division") in 2012. After notice, an investigation, and an opportunity to be heard, the former Division Director determined that probable cause existed for the 2012 charge, the former Commissioners decided to notice a hearing and file a formal complaint related to that charge, and adjudicative proceedings were held before an administrative law judge ("ALJ") and the former Commissioners. The ALJ issued an order finding that the bakery violated CADA when it refused to make a wedding cake for Charlie Craig and David Mullins, a gay-couple who intended to serve the cake at a celebration of their marriage, because of their sexual orientation. A majority of the former Commissioners affirmed the ALJ's decision, and the bakery and Mr. Phillips appealed unsuccessfully to the

---

[1] As fully demonstrated below, their claims cannot overcome the jurisdictional defenses of mandatory and discretionary abstention under the *Younger*, *Pullman*, *Burford*, and *Colorado River* doctrines, absolute quasi-prosecutorial immunity, qualified immunity, Eleventh Amendment immunity, and standing. *See infra* **ARGUMENT**, pp. 10-30.

Colorado Court of Appeals and the Colorado Supreme Court. *See Craig v. Masterpiece Cakeshop, Inc.,* 370 P.3d 272 (Colo. App. 2015), *cert. denied*, 2016 WL 1645027 (Colo. 2016).

They then appealed to the U.S. Supreme Court, which reversed in a decision issued on June 4, 2018, due to findings of hostility on the part of the *former* Commissioners that were "inconsistent with the First Amendment's guarantee that our laws be applied in a manner that is neutral towards religion." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1732 (2018) ("*Masterpiece I*"). That hostility, the Court held, deprived Mr. Phillips of a "neutral decisionmaker" during the state adjudication of the 2012 discrimination charge. *Id.* Thus, despite finding that "[i]t is unexceptional that Colorado law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions that are offered to other members of the public," and noting that its "precedents make clear that the baker, in his capacity as the owner of a business serving the public, might have his right to the free exercise of religion limited by generally applicable laws," the Supreme Court did not reach the merits of the bakery and Mr. Phillips' challenge to the Colorado Court of Appeals' holding that they violated CADA. *Id.*, at 1728, 1723-24, 1732.

Instead, the decision noted "[i]n this case the adjudication concerned a context that may well be different going forward." *Id.*, at 1732. And although it invalidated the former Commissioners' ruling on the 2012 discrimination charge and the state appellate court's decision enforcing the same, the Supreme Court expressly foreshadowed that "later cases raising these or similar concerns are [to be] resolved in the future," and "[t]he outcome of cases like this in other circumstances must await further elaboration in the courts, all in the context of recognizing that

these disputes must be resolved with tolerance, without undue disrespect to sincere religious beliefs, and without subjecting gay persons to indignities when they seek goods and services in an open market." *Id.*

## RELEVANT FACTS AND STATE PROCEDURAL BACKGROUND

The same day *Masterpiece I* was announced, the Division issued a written public statement acknowledging the decision in favor of the bakery and Mr. Phillips and stating that it "respects the ruling of the Supreme Court of the United States." Doc. 51, ¶ 252. It further stated "[t]he court has sent a message regarding members of decision making bodies, such as the Colorado Civil Rights Commission, requiring that its deliberations remain objective and consistent so that both parties are guaranteed those considerations and are applied in a consistent manner." *Id.* The statement resolved that "[a]long with this guidance issued by the United States Supreme Court," both the current Division Director and Commissioners "will continue reviewing charges of discrimination as it pertains to [CADA]" because the "decision does not alter [CADA] or its protections." *Id.*

That resolve was tested almost immediately in the wake of *Masterpiece I*. On June 28, 2018, the current Division Director found probable cause for a *new* charge of discrimination filed against the bakery and Mr. Phillips by a *different* member of the public in 2017. Doc. 51, ¶¶ 182, 211-218. The events that gave rise to the probable cause finding started on June 26, 2017, when Autumn Scardina called the bakery to order a cake for the occasion of her birthday. Doc. 51 ¶¶ 184, 186, 203-04; Doc. 51-1, p. 2. The bakery's co-owner, Debi Philips, answered the call and solicited details about Ms. Scardina's specifications for the cake, including the date it was needed, the size, and desired flavors. Doc. 51-1, p. 2. Ms. Scardina asked for the cake to be made

4

with a blue exterior and a pink interior, and "'explained that the design was a reflection of the fact that [she] transitioned from male-to-female and that [she] had come out as transgender on [her] birthday.'" Doc. 51, ¶¶ 202-04; Doc. 51-1, p. 2. After sharing what the requested birthday cake colors meant to her and disclosing that she is transgender, the bakery refused to fulfill Ms. Scardina's order because "the cake was 'to celebrate a sex-change from male to female,'" and ended the call. Doc. 51, ¶¶ 191, 202-04; Doc. 51-1, p. 2-3.

Ms. Scardina called the bakery again and spoke with an employee about the conversation she just had with Ms. Phillips. Doc. 51-1, p. 2-3. The employee informed her that the bakery would not fulfill the cake order and, when Ms. Scardina questioned the bakery's policies, the employee ended the call without responding to her inquiries. Doc. 51-1, p. 3. After being refused service, Ms. Scardina filed a charge of discrimination based on sex and transgender status with the Division in July 2017, which in turn notified the bakery and investigated the charge. Doc. 51, ¶¶ 200-04. The bakery and Mr. Phillips responded to the 2017 charge by denying the allegations of discrimination, raising statutory and constitutional defenses, and contending that the bakery "will not create custom cakes that address the topic of sex-changes or gender transitions" or that "support a message that 'promote[s] the idea that a person's sex is anything other than an immutable God-given biological reality.'" *Id.*, ¶ 205; Doc. 51-1, p. 3.

On June 28, 2018, the Division Director issued a probable cause determination detailing these events and concluding "[t]he evidence thus demonstrates that the refusal to provide service to [Ms. Scardina] was based on [her] transgender status. A claim of discriminatory denial of full and equal enjoyment of a place of public accommodation has been established." Doc. 51, ¶ 211; Doc. 51-1, p. 3-4. The Division Director's probable cause finding therefore determined that "the

[bakery and Mr. Phillips] have violated C.R.S. 24-34-602, as re-enacted," and ordered the parties to attempt to reach an amicable resolution of the charge through compulsory mediation "[i]n accordance with C.R.S. 24-34-306(2)(b)(II), as re-enacted[.]" Doc. 51, ¶¶ 217-18; Doc. 51-1, p. 4. After mediation proved unsuccessful, the Commission met and decided to issue a written notice and complaint requiring the bakery and Mr. Phillips to answer the 2017 discrimination charge at a formal hearing before an ALJ. Doc. 51, ¶¶ 230; Doc. 51-2. On October 9, 2018, the Commission filed a Notice of Hearing and Formal Complaint with the Colorado Office of Administrative Courts captioned, *Scardina v. Masterpiece Cakeshop Inc.*, *et al.*, alleging that the bakery violated § 24-34-601(2)(a) by denying service to Ms. Scardina based on her transgender status. Doc. 51-2, p. 6 and ¶ 15.

After the Division Director's probable cause finding but before the Commission filed its Notice of Hearing and Formal Complaint, Plaintiffs filed their Verified Complaint in this Court. Doc. 1, p. 51. The State Officials moved to dismiss all claims under Rule 12(b)(1) [Doc. 43], and Plaintiffs filed the Amended Complaint in lieu of a response. In it, they assert claims under 42 U.S.C. § 1983 against the State Officials for allegedly violating their First and Fourteenth Amendment constitutional rights based on several as-applied and facial theories. *Id.*, ¶¶ 340-427. Specifically, they assert an as-applied free-exercise challenge to § 24-34-601(2)(a), which prohibits discrimination in places of public accommodation, as well as an as-applied free speech challenge to its first, second, and third clauses, and a facial challenge to its third clause. *Id.*, ¶¶ 340-389. Plaintiffs also assert as-applied and facial free speech challenges to § 24-34-701, which prohibits publishing discriminatory advertising by places of public accommodation. *Id.*, ¶¶ 355-389. They further assert as-applied and facial due process challenges to § 24-34-601(2)(a), a

facial due process challenge to § 24-34-701, and as-applied due process challenges to the selection criteria for Commissioners in § 24-34-303(1)(b)(I)-(II) and the procedures in § 24-34-306 that require the same Commissioners who decided to prosecute the 2017 discrimination charge to also adjudicate that charge. *Id.*, ¶¶ 390-417. Finally, Plaintiffs assert as-applied equal protection challenges to §§ 24-34-601(2)(a) and 24-34-303(1)(b)(II)(A). *Id.*, ¶¶ 418-427. As redress, they seek declaratory and injunctive relief against all of the State Officials, an award of compensatory, punitive, and nominal damages from the Division Director and Commissioners, and an award of attorneys' fees and costs. *Id.*, Prayer for Relief, ¶¶ 1-12.

Notably, the Amended Complaint does not allege that any Commissioner who is named as a Defendant here was serving as a Commissioner when the Commission *both* finally decided the 2012 discrimination charge *and* defended that decision in the *Masterpiece I* appeals. *See* Doc. 51. It does contain a series of allegations about the *former* Division Director's March 2015 determinations that no probable cause existed for discrimination charges filed by William Jack against three other bakeries, and the Commission's June 2015 affirmation of those determinations. *See id.* ¶¶ 70-81. These allegations are proffered in support of Plaintiffs' claims that the *current* Division Director and Commissioners have violated the First and Fourteenth Amendments by treating Ms. Scardina's charge differently than Mr. Jack's charges. *See id.* ¶¶ 340, 355, 390, 418. Notably, however, the Amended Complaint does not allege that either the current Division Director or any Commissioner who is named as a Defendant here was serving as the Division Director or a Commissioner when the Division and Commission *both* decided to prosecute the 2012 discrimination charge against the bakery and Mr. Phillips *and* decided to dismiss Mr. Jack's discrimination charges for lack of probable cause in 2015. *See id.* ¶¶ 70-82.

Finally, the Amended Complaint contains a series of allegations related to Plaintiffs' desire to publish certain communications on their website and in the media. Doc. 51, ¶¶ 266-70. Specifically, they want to "inform people about Colorado's [alleged] continuing hostility toward [Phillips'] religious beliefs," and to "disclose some messages that Phillips cannot express through…cake…because of his religious beliefs" and "discuss the religious beliefs that compel Phillips not to express those messages." *Id.* The homepage for the bakery's website currently contains a green and red button labeled "DONATE NOW" that links directly to a "Continue to Give" website, which is a peer-to-peer fundraiser for Mr. Phillips, containing both written statements and an embedded video file informing the public about the State Officials' alleged continuing hostility toward his religious beliefs. *See* <http://masterpiececakes.com/> (last accessed Nov. 4, 2018).[2] It also contains the following written statement disclosing that there are some messages Mr. Phillips cannot express through cake because of his religious beliefs: "Masterpiece Cakeshop will happily create custom cakes for anyone. But like many cake artists, Jack cannot create all custom cakes. He cannot create custom cakes that express messages or celebrate events that conflict with his religious beliefs." *Id.*

Notably, the Amended Complaint does not allege that Plaintiffs intend to publish any discriminatory advertising, or that any of the State Officials has credibly threatened to enforce § 24-34-701 against them based on any current or future published statements. *See* Docs. 51, 51-1,

---

[2] Plaintiffs incorporate images from and make references to their website throughout the Amended Complaint. Doc. 51, ¶¶ 86, 270-71, 281. This Court may consider documents referred to in the complaint or subject to judicial notice without converting a motion to dismiss to a motion under Rule 56. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

51-2. It also does not allege that any of the State Officials has jurisdiction to enforce § 24-34-705, which establishes a criminal penalty for violation of § 24-34-701, or that Mr. Phillips has been credibly threatened with criminal prosecution by any of them or by some other government official who has such jurisdiction. *See* Doc. 51.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(1) is not a judgment on the merits, but instead is a determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). If a court lacks jurisdiction, it "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Such motions are "determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971); *see also Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (a Rule 12(b)(1) motion to dismiss admits all well-pled facts in the complaint as distinguished from conclusory allegations). The plaintiff bears the burden of establishing subject matter jurisdiction. *Basso*, 495 F.2d at 909.

The defense of "[a]bsolute immunity, which affords complete protection from liability for damages, defeats suit at the outset." *Horwitz v. State Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1512 (10th Cir. 1987); *see also Pounds v. Dep't of Interior*, 9 F. App'x 820, 821 (10th Cir. 2001) (reviewing a district court's dismissal under Rule 12(b)(1) based on absolute immunity). And a motion to dismiss based on qualified or sovereign immunity is properly brought under Rule 12(b)(1). *See Meyers v. Colo. Dep't of Human Servs.*, 62 F. App'x 831, 832 (10th Cir. 2003) (unpublished). Finally, whether a plaintiff has standing is a question of subject

matter jurisdiction. *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) ("[A] dismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction.").

## ARGUMENT

The former Commissioners' handling of the 2012 discrimination charge against the bakery is not at-issue in this case. The Supreme Court's decision in *Masterpiece I* expressly contemplated the current Division Director and Commissioners' continued enforcement of CADA in all places of public accommodation, including the bakery. This Court should abstain from exercising jurisdiction over the claims for equitable relief here due to the Commission's ongoing civil enforcement proceeding against the bakery and Mr. Phillips to adjudicate the 2017 discrimination charge. Indeed, abstention is required by the doctrine articulated in *Younger v. Harris*, and also is warranted under the *Pullman*, *Burford*, and *Colorado River* doctrines. As a result, Plaintiffs' challenges to §§ 24-34-303(1)(b)(I)-(II), 306, 601(2)(a), and 701 of CADA as unconstitutional under various as-applied and facial theories must be dismissed.

Plaintiffs' damages claims against the Division Director and Commissioners in their individual capacities are barred by absolute quasi-prosecutorial immunity, or alternatively by qualified immunity. Their claims for equitable relief against the Attorney General and Governor in their official capacities are barred by the Eleventh Amendment due to their non-participation in the ongoing civil enforcement action to adjudicate the 2017 discrimination charge. Finally, Plaintiffs lack standing to challenge CADA's prohibition of discriminatory advertising by places of public accommodation because the Amended Complaint fails to allege that they have suffered an injury in fact related to its enforcement.

10

I.    **This Court should abstain due to the ongoing civil enforcement action against the bakery to adjudicate the 2017 discrimination charge.**

    A.    **Abstention is mandatory under *Younger*.**

Plaintiffs ask this Court to enjoin the Commission's administrative enforcement action pending against them for allegedly violating CADA, and to declare several provisions of CADA unconstitutional under various as-applied and facial theories. Doc. 51, Prayer for Relief ¶¶ 1-8. But the need for this Court to abstain precludes the requested relief.  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held "that federal courts [must] not interfere with state court proceedings by granting equitable relief such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings when such relief could be adequately sought before the state court." *Rienhardt v.* Kelley, 164 F.3d 1296, 1302 (10th Cir. 1999). The *Younger* doctrine stems from "comity considerations," *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 923 (10th Cir. 2008), expresses Congress' "manifest[] desire to permit state courts to try cases free from interference by federal courts," *Younger*, 401 U.S. at 43, and codifies "respect [for] state functions and the independent operation of state legal systems." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997).

For *Younger* abstention to apply, three conditions must be met: (1) there is an ongoing state proceeding, (2) the state court provides an adequate forum for the claims raised in the federal complaint, and (3) the state proceeding "'involve[s] important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 394-95 (10th Cir. 2016) (quoting *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)). Where these

conditions are satisfied, abstention by the federal court is "mandatory." *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007).

In *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013), the U.S. Supreme Court clarified the first *Younger* condition, stating that the doctrine applies to (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings which involve certain orders uniquely in furtherance of the state courts' ability to perform their judicial function. *See Brumfiel v. U.S. Bank, N.A.*, No. 14-cv-2453-WJM, 2014 WL 7005253, *3 (D. Colo. Dec. 11, 2014). The second category, civil enforcement proceedings, are typically "akin to a criminal prosecution" in important respects, including that they are frequently initiated by a state actor following an investigation, culminating in the filing of a formal complaint or charges to sanction the federal plaintiff for some wrongful act. *Sprint*, 134 S. Ct. at 592 (collecting cases). The U.S. Supreme Court has recognized that state administrative proceedings to enforce CADA-like laws fall into this category. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 625 (1986) (extending the *Younger* doctrine to include administrative actions to enforce state anti-discrimination laws).

Here, the conditions for *Younger* abstention, as clarified by *Sprint*, are all satisfied. *First,* there is an ongoing civil enforcement proceeding. Ms. Scardina filed a discrimination charge with the Division alleging that the bakery violated CADA by refusing her order for a birthday cake with a blue exterior and pink interior. Doc. 51, ¶¶ 184-191, 200-04. As required by CADA, the Division issued notice to the bakery and conducted an investigation to gather information from both parties, after which the Division Director issued a probable cause determination, and—based on her finding that probable cause exists—ordered the parties to engage in

mediation. Doc. 51, ¶¶ 200-08, 211-14, 217-18. After mediation proved futile, the Commission

decided to prosecute the 2017 discrimination charge and filed a Notice of Hearing and Formal

Complaint against the bakery and Mr. Phillips with the Colorado Office of Administrative

Courts. Doc. 51, ¶ 230; Doc. 51-2.

*Second,* the pending civil enforcement action provides an adequate forum in which to

raise the same constitutional claims that Plaintiffs assert here. Indeed, the Amended Complaint

admits that Plaintiffs "responded to this charge by denying the allegations of discrimination and

by raising statutory and constitutional defenses." Doc. 51, ¶ 205. Furthermore, there is no

allegation that the ALJ, the Colorado Court of Appeals, or the Colorado Supreme Court will be

unable or unwilling to consider the constitutional claims asserted here during the formal hearing

process and any related judicial review proceedings. "[I]t is beyond cavil that a state court *is* an

adequate forum for the resolution of challenges to distinctly state prosecutorial or court

procedures or processes." *Goings v. Sumner Cnty. Dist. Attorney's Office*, 571 F. App'x 634, 638

(10th Cir. 2014) (emphasis in original). And this Court may take judicial notice of the fact that

Plaintiffs previously raised several of the same constitutional defenses during each phase of the

previous civil enforcement action concerning the 2012 discrimination charge. *See Masterpiece I,*

370 P.3d 272, *rev'd sub nom.*, 138 S. Ct. 1719.

*Third*, the ongoing civil enforcement action implicates important state interests; namely,

the Colorado legislature's policy decision to prohibit discrimination in places of public

accommodation. *See Red Seal Potato Chip Co. v. Colo. Civil Rights Comm'n*, 618 P.2d 697

(Colo. App. 1980) (acknowledging that Colorado's civil rights laws provide a mechanism to halt

discriminatory practices). The U.S. Supreme Court has repeatedly recognized that CADA-like

public accommodation laws advance the compelling state interest of eliminating discrimination. *See e.g., Hurley v. Irish-American*, 515 U.S. 557, 572 (1995) (public accommodation laws "are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination…."); *see also Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 549 (1987) (government had a compelling interest in eliminating discrimination against women in places of public accommodation); *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984) ("acts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that government has a compelling interest to prevent"). So well-established is a state's compelling interest in protecting persons "in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public" that the Supreme Court characterized CADA's discrimination protections as "unexceptional." *Masterpiece I*, 138 S. Ct. at 1727.

In short, Plaintiffs object to compliance with CADA's valid and enforceable prohibition of discrimination in places of public accommodation "and attempt to circumvent the state court judicial system by filing a lawsuit in this Court," which is "precisely the type of situation that the *Younger* doctrine is intended to prevent…[because] any federal judgment regarding Plaintiffs' claims would interfere with an ongoing state proceeding." *Callies v. Lane*, No. 13-CV-00484-CMA-KLM, 2013 WL 6670283, at *4 (D. Colo. Dec. 18, 2013) (citing *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir.2004)). They likely will counter that the bad faith exception to *Younger* applies. It does not. But if Plaintiffs urge otherwise, then it is their heavy burden to prove bad faith beyond advancing merely conclusory allegations. Absent "satisfactory proof of those extraordinary circumstances calling into play one of the limited exceptions to the

rule of *Younger*[,]" abstention is the rule. *Phelps v. Hamilton*, 122 F.3d 885, 890 (10th Cir. 1997)

(quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)). The allegations in the Amended

Complaint fail to establish that the Division Director and Commissioners acted in bad faith by

taking their respective actions on the 2017 discrimination charge. *Phelps v. Hamilton*, 59 F.3d

1058, 1065 (10th Cir. 1995). If this Court finds that the Amended Complaint establishes a prima

facie case of bad faith, then the Division Director and Commissioners respectfully request a

limited evidentiary hearing regarding the same. *See Holt v. United States*, 46 F.3d 1000, 1003

(10th Cir. 1995) (a court has "wide discretion" to allow a "limited evidentiary hearing" to resolve

disputed jurisdictional facts under Rule 12(b)(1)).

      In the ongoing civil enforcement action, the bakery and Mr. Phillips have the opportunity

to challenge the constitutionality of § 24-34-601(2)(a)'s prohibition of discrimination in places of

public accommodation, the selection criteria for current and future Commissioners in § 24-34-

303(1)(b)(I)-(II), and the procedures for prosecuting and adjudicating charges of discrimination

established by § 24-34-306. Doc. 51, ¶ 205; *see* § 24-34-307 (providing for judicial review of the

Commission's final decision), 28 U.S.C. § 1257(a) (providing for U.S. Supreme Court review of

certain final state court decisions). And while the Commission is not civilly enforcing § 24-34-

701 in its pending action, Plaintiffs' constitutional challenges to that statute in this action are

derivative of and subsumed by their free speech and due process challenges to § 24-34-601(2)(a),

which present actual controversies resolvable by Colorado's courts. *See* Doc. 51, ¶¶ 371-89, 410-

12, 417. Indeed, if Colorado's courts agree that it is legally permissible for the bakery to deny

service that is otherwise required by CADA because of Mr. Phillips' religious objection to

providing that service, then it follows that the bakery may legally communicate through its advertisements that service will be denied based on its owner's religious objection.

**B.    This Court should further abstain under the discretionary *Pullman*, *Burford*, and *Colorado River* doctrines.**

**i.    *Pullman***

Three decades before *Younger*, the U.S. Supreme Court in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 501 (1941),  wrote that "the federal courts… restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." Under *Pullman* abstention, a district court should abstain where three conditions are satisfied: (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies. *Vinyard v. King,* 655 F.2d 1016, 1018 (10th Cir. 1981).

*Pullman* abstention is "a narrow exception" to the duty of federal courts to adjudicate cases properly before them. *S & S Pawn Shop, Inc. v. City of Del City,* 947 F.2d 432, 442 (10th Cir. 1991). The current matter fits squarely within the "narrow exception" because all three elements are satisfied. First, an uncertain issue of state law underlies Plaintiffs' federal claims; namely, whether CADA's prohibition of discrimination in places of public accommodation must be interpreted and enforced in a manner that exempts objections based on religious beliefs. Indeed, under "the doctrine of constitutional avoidance, ...courts have a duty to interpret a statute in a constitutional manner where the statute is susceptible to a constitutional construction."

*People v. Montour*, 157 P.3d 489, 503-04 (Colo. 2007). Thus, Colorado courts should be given the first opportunity to consider whether Plaintiffs' constitutional claims have merit and, if so, whether it is possible to interpret CADA in a manner that preserves its constitutionality. Second, this question is amenable to interpretation by Colorado courts as demonstrated by the Court of Appeals' decision in *Masterpiece I* and, depending on how it is interpreted, the answer has the potential to either obviate or substantially narrow Plaintiffs' constitutional claims if the state court agrees with any of their challenges to CADA. Third, an incorrect decision of state law by this Court would substantially hinder the Colorado courts' ability to make important public policy decisions about the continued enforcement of CADA's anti-discrimination protections.

Historically, courts have been reluctant to abstain in cases involving facial challenges on First Amendment grounds. *See City of Houston v. Hill*, 482 U.S. 451, 467 (1987); *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1576 (10th Cir. 1995). Notwithstanding, the U.S. Supreme Court recently noted that "it is unexceptional that Colorado law can protect gay persons in acquiring products and services on the same terms and conditions as are offered to other members of the public." *Masterpiece I*, 138 S. Ct. at 1727. Accordingly, although Plaintiffs have framed certain claims, in part, as facial First Amendment challenges to CADA, *see* Doc. 51, ¶¶ 382-85, 389, 417, such framing does not merit avoidance of *Pullman* abstention where, as here, the nation's highest court was untroubled by CADA's facial prohibition of discrimination on the basis of sexual orientation.

### ii.    *Burford*

Abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) is appropriate when a federal district court faces issues that involve complicated state regulatory schemes. *See Lehman*

*v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992). In *Burford*, the Supreme Court considered a federal challenge to the Texas Railroad Commission's decision to permit the drilling of oil wells. Ultimately, the Supreme Court found that the district court should have declined to exercise jurisdiction as "sound respect for the independence of state action requires the federal equity court to stay its hand" where "the state provides for a unified method for the… determination of cases" by a commission and by state courts, and where judicial review of a commission's actions by state courts was "expeditious and adequate." *Burford*, 319 U.S. at 333-34. As in *Burford*, Plaintiffs here challenge an administrative process that provides a uniform and comprehensive method of adjudicating alleged violations of CADA by an ALJ and the Commission, followed by judicial review in Colorado courts, which in turn is reviewable by the U.S. Supreme Court. Doc. 51, ¶¶ 45-61; *see* 28 U.S.C. § 1257(a).

### iii.   *Colorado River*

The *Colorado River* doctrine permits a federal court to dismiss or stay a federal action in deference to a pending, parallel state court proceeding where (1) "a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law[;]" (2) "difficult questions of state law" are present which impact "policy problems of substantial public import whose importance transcends the result in the case then at bar[;]" or (3) "federal jurisdiction has been invoked for the purpose of restraining state [civil enforcement proceedings that are akin to] criminal proceedings." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814-16 (1976) (quotations and citations omitted); *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994). Before doing so, this Court must determine whether the state and federal suits are parallel, which occurs "if substantially the same parties

18

litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081. The Tenth

Circuit's approach is to examine state proceedings "as they actually exist" to determine whether

they are parallel to federal court proceedings. *Id*. Here, the Commission's ongoing civil

enforcement action to decide the 2017 discrimination charge is parallel to this civil action

because "the suits involve the same parties, arise out of the same facts and raise similar factual

and legal issues." *Tyler v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006).

The next step is for this Court to determine whether "exceptional circumstances" compel

it to defer to the state proceedings. *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401,

403 (10th Cir. 1995). Factors to consider include the "wise judicial administration with regard to

conservation of judicial resources and comprehensive disposition of litigation," *id.*, the order in

which the courts obtained jurisdiction, *Colorado River*, 424 U.S at 818, and the adequacy of the

state forum to protect the federal plaintiff's rights. *Fox*, 16 F.3d at 1082. Here, the Division and

Commission obtained jurisdiction over the 2017 discrimination charge more than a year before

Plaintiffs filed this case, and deferring to their jurisdiction will conserve this Court's limited

judicial resources while still providing for "comprehensive disposition" of all parties' claims and

defenses in a forum that protects Plaintiffs' federal rights through the administrative adjudicative

process, followed by judicial review, including ultimate review by the U.S. Supreme Court. *See*

*e.g., Dayton Christian Sch.*, 477 U.S. at 629 ("[I]t is sufficient under [*Middlesex Cnty. Ethics*

*Comm. v. Garden State Bar Assn*., 457 U.S. 423, at 436 (1982)], that constitutional claims may

be raised in state-court judicial review of the administrative proceeding."); *Masterpiece I*, 370

P.3d 272, *rev'd sub nom.*, 138 S. Ct. 1719.

**II.      The Division Director and Commissioners are entitled to absolute
quasi-prosecutorial immunity from all damages claims arising from
their actions on the 2017 discrimination charge.**

Plaintiffs seek nominal, actual, and punitive damages from only the Division Director
and Commissioners in their individual capacities. Doc. 51, ¶¶ 226-27, 245-46, Prayer for Relief,
¶ 11. Their claims against the Division Director rest solely on her June 28, 2018 finding that
"probable cause exists for crediting the allegations of the [2017] charge" and issuance of a
written determination "stating with specificity the legal authority and jurisdiction of the
commission and the matters of fact and law asserted." Doc. 51, ¶¶ 50 (quoting § 24-34-
306(2)(b)), 52 (quoting § 24-34-306(2)(b)(II)), 211, 217-19, Prayer for Relief, ¶¶ 9-11; Doc. 51-
1. Plaintiffs attempt to impute certain as-applied findings regarding the former Commissioners'
handling of the 2012 discrimination charge in *Masterpiece I* to the Division Director's probable
cause determination for the 2017 discrimination charge as support for the allegation that the
latter was made in "bad faith." Doc. 51, ¶¶ 220-25. Their claims against the Commissioners are
based on the Commission's decision to file a Notice of Hearing and Formal Complaint against
the bakery and Mr. Phillips to adjudicate the 2017 discrimination charge. Doc. 51, ¶ 228. The
Amended Complaint points to the parties who are named as respondents in the Commission's
civil enforcement action, as well as the facts alleged by the Commissioners in the Formal
Complaint, as support for Plaintiffs' contention that the Commissioners acted in "bad faith."
Doc. 51, ¶¶ 230-39. It likewise attempts to impute certain as-applied findings regarding the
former Commissioners' handling of the 2012 discrimination charge in *Masterpiece I* to the
current Commissioners' decision to prosecute the 2017 discrimination charge. Doc. 51, ¶¶ 240-
44.

To be sure, if this Court ever reaches the merits of Plaintiffs' claims, the Division Director and Commissioners will unequivocally deny that they acted in bad faith in taking their respective actions on the 2017 discrimination charge. But even if this Court accepts Plaintiffs' conclusory allegations of bad faith as true in deciding this motion, their damages claims against the Division Director and Commissioners in their individual capacities must still be dismissed based on absolute quasi-prosecutorial immunity. "Although a qualified immunity from damages liability should be the general rule for executive officials charged with constitutional violations," the U.S. Supreme Court has long-recognized that "there are some officials whose special functions require a full exemption from liability." *Butz v. Economou*, 438 U.S. 478, 508 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335 (1872); *Imbler v. Pachtman*, 424 U.S. 409 (1976)). In particular, "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts … [because t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515.

In *Butz*, the Supreme Court explained the rationale for shielding executive officials who perform quasi-prosecutorial acts with absolute immunity:

> The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than absolute. …[T]here is a serious danger that the decision to authorize proceedings will provoke a retaliatory response. An individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts. A corporation will muster all of its financial and legal resources in an effort to prevent administrative sanctions. …We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment.

21

438 U.S. at 515-16. It also noted that the respondent to an agency enforcement proceeding "has ample opportunity to challenge the legality of the proceeding," including its constitutionality, and "may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified." *Id.* at 516. For these reasons, the Supreme Court held "that those officials who are responsible for *the decision to initiate* or *continue a proceeding subject to agency adjudication* are entitled to absolute immunity from damages liability for their parts in that decision." *Id.* at 516 (emphasis added).

The Tenth Circuit applied *Butz* in *Horwitz v. Colo. State Bd. of Med. Exam'rs*, 822 F.2d 1508 (10th Cir. 1987), which involved a physician's § 1983 damages action against state medical board members arising out of his summary administrative suspension. It articulated the following formula for whether absolute immunity under *Butz* applies: "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." 822 F.2d at 1513. The Tenth Circuit evaluated the board members' functions and found "that they serve in the prosecutorial role in that they, among other things, initiate complaints, start hearings, make investigations, take evidence, and issue subpoenas. …[Their] duties are 'functionally comparable' to a court of law." *Id.* It further found that "[i]t is important to insulate Board members from political influence in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine," and that "[t]here exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance on private damages lawsuits." *Id.* at

1515. As a result, it held that "[p]ublic policy requires that officials serving in such capacities be exempt from personal liability." *Id.*

Here, CADA establishes that the Division Director has "the power and duty to 'receive, investigate, and make determinations on charges alleging unfair or discriminatory practices' in violation of the public accommodation law." Doc. 51, ¶ 40 (quoting § 24-34-302(2)); the power to "'subpoena witnesses,' compel testimony, and order 'the production of books, papers, and records' about matters in the charge." Doc. 51, ¶ 49 (quoting § 24-34-306(2)(a)); and the duty to "'determine as promptly as possible whether probable cause exists for crediting the allegations of the charge.'" Doc. 51, ¶ 50 (quoting § 24-34-306(2)(b)). Her actions in reviewing, investigating, and determining probable cause for the 2017 discrimination charge were entirely quasi-prosecutorial. *See Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Prosecutors are entitled to absolute immunity for their decisions to prosecute, *their investigatory or evidence-gathering actions*, their evaluation of evidence, *their determination of whether probable cause exists*, and their determination of what information to show the court." (emphasis added and citation omitted)).

When efforts to mediate a discrimination charge for which the Division Director has found probable cause fail, CADA requires her to report that fact to the Commission and vests the Commissioners with authority to determine whether the circumstances warrant issuance of a written notice and complaint requiring the respondent to answer the charges at a formal hearing before it. *See* § 24-34-306(4). The Commission's evaluation of evidence gathered by the Division Director here, its decision to prosecute the 2017 discrimination charge, and what

23

information to include in the Formal Complaint filed against the bakery and Mr. Phillips likewise were entirely quasi-prosecutorial functions. *Nielander*, 582 F.3d at 1164.

The second and third parts of the *Horwitz* formula for determining whether absolute immunity applies are easily satisfied here. 822 F.2d at 1513. Indeed, the bakery and Mr. Phillips were disappointed by the Division Director and Commission's actions on the 2017 discrimination charge and filed the instant damages lawsuit. And for the detailed reasons discussed above in Section I(A), sufficient safeguards exist in CADA's regulatory framework to control unconstitutional conduct. Absolute quasi-prosecutorial immunity therefore applies here.

### III.   Alternatively, the Division Director and Commissioners are qualifiedly immune from all damages claims arising from their actions on the 2017 discrimination charge.

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.* To defeat a claim of qualified immunity, a plaintiff must demonstrate: (1) that the facts alleged establish the violation of a constitutional right, and (2) that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *see also Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). A plaintiff's failure to establish both prongs means the protections of qualified immunity apply. The court may review either prong first and need only find one of the prongs missing to hold that qualified immunity bars a plaintiff's claims. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Because Plaintiffs here cannot demonstrate a clearly established law prohibiting their respective actions on the 2017

discrimination charge, the Division Director and Commissioners are qualifiedly immune from Plaintiffs' damages claims against them in their individual capacities.

A right is "clearly established" when there is a Supreme Court or Tenth Circuit precedent on point. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). Alternatively, a right is clearly established by the weight of authority from case law in other circuits. *Id*. at n.3. Additionally, while there does not have to be a case directly on point for a right to be "clearly established," existing precedent must place the statutory or constitutional question "beyond debate." *White*, 137 S. Ct. at 551-52. The precedent must be sufficiently clear that "every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590. A plaintiff must identify the authorities that create the clearly established right. *Washington v. Unified Gov't of Wyandotte Cty*, 847 F.3d 1192, 1201 n.3 (10th Cir. 2017).

Assuming *arguendo* only for purposes of this motion that the facts alleged in the Amended Complaint establish that CADA violates the First and Fourteenth Amendments, but without conceding the same,[3] Plaintiffs cannot satisfy the second prong of the qualified immunity analysis. Simply put, no clearly established law barred the Division Director and Commissioners' actions on the 2017 discrimination charge where, as here, CADA's prohibition of discrimination in *all* places of public accommodation, including the bakery, is still valid and

---

[3] Because the second prong cannot be satisfied, the Division Director and Commissioners will not unnecessarily expend court resources arguing the merits of the first prong at this time. "Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Ashcroft*, 563 U.S. at 735 (quoting *Pearson v, Callahan,* 555 U.S. 223, 236–237 (2009)).

enforceable. Indeed, neither the U.S. Supreme Court, the Tenth Circuit, nor any other circuit court has held that an administrative official violates a federally secured right by continuing to enforce a valid state law that has never been declared  unconstitutional. Absent such binding precedent, the Division Director and Commissioners are entitled to qualified immunity.

The allegations in the Amended Complaint suggest that Plaintiffs read *Masterpiece I* as having clearly established that the Division Director may not investigate and determine whether probable cause exists for the 2017 discrimination charge, and the Commissioners may not decide whether to formally prosecute that charge. Doc. 51, ¶¶ 64-69, 221-25, 240-44 (discussing *Masterpiece I* in detail). Indeed, the allegations of misconduct leveled against the Division Director and Commissioners hinge on the timing of their actions on the 2017 discrimination charge. Namely, that they were taken *after* the U.S. Supreme Court announced *Masterpiece I.* Doc. 51, ¶¶ 182, 221-25, 240-44. Plaintiffs' reading of *Masterpiece I* is flawed and must be rejected for three reasons.

*First*, as discussed above, *Masterpiece I* did not hold that CADA violates the First and Fourteenth Amendments. To the contrary, the Supreme Court found that "[i]t is unexceptional that Colorado law can protect gay persons, just as it can protect other class of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." *Masterpiece I*, 138 S. Ct. at 1728. *Second*, the decision expressly acknowledged that the Supreme Court's "precedents make clear that the baker, in his capacity as the owner of a business serving the public, might have his right to the free exercise of religion limited by generally applicable laws." *Id.* 1723-24. The *Masterpiece I* Court did not abrogate or limit any of those precedents. To the contrary, it explained that although religious

objections to gay marriage are "protected views," such objections "do not allow business owners…to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." 138 S. Ct. at 1727. This holding is consistent with the Court's long-established view of the Free Exercise Clause. *See United States v. Lee*, 455 U.S. 252, 261 (1982) ("When followers of a particular [religious] sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity."). And *third*, even though the *Masterpiece I* Court found that the *former* Commissioners failed to consider Plaintiffs' claims with "the neutrality that the Free Exercise Clause requires," 138 S. Ct. at 1731, it never intimated that CADA *itself* is anything other than neutral and generally applicable. Nor did the Court suggest that Plaintiffs are immune from CADA's reach in the event of future discrimination charges, such as the one at-issue here.

### IV. The Eleventh Amendment bars all claims for prospective relief against the Attorney General and Governor due to their non-participation in the civil enforcement action against Plaintiffs.

The Eleventh Amendment "does not bar a suit against state officials in their official capacities if it seeks prospective relief for the *officials' ongoing violation of federal law*." *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001) (emphasis added). But the state official "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Martinez*, 707 F.3d at 1205 (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). As a result, the state official "'must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476

F.3d 818, 828 (10th Cir. 2007)). The necessary connection "must be fairly direct; a generalized

duty to enforce state law…will not subject an official to suit." *Los Angeles Cnty. Bar Ass'n v.*

*Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

Here, the sole factual allegation leveled against the Attorney General is that she issued a

press release on June 4, 2018 acknowledging the U.S. Supreme Court's decision in *Masterpiece*

*I*, but did not "disavow the state's unequal enforcement policy or its hostile comments." Doc. 51,

¶ 253.  This allegation fails to grasp that the Attorney General was not a party to *Masterpiece I*

and appeared in that matter solely as counsel of record to the former Commissioners, and also

fails to satisfy the Eleventh Amendment's requirement that there be an ongoing violation of

federal law. Indeed, nowhere does the Amended Complaint allege that the Attorney General has

a "demonstrated willingness" to enforce CADA generally, much less against Plaintiffs

specifically. *Martinez*, 707 F.3d at 1205 (quotation omitted). And given that the plain language

of CADA vests her with discretionary, not mandatory, enforcement authority, *see* § 24-34-

306(1)(b), she cannot be said to have a "particular duty to 'enforce'" CADA. *Id.* Any prospective

relief entered against the Attorney General would have no practical effect because she is not

committing any ongoing violation of Plaintiffs' federal rights. *Owens*, 264 F.3d at 1290.

The Amended Complaint is similarly devoid of any allegation that the Governor has a

particular duty to enforce CADA's anti-discrimination provisions. This is likely because, as a

matter of law, he has none. *See* C.R.S. § 24-34-306(1)(a)-(b) (the Governor is not among the

persons and state officials authorized to file discrimination charges with the Division). Any

prospective relief entered against the Governor also would have no practical effect because he is

not prosecuting the ongoing civil enforcement action that Plaintiffs claim is violating their

federal rights. *Owens*, 264 F.3d at 1290. And although § 24-34-303(1)(b) requires the Governor

to appoint Commissioners, he must adhere to the criteria prescribed by that section. As a result,

Plaintiffs' constitutional challenges to the statutory selection criteria are not properly maintained

against the Governor, but rather against each Commissioner who represents each allegedly non-

neutral interest. *Cf. Developmental Pathways v. Ritter*, 178 P.3d 524, 530 (Colo. 2008) (allowing

First Amendment challenge to Amendment 41 to the Colorado Constitution—which created the

Independent Ethics Commission to hear complaints, issue findings, and assess penalties for

alleged ethics violations—to be maintained against the Governor because, at the time the

complaint was filed, "the members of the Commission had not yet been appointed" and noting

that "[h]ad the Commission been in existence at the time this lawsuit was filed, we may have

reached a difference conclusion with regard to this issue.").

### V.      Plaintiffs lack standing to challenge § 24-34-701 because they failed to allege any injury in fact related to its enforcement.

To establish Article III standing, a plaintiff must show that he has suffered an injury in

fact that is traceable to the defendants, and is redressable by a favorable ruling. *See Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff's injury must be "actual or imminent, not

conjectural or hypothetical." *Id.* The U.S. Supreme Court more recently reiterated its reluctance

"to endorse standing theories that require guesswork as to how independent decisionmakers will

exercise their judgment" because a "theory of standing, which relies on a highly attenuated chain

of possibilities, does not satisfy the requirement that threatened injury must be certainly

impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 and 1150 (2013). And it is

well-established that to have standing "[i]n freedom of expression cases," a plaintiff must allege

*both* "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute," *and* "a credible threat of prosecution." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003); *see also Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006).

Plaintiffs here cannot satisfy either element of this test. *First*, the statement Mr. Phillips wants to publish on the bakery's website guarantees that "Masterpiece Cakeshop serves all people—no matter who they are or what protected characteristics they have," which is anti-discriminatory. Doc. 51, ¶ 270; *see also* Doc. 51, ¶ 2 ("Both Phillips and Masterpiece Cakeshop serve everyone. All people—no matter who they are, what they believe, or what protected characteristics they have—are welcome in Phillips's shop and may purchase anything available for sale."). *Second*, Mr. Phillips *is* communicating the other messages he claims are being chilled by § 24-34-701 through the bakery's website without repercussion. *Compare* Doc. 51, ¶¶ 266-70, *with* <http://masterpiececakes.com/> (last accessed Nov. 4, 2018). Indeed, the Amended Complaint fails to allege that any of the State Officials has credibly threatened to civilly enforce § 24-34-701 against the bakery and Mr. Phillips based on any current or future published statements. *See* Docs. 51, 51-1, 51-2. Nor does it allege that any of the State Officials has jurisdiction to enforce § 24-34-705, which establishes a criminal penalty for violation of § 24-34-701, much less that Mr. Phillips has been credibly threatened with criminal prosecution by any of them or by some other government official with such jurisdiction. *See* Doc. 51.

## CONCLUSION

Based on the above reasons and authorities, the State Officials respectfully request that this Court dismiss Plaintiffs' First Amended Verified Complaint in its entirety.

DATED: November 6, 2018.

CYNTHIA H. COFFMAN
Attorney General


*s/ LeeAnn Morrill*

LEEANN MORRILL*
First Assistant Attorney General
VINCENT MORSCHER*
Senior Assistant Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
JACQUELYNN RICH FREDERICKS*
Assistant Attorney General
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
*Counsel of Record
*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 6, 2018, I served a true and complete copy of the foregoing **STATE OFFICIALS' RULE 12(b)(1) MOTION TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT** upon all counsel of record and parties who have appeared in this matter through ECF or as otherwise indicated below:

Kristen K. Waggoner
James A. Campbell
Jonathan A. Scruggs
Jacob P. Warner
Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
kwaggoner@ADFlegal.org
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org
kanderson@ADFlegal.org


David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
dcortman@ADFlegal.org

Nicolle H. Martin
7175 W. Jefferson Avenue
Suite 4000
Lakewood, CO 80235
nicollem@comcast.net

*s/ Leslie Bostwick*
Leslie Bostwick
