IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02074-WYD-STV

MASTERPIECE CAKESHOP INCORPORATED,
a Colorado corporation; and
JACK PHILLIPS,

     *Plaintiffs*,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her
official and individual capacities;
ANTHONY ARAGON, as member of the Colorado Civil Rights
Commission, in his official and individual capacities;
MIGUEL "MICHAEL" RENE ELIAS, as member of the Colorado Civil
Rights Commission, in his official and individual capacities;
CAROL FABRIZIO, as member of the Colorado Civil Rights
Commission, in her official and individual capacities;
CHARLES GARCIA, as member of the Colorado Civil Rights
Commission, in his official and individual capacities;
RITA LEWIS, as member of the Colorado Civil Rights Commission, in
her official and individual capacities;
JESSICA POCOCK, as member of the Colorado Civil Rights
Commission, in her official and individual capacities;
AJAY MENON, as member of the Colorado Civil Rights
Commission, in his official and individual capacities; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

     *Defendants*.

---

## PARTIES' JOINT STATEMENT CONCERNING DISCOVERY DISPUTES

On January 21, 2019, the parties exchanged expedited discovery requests in anticipation

of the hearing on Plaintiffs' Amended Motion for Preliminary Injunction, which is set for

March 14-15, 2019. Since that time, the parties have conferred in good faith. In particular, they

spoke via telephone on January 22, 28, and 29, 2019, and have communicated via email,

1

regarding their disputes pertaining to anticipated depositions and written discovery. This Joint

Statement sets forth areas where the Parties currently disagree. As directed by Magistrate Judge

Varholak, these issues will be addressed at a hearing on February 5, 2019.

**Plaintiffs' position**

Plaintiffs Masterpiece Cakeshop and Jack Phillips (collectively, Plaintiffs or Phillips)

understand the following list to encompass the discovery issues currently disputed between the

parties:

1.  Whether Plaintiffs Masterpiece Cakeshop and Jack Phillips may depose the defendant commissioners.

2.  Whether Plaintiffs may inquire into the commissioners' discussions or statements about Plaintiffs.

3.  Whether Plaintiffs may inquire into the commissioners' views regarding religious freedom.

4.  Whether Plaintiffs may inquire about the commissioners' views regarding religion, LGBT issues, or personal characteristics.

5.  Whether Plaintiffs may inquire into the commissioners' decisions in other cases.

**I.      Plaintiffs are entitled to depose the defendant commissioners.**

Plaintiffs raise free-exercise, free-speech, due-process, and equal-protection claims. Doc.

51 ¶¶ 340-427. Plaintiffs raise various legal theories supporting each of those claims, and each of

those theories depends on different kinds of evidence. For purposes of this statement, Plaintiffs

focus exclusively on their hostility-based free-exercise claim, *see id.* at ¶¶ 344-46—the same

legal theory that the Supreme Court just affirmed in *Masterpiece Cakeshop, Ltd. v. Colo. Civil*

*Rights Commission*, 138 S. Ct. 1719, 1729-31 (2018) (*Masterpiece I*).

As this Court has already said based on Plaintiffs' allegations, the commissioners are treating Plaintiffs unequally and acting in "bad faith" and with "hostility towards" their "religion" by "pursuing . . . discrimination charges" against them. Doc. 94 at 20-21. Plaintiffs' allegations, as Defendants have admitted, focus on "the prosecutorial actions [that the commissioners] have taken to date." *Id.* at 32 n.7. It is those actions—rather than the commissioners' future conduct as adjudicators—that Plaintiffs seek to explore through depositions.

To support their hostility-based free-exercise claim, Plaintiffs intend to ask the commissioners about, among other things, (1) facts relevant to their filing of the formal complaint against Plaintiffs in the pending state proceeding, (2) commissioners' discussions concerning the filing of that formal complaint (discussions with other commissioners and with other people), (3) their discussions and views concerning Plaintiffs (discussions with other commissioners and with other people), (4) their discussions and views concerning religious freedom, (5) their discussions and views concerning religion, LGBT issues, and other personal characteristics, and (6) information about related cases that the Commission has decided. Plaintiffs have told Defendants that they will not ask how the commissioners intend to decide the pending state proceeding.

The party resisting discovery based on an asserted privilege bears the burden of establishing that a privilege applies. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); Fed. R. Civ. P. 26(b)(5). Defendants appear to think that deliberative-process and mental-process privileges foreclose Plaintiffs from deposing any individual commissioner. That is not true for the following five reasons.

1.    **The deliberative-process and mental-process privileges do not apply because government intent is directly at issue in this case.**

The deliberative-process privileges and mental-process privileges are inapplicable here because the commissioners' motives in prosecuting Plaintiffs is a key consideration in resolving Plaintiffs' hostility-based free-exercise claim. Those privileges do not apply where, as here, government motives are relevant to a plaintiff's claims or where the decision-making process itself is the subject of the litigation. *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424-25 (D.C. Cir.), *clarified on reh'g*, 156 F.3d 1279 (D.C. Cir. 1998) (the deliberative-process "privilege is a nonsequitur," cannot be used "as a shield," and "does not enter into the picture" when the "cause of action is directed at the government's intent").[1] Courts in this district have adopted this view. *See Denver First Church of Nazarene v. Cherry Hills Vill.*, No. 05-CV-02463-WDM-MEH, 2006 WL 7354733, at *6-7 (D. Colo. July 19, 2006) (finding that a religious-discrimination claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) "place[d] the motives of the government officials at issue," that the plaintiff's ability to depose the agency decision-makers and inquire "into unrecorded discussions and motivations is critical," and that neither the deliberative-process nor mental-process privileges applied).

---

[1] *See, e.g., Jones v. City of Coll. Park, Ga.*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (the deliberative-process privilege "is simply inapplicable, because government intent is at the heart of the issue in this case"); *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) ("the deliberative process privilege does not apply when the government's intent is at issue," nor does "the mental processes privilege" apply "when the defendant's intent is critical to the plaintiff's case"); *New York v. Salazar*, 701 F. Supp. 2d 224, 237 (N.D.N.Y. 2010) ("[W]hen the decision-making process itself is the subject of the litigation, the overwhelming consensus and body of law within the Second Circuit is . . . that the privilege cannot bar discovery, and it evaporates.").

4

The Supreme Court just held that Defendants violated Plaintiffs' free-exercise rights by acting with "clear and impermissible hostility" toward their religious beliefs—a hostility shown through (1) commissioners' deliberations and statements and (2) the "difference in treatment" between Plaintiffs and other business owners. *Masterpiece I*, 138 S. Ct. at 1729-31. This shows that Plaintiffs' hostility-based free-exercise claim depends on the commissioners' motives and discriminatory actions in targeting Plaintiffs for prosecution and punishment. Given that the commissioners' motives here, just as in *Masterpiece I*, are at the heart of this case, the deliberative-process and mental-process privileges do not apply. *See Tri-State Hosp. Supply Corp. v. United States*, No. CIV.A. 00-1463HHKJMF, 2005 WL 3447890, at *8 (D.D.C. Dec. 16, 2005) ("[T]he government's intent and decision making process are unquestionably at the heart of" the plaintiff's malicious-prosecution claim and thus "the deliberative process privilege does not even enter into the picture"). Accordingly, Plaintiffs must be able to inquire into the very considerations, including commissioners' discussions and statements, that the Supreme Court deemed outcome-determinative in *Masterpiece I*.[2]

**2.    The deliberative-process and mental-process privileges do not apply because the commissioners are acting in bad faith.**

Nor do those privileges apply—they "disappear[] altogether"—"when there is any reason to believe government misconduct occurred." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir.

---

[2] The commissioners' intent is also at issue because Plaintiffs have shown—and this Court has observed based on facts in the amended complaint—that the commissioners "are pursuing the discrimination charges against Phillips in bad faith." Doc. 94 at 20-21. Even after that ruling, Defendants continue to contest the issue of bad faith, thus keeping the commissioners' intent and subjective motivations squarely at issue in the case. *See* Doc. 95 at 3 (Defendants assert that "Plaintiffs failed to provide any actual evidence of bad faith on their part sufficient to establish the bad faith exception to *Younger* abstention").

1997). In particular, a showing of "bad faith or improper behavior" justifies a court in allowing "inquiry into the mental processes of administrative decisionmakers," including quasi-judicial ones. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).[3]

In rejecting Defendants' motion to dismiss, this Court has already said that Defendants' "disparate treatment" of Phillips compared to other business owners "reveals . . . Defendant Commissioners' hostility towards Phillips, which is sufficient to establish they are pursuing the discrimination charges against Phillips in bad faith, motivated by Phillips' suspect class (his religion)." Doc. 94 at 20-21. This more than suffices to invoke the bad-faith exception to the deliberative-process and mental-impression privileges. To bolster it, Plaintiffs have produced additional evidence of bad faith, including (1) documents showing Defendants' unequal treatment of Plaintiffs, *see* Doc. 104-6, Doc. 104-7, Doc. 104-10; (2) a social-media post from a current commissioner calling Phillips a "hater," Doc. 104-26 at 5; and (3) exhibits showing that another commissioner serves on a board of an advocacy group that has filed amicus briefs

---

[3] *See, e.g., Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) (upholding the district court's rejection of the deliberative-process privilege where the plaintiffs demonstrated sufficient evidence of "discriminatory motives" and "bad faith" by the agency); *Inforeliance Corp. v. United States*, 118 Fed. Cl. 744, 750 n.10 (2014) (finding that information "relevant to plaintiff's claim of bad faith . . . cannot be sheltered under a claim of deliberative process privilege"); *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 234 (E.D.N.Y. 2006) (noting that the deliberative-process privilege does not apply "to agency proceedings where a showing of bad faith has been made" and allowing agency officials to be deposed); *McGoldrick v. Koch*, 110 F.R.D. 153, 155–56 (S.D.N.Y. 1986) ("[W]here a party has made a *prima facie* showing that the decision by an agency or a judicial officer is tainted by impropriety, the decision-making process may be an appropriate subject of inquiry.").

against Plaintiffs, *see* Doc. 104-30, Doc. 104-31, Doc. 104-29 at 3. Because Plaintiffs have demonstrated bad faith, they should be allowed to depose the commissioners.[4]

### 3.   The deliberative-process and mental-process privileges are qualified privileges that are overridden in this case.

Both the deliberative-process and mental-process privileges are qualified and must give way when the need for evidence overrides the government's interest in confidentiality. *Denver First Church*, 2006 WL 7354733, at *5; *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122-23 (N.D. Cal. 2003). Factors helpful in making this determination include (1) the relevance of the evidence, (2) the availability of other evidence, (3) the government's role in the litigation, (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions, (5) the seriousness of the litigation, and (6) the presence of allegations about government misconduct. *Denver First Church*, 2006 WL 7354733, at *5; *N. Pacifica*, 274 F. Supp. 2d at 1122. All these factors favor allowing Plaintiffs to depose the commissioners.

*First*, evidence concerning the commissioners' discussions and views about the decision to prosecute Plaintiffs is central to this case. Plaintiffs challenge that decision, the motivation for it, and the process surrounding it. *See, e.g.*, Doc. 51 ¶¶ 228-44. That decision to prosecute is deeply suspect, as this Court has observed, because it was made in bad faith, Doc. 94 at 20-21, and because Defendants now try to defend their actions on a basis not found in the formal complaint, *id.* at 22. In addition, Defendants have kept the commissioners' motives at the heart

---

[4] Notably, if the Court does not reject the deliberative-process and mental-process privileges in this case, Defendants will likely claim those privileges for substantial amounts of documents, which this Court might be forced to resolve on a case-by-case basis.

of the case by continuing to contest the issue of bad faith. *See* Doc. 95 at 3. Where, as here, Plaintiffs have raised a claim that puts Defendants' "motives directly at issue," Plaintiffs' right to explore "unrecorded discussions and motivations is critical," *Denver First Church*, 2006 WL 7354733, at *7; and "courts find this to weigh in favor of overriding the privilege," *id.* at *6 (collecting cases); *accord Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1021 (N.D. Ill. 2016).

Also, the type of evidence that Plaintiffs seek—discussions and statements about Plaintiffs, religious freedom, and religion—is a mirror image of what *Masterpiece I* relied on in finding government hostility toward Plaintiffs. *See* 138 S. Ct. at 1729 (discussing commissioner comments about Phillips, religious freedom, and religion in general). Indeed, the Supreme Court specifically said that factors relevant when assessing anti-religious hostility include the "contemporaneous statements made by members of the decisionmaking body." *Id.* at 1731.

In addition, publicly available documents have already shown one commissioner calling Phillips a "hater." Doc. 104-26 at 5. And Plaintiffs' discovery requests seek more commissioner communications, which might disclose similar sentiments among those officials. This evidence heightens the need to depose the commissioners.

*Second*, no comparable evidence is available. The administrative record that Defendants have produced in the state prosecution is sparse, containing basically just the filings that Plaintiffs already possessed, *see* Doc. 104-3; Doc. 104-4; Doc. 104-5; the Division's final probable-cause determination, Doc. 104-6; and the Commission's complaint, Doc. 104-7. "It is entirely possible that [commissioners] had private conversations with . . . staff, . . . members of the public, and amongst themselves that are not embodied in the record. . . . [T]his information may well be relevant in the ascertainment of motive, which is central to this case." *N. Pacifica*,

274 F. Supp. 2d at 1125. Moreover, the evidence that Plaintiffs seek—indicia of anti-religious hostility and discriminatory intent—"does not typically lay dormant in an administrative record." *Newport Pac. Inc. v. Cty. of San Diego*, 200 F.R.D. 628, 639 (S.D. Cal. 2001). Depositions of decisionmakers are necessary to uncover it. *See Denver First Church*, 2006 WL 7354733, at *4 (allowing plaintiff to depose officials acting in "quasijudicial" capacity because without that the plaintiff would be "unlikely" to show that they "were acting upon an illegal motive").

Defendants' proposal that most of the commissioners should be able to hide behind a single self-selected Rule 30(b)(6) deponent—even though their individual statements and animus are squarely at issue—is inadequate and unreasonable. It will not be possible to examine a Rule 30(b)(6) witness about prejudices and biases of individual commissioners or statements that they have made. Indeed, a Rule 30(b)(6) witness cannot possibly know every discussion that his or her colleagues have had about Plaintiffs or the decision to file the formal complaint against them. Also of note, some commissioners might be more forthcoming in their deposition, particularly if they do not harbor the animus of their colleagues. At bottom, it is not fair to limit Plaintiffs' right to depose opposing parties and confine them to Defendants' chosen representative. This is especially true when Defendants are allowed to depose Plaintiffs.

*Third*, each of the commissioners that Plaintiffs seek to depose is a party to this case and is directly involved in the decision to prosecute Plaintiffs. Where a state official "asserting the privilege is a party to the lawsuit, or its conduct bears on the plaintiff's claim, this factor weighs in favor of finding a particularized need" for the allegedly privileged information. *Holmes*, 221 F. Supp. 3d at 1021; *accord N. Pacifica*, 274 F. Supp. 2d at 1124.

*Fourth*, it is unlikely that, given the rare circumstances involved here, disclosure of the specific information that Plaintiffs seek concerning agency decision-making would hinder future policy discussions. Plaintiffs have demonstrated bad faith justifying the requested depositions; thus the chill on legitimate deliberations will be negligible. What's more, when there is a finding of bad faith, as is the case here, the government's interest in secrecy evaporates. So in the end, allowing Plaintiffs to depose the commissioners will remind them "that they are subject to scrutiny," which will serve "a useful purpose." *N. Pacifica*, 274 F. Supp. 2d at 1125 (quoting *Newport*, 200 F.R.D. at 640).

*Fifth*, this litigation is of the utmost seriousness. It involves a government agency disregarding a recent rebuke from the Supreme Court and acting with hostility and in a discriminatory manner toward Plaintiffs' religion. Both the need to stamp out "discrimination," *Newport*, 200 F.R.D. at 639, and the importance of protecting "constitutional rights weigh[] in favor" of allowing Plaintiffs to depose the commissioners, *N. Pacifica*, 274 F. Supp. 2d at 1123.

*Sixth*, this case presents allegations of government misconduct and bad faith that, as this Court has already said, have a solid foundation. Doc. 94 at 20-21. This final factor also tilts the scale against the deliberative-process and mental-process privileges.

**4.      Defendants' previously cited case law is unavailing.**

Defendants have previously cited *United States v. Morgan*, 313 U.S. 409, 422 (1941), *Grant v. Shalala*, 989 F.2d 1332, 1344 (3rd Cir. 1993), and *Sica v. Connecticut*, 331 F. Supp. 2d 82, 88 (D. Conn. 2004), to suggest that Plaintiffs should not depose the commissioners. *See* Doc. 97 at 4-5. Those cases are inapposite. They all involved administrative adjudicators who were deposed or shielded from deposition as adjudicators. But Plaintiffs seek to depose the

10

commissioners not about how they plan to adjudicate Plaintiffs' case, but about their prosecutorial act of filing the formal complaint, including the relevant discussions and considerations surrounding it.

Defendants' three cases are unavailing for other reasons. *Morgan*'s general rule against inquiring into the thoughts of administrative adjudicators, *see* 313 U.S. at 422, as the Tenth Circuit has held, "has an exception for cases involving 'a strong showing of bad faith or improper behavior.'" *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1139 (10th Cir. 1999) (quoting *Overton Park*, 401 U.S. at 420). As explained above, that exception applies here.

In *Grant*, the court emphasized that the administrative agency took affirmative steps to safeguard the impartiality of its adjudications—by conducting its own investigation into a suspect administrative law judge. 989 F.2d at 1346. But here, Defendants have done nothing similar in response to the Supreme Court's recent finding of Commission hostility.

And the *Sica* court was reluctant to interfere with the state administrative proceeding for two reasons not present here. First, the court there had yet to decide whether to abstain, *see Sica*, 331 F. Supp. 2d at 87, whereas this Court has already refused to abstain and determined that it has jurisdiction over Plaintiffs' claims, Doc. 94 at 53. Second, *Sica* found no "showing of actual [or] extant bias" by the "members of the Connecticut Medical Examining Board." 331 F. Supp. 2d at 88. Here, however, this Court has already determined that the commissioners "are pursuing the discrimination charges against Phillips in bad faith." Doc. 94 at 21.

Notably, the course adopted by the *Sica* court actually supports what Plaintiffs request here. The state "Commissioner of Public Health" began the state "disciplinary action" in that case "by the filing of written charges . . . with the examining board." Conn. Gen. Stat. § 20-45.

This means that the Commissioner acted as prosecutor and the Board acted as adjudicator. While *Sica* prohibited depositions of the "members of the Connecticut Medical Examining Board"— specifically, "those panel members . . . assigned the task of conducting the hearing in Plaintiff's case," 331 F. Supp. 2d at 88—the plaintiff was allowed to depose and call as a witness the officials who filed disciplinary charges against her, *see Sica v. Connecticut*, No. 3:04-cv-00023-WIG, Findings of Fact, ECF No. 61, at 2-3 (Oct. 8, 2004) (noting that officials who brought the "disciplinary charges" against plaintiff testified). Because Plaintiffs here similarly seek to probe the decision to pursue charges against them, *Sica* is consistent with their request.

Nor would allowing Plaintiffs to ask questions about the commissioners' prosecutorial role compromise the state proceeding. The commissioners' prosecutorial work—the filing of the formal complaint—is complete. They do not act in a legal counsel role. *See* Colo. Rev. Stat. § 24-34-306(8). That task is the Attorney General's. 3 Colo. Code Regs. § 708-1:10.8(A)(3) ("The case in support of the complaint shall be presented at the hearing by the attorney general's office"). So it is not as if Plaintiffs will be exploring the mental impressions of their opposing counsel or obtaining information from the administrative law judge who will preside over their case if it proceeds. Permitting the requested depositions thus raises no ongoing concerns should the state prosecution ultimately move forward.

### 5. Plaintiffs are entitled to inquire into matters outside the deliberative-process and mental-process privileges.

A blanket ban on deposing the commissioners is also unwarranted because many topics that Plaintiffs want to address fall outside any reasonable claim of deliberative-process or mental-process privilege. For example, at the very least, Plaintiffs should be able to ask each commissioner about *facts* (as opposed to deliberations or mental impressions) relevant to this

12

case because "the general rule [is] that factual materials" do not fall under those privileges. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1229 (10th Cir. 2007). Alternatively, Plaintiffs may inquire about the commissioners' communications outside the deliberative context, particularly with people who are not commissioners. Or if circumstances warrant, Plaintiffs might need to probe the steps that each commissioner took to comply with the document requests that Plaintiffs served on them. Because Plaintiffs may legitimately ask about these and many other topics regardless of whether certain privileges apply, the Court should not bar Plaintiffs from deposing the commissioners.

## II.   Plaintiffs should be allowed to inquire into the commissioners' discussions or statements about Plaintiffs.

Plaintiffs' analysis in Section I. establishes that they may inquire into the commissioners' discussions or statements about Plaintiffs. All that Plaintiffs add here is that the Supreme Court in *Masterpiece I* focused specifically on commissioners' discussions and statements in resolving that case. *See* 138 S. Ct. at 1729 (relying on commissioners' comments about Plaintiffs made during official deliberations—comments ranging from the notion that Phillips "cannot act on his religious beliefs 'if he decides to do business in the state,'" to outright animus that referred to Plaintiffs' plea for religious freedom as a "despicable piece[] of rhetoric").

## III.   Plaintiffs should be allowed to inquire into the commissioners' views regarding religious freedom.

Plaintiffs' analysis in Section I. above establishes that they may inquire into the commissioners' views regarding religious freedom. Indeed, *Masterpiece I* found that the commissioners' views about religious freedom were relevant indicia of unlawful religious hostility. *See* 138 S. Ct. at 1729 (discussing commissioners' comments about religious freedom

13

made during official Commission deliberations—statements indicating that "religious beliefs cannot legitimately be carried into the public sphere or commercial domain," that "religious beliefs and persons are less than fully welcome in Colorado's business community," that "[i]f a businessman wants to do business in the state and . . . the law's impacting his personal belief system, he needs to look at being able to compromise," and that "we can list hundreds of situations where freedom of religion has been used to justify discrimination").

IV.     **Plaintiffs should be allowed to inquire into the commissioners' views regarding religion, LGBT issues, or personal characteristics.**

Plaintiffs' analysis in Section I. above establishes that they may inquire into the commissioners' views regarding any issue that might shed light on their bias and bad faith—topics that include religion, LGBT issues, or personal characteristics. Regarding the topic of religion, the Supreme Court in *Masterpiece I* relied on the commissioners' views about religion when finding unconstitutional hostility. *See* 138 S. Ct. at 1729 (relying on a commissioner's comment that "religion has been used to justify all kinds of discrimination throughout history"). In addition, given that the ongoing state proceeding grew out of Phillips's decision not to create a cake with an expressive design reflecting and celebrating a gender transition, commissioners' views on LGBT issues might illuminate why or whether they are acting with bias and in bad faith against Plaintiffs. Lastly, inquiry into protected characteristics is necessary to establish Plaintiffs' allegation that "during the last six years, the Commission has not had a Christian member" or "any religious member" who "shares Phillips's religious beliefs about marriage and sex." Doc. 51 ¶¶ 296-97. It is also necessary to assess whether the Commission complies with the statutory requirement that at least four commissioners be "members of groups of people who have been or who might be discriminated against because of disability, race, creed, color, sex,

14

sexual orientation, national origin, ancestry, marital status, religion, or age." Colo. Rev. Stat. §
24-34-303(1)(b)(II)(A).

## V.     Plaintiffs should be allowed to inquire into the commissioners' decisions in other cases.

Plaintiffs have the right to ask about the commissioners' decisions in other cases. Leaving
no doubt on this point, *Masterpiece I* found an "indication of hostility" in the "difference in
treatment between Phillips' case" and the cases of other cake shops. *Masterpiece I*, 138 S. Ct. at
1730. It would thus be improper to wall Plaintiffs off from a category of evidence that the
Supreme Court found probative.

Plaintiffs' first set of document requests seeks information about other Commission
cases. Because the deadline for responding to those requests is not until next week, Plaintiffs are
not sure exactly what they might want to explore about other cases during the commissioners'
depositions. But at a minimum, Plaintiffs want to ask about the state's decision to absolve the
three cake shops that declined William Jack's requests "to create cakes with images" and
religious messages "that conveyed disapproval of same-sex marriage"— the very cases that the
Supreme Court discussed in *Masterpiece I*, 138 S. Ct. at 1730. In short, Defendants' actions and
views concerning their treatment of other business owners in related cases is directly relevant to
Plaintiffs' free-exercise claim, and Plaintiffs should be permitted to probe that topic.

### Defendants' position

Plaintiffs seek depositions of, and written discovery from, the Director and individual
Commissioners regarding actions taken in their prosecutorial and quasi-judicial capacities.
While State Officials do not object to Fed. R. Civ. P. 30(b)(6) depositions concerning non-

privileged issues such as standard practices and processes, they object to their individual depositions for the reasons stated below.

### Summary of Specific Objections to Plaintiffs' Intended Depositions:

State Officials object to individual depositions of the Director and Commissioners, who are absolutely immune.[5] Further, their mental impressions as quasi-prosecutors and quasi-judicial officers are not subject to such inquiry.

Alternatively, to the extent the Court permits individual depositions, State Officials respectfully request that this Court enter an order prohibiting Plaintiffs' from pursuing particular lines of inquiry, pertaining to:

(1) Creeds, membership within any protected classes, personal characteristics, and personal beliefs regarding religious and LGBT issues;

(2) Personal views regarding religious freedom;

(3) Non-public, deliberative thought processes and discussions pertaining to Plaintiffs in either *Masterpiece I* or the ongoing administrative case(s); and

(4) Non-public, deliberative thought processes and discussions pertaining to their quasi-judicial role in other cases.[6]

---

[5] Plaintiffs have indicated they do not intend to depose the Attorney General at this time. The State Officials reserve their right to object in the event Plaintiffs' plans change.

[6] State Officials similarly object to Plaintiffs' written expedited discovery requests to the extent they seek information on these protected topics, or other privileged information. *See Williamson v. U.S. Dep't of Agric.,* 815 F.2d 368, 383 (5th Cir. 1987) ("Congress' intent to shield [government officials] from harassment and the substantial distractions of suit would be circumvented if appellant were allowed to inspect their files and their desks."). State Officials expressly assert, and do not waive all applicable privileges and will produce a Privilege Log/Vaughn index detailing the same.

16

## STANDARD OF REVIEW

The right to civil discovery is not absolute or unlimited. Discovery may be curtailed where the court determines that the desired discovery is unreasonable or unduly burdensome given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2). The Federal Rules of Civil Procedure permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c).

## ARGUMENT

Plaintiffs should be prohibited from deposing individual State Officials or inquiring into their mental impressions. "Discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351–52 (1978). State Officials should not be subject to deposition both because they are absolutely immune, *Butz v. Economou*, 438 U.S. 478, 515 (1978), and because eliciting testimony regarding their mental impressions would denigrate the integrity of the administrative process. *See United States v. Morgan,* 313 U.S. 409, 422 (1941) ("*Morgan* Doctrine"). As a result, Plaintiffs should be prohibited from inquiring into the mental processes of the Division Director and individual Commissioners.

Alternatively, any inquiries should be narrowly tailored to exclude questions pertaining to the State Officials' (1) creeds, membership within any protected classes, personal characteristics, and personal beliefs regarding religious and LGBT issues; (2) personal views regarding religious freedom; (3) non-public, deliberative thought processes and discussions

17

pertaining to Plaintiffs in either *Masterpiece I* or the ongoing administrative case(s); and (4) non-public, deliberative thought processes and discussions pertaining to their quasi-judicial role in other cases.

I.      **State Officials are immune from the burdens of individual depositions.**

This Court ruled the Division Director and the Commission are entitled to absolute immunity based on their prosecutorial functions. Doc. 94, p. 34-41. That finding, and the Commissioners' quasi-judicial functions, precludes their individual depositions.

The principles underlying immunity support this conclusion. In *Tenney v. Brandhove*, 341 U.S. 367 (1951), the plaintiff alleged that members of a state legislative committee called him to appear before them, not for a proper legislative purpose, but to intimidate him into silence on matters of public concern, depriving him of his constitutional rights. The Court concluded that regardless of any unworthy purpose animating their actions, legislators were immune from civil suit when acting "in a field where legislators traditionally have power to act." *Id.*, at 379. Later the Court held that judges are immune for "acts committed within their jurisdiction," even when the judge is accused of acting maliciously and corruptly, "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554-555 (1967) (internal cites omitted).

In *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), the Supreme Court extended the same protections to prosecutors and held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit[.]" Although *Imbler* involved damages claims, its reasoning for extending immunity to prosecutors—shielding them from litigation burdens

that would detract from their official duties or undermine their professional independence—applies equally to discovery burdens in suits for equitable relief. The Supreme Court wrote:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

*Imbler*, 424 U.S. at 424-25 (internal cites omitted). The underlying rationale for applying immunity to shield prosecutors and judges from the burdens of civil litigation thus applies equally to suits for damages and equitable relief alike. Indeed, the Supreme Court has repeatedly said in the related qualified-immunity context that the litigation burdens to be avoided "are not limited to liability for money damages; they also include 'the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). "[E]ven… discovery [is] to be avoided if possible, as [i]nquiries of this kind can be peculiarly disruptive of effective government." *Mitchell*, 472 U.S. at 526 (internal quotations omitted).

Here, the Division Director issued her probable cause determination, acting in her capacity as prosecutor and in congruence with the plain language of CADA. *See Wilhelm v. Continental Title Company*, 720 F.2d 1173, 1178 (10th Cir. 1983) (The Division Director is immune because "she is in a position in the state administrative process that is similar to that of

a judge, hearing officer, or prosecutor."). Thereafter, the Commissioners noticed the matter for hearing before an Administrative Law Judge. *See Horwitz v. Colorado Board of Medical Examiners*, 822 F.2d 1508, 1515 (10th Cir. 1987) (The Board is immune because they act "in the prosecutorial role in that they... initiate complaints, start hearings, make investigations, take evidence, and issue subpoenas."). The State Officials' acts were in "performance of [their] duties," and as such, even Plaintiffs' "ascription of improper and malicious" motives for these prosecutorial decisions does not divest the State Officials of absolute immunity. *Imbler*, 424 U.S. at 424-25. This Court concluded the same. Doc. 94, p. 32-40. Once established, absolute immunity entitles a defendant to be "free from the burdens of trying a lawsuit." *Spielman v. Hildebrand*, 873 F.2d 1377, 1381 (10th Cir. 1992) (citing *Mitchell*, 472 U.S. at 526); *see also Ray v. Judicial Corrs. Servs., Inc.*, No. 12-cv-02819-RDP, 2014 WL 5090723, *6 (N.D. Ala. 2014) (a contrary holding would be "absurd" and "subject every former state judge in the country to the threat of discovery in any proceeding where the judge's inside knowledge... could have plausibly led to relevant information in a collateral matter."). Hence, "[t]he policy behind immunity does not merely extend to suits, it extends to protection against discovery. If... immunity were applicable, then it would be senseless and disruptive to allow for discovery. *See In re Lickman*, 304 B.R. 897, 903 (Bankr. M.D. Fla. 2004) (discussing judicial immunity).

During conferral Plaintiffs indicated reliance upon the unpublished decision in *Denver First Church v. Cherry Hills Village*, 2006 WL 7354733 (D. Colo. 2006), in support of their request for individual depositions. But that case is distinguishable. First, as the court there recognized, under *Grace v. United Methodist Church v. City of Cheyenne*, 427 F.3d 775 (10th Cir. 2005), an objective – rather than subjective – test applies to evaluate defendants' actions,

20

when the law itself is facially neutral and generally applicable. CADA is facially neutral and generally applicable. *Craig v. Masterpiece Cakeshop, Inc.,* 2015 COA 115, ¶ 86-89, 370 P.3d 272, 291, *rev'd on other grounds, Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,* 138 S. Ct. 1719 (2018). Accordingly, the objective *Grace* test applies, and there is no need to inquire into the State Officials' subjective motivations. Second, unlike the State Officials, defendants in *Cherry Hills Village* did not act in a quasi-prosecutorial role. Third, the court there actually found the motives of decision-makers *irrelevant*, except as it pertains to claims brought under the Establishment Clause and RLUIPA, neither of which are at issue here. Fourth, the court in *Cherry Hills Village* erroneously relied upon *Pulliam v. Allen*, 466 U.S. 522 (1984), which was superseded by the Federal Courts Improvement Act of 1996 (FICA), Pub. L. No. 104-317, §309(c), 110 Stat. 3847, 3853. FICA amended §1983, so that injunctive relief is no longer available against judicial officers (although it remains possible to sue a judicial officer for declaratory relief). *See Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) (discussing FICA's impact regarding claims for injunctive relief for judicial officers but abstaining from applying re a law enforcement official); *see also Churchill v. Univ. of Colorado at Boulder*, 293 P.3d 16, 33 (Colo. App. 2010) (discussing FICA's impact regarding claims for injunctive relief). Thus, *Cherry Hills Village* does not support individual depositions of State Officials, and individual depositions of the State Officials should be precluded.

## II.     State Officials should not be deposed regarding their prosecutorial roles.

This Court ruled that the Division Director and the Commission act as prosecutors. Doc. 94, p. 32-40. A judicial inquiry into the subjective motivations of prosecutors through discovery and depositions are "peculiarly disruptive of effective government." *Harlow v. Fitzgerald*, 457

U.S. at 816-17. *Harlow* established the two prongs of qualified immunity and emphasized that "[u]ntil th[e] threshold immunity question is resolved, discovery should not be allowed." *Id.* at 818. If discovery is improper prior to resolving the applicability of qualified immunity, it is doubly so after an entitlement to absolute immunity is decided, as here. Absolute immunity considerations are due to a concern that the harassment of litigation would deflect a prosecutor's energies from public duties and shade decisions instead of exercising the independence of judgment required by the public trust. *Imbler*, 424 U.S. at 422-23.

If individual State Officials are forced to withstand deposition, it would discourage them from faithfully discharging their prosecutorial statutory duties under CADA in future charges, for fear of reprisal from respondent parties leading to burdensome discovery into their subjective motivations. Accordingly, it is inappropriate to "probe the mental processes and motives of the individual decision-maker, rather than to question the objective legal validity of the institutional decision." *Kent Corp. v. NLRB,* 530 F.2d 612, 620 (5th Cir. 1976).

There are other important reasons that weigh against individual depositions of State Officials in their prosecutorial role. As the Supreme Court recognized in *Wayte v. United States*, 470 U.S. 598, 607–08 (1985), "the decision to prosecute is particularly ill-suited to judicial review," and "factors [such] as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* In *Wayte*, the plaintiff failed to register for the selective service, sent a letter declaring his refusal to register, was prosecuted, and then challenged the prosecution pursuant to the First and Fifth Amendments. *Id.* at p. 601-05. The Supreme Court

concluded that a passive enforcement policy, which prosecutes only those who self-report, or are reported by others for violation of the law, violated neither the First nor the Fifth Amendment. *Id.* at p. 614. In reaching that conclusion, the Supreme Court discussed the pitfalls associated with "[e]xamining the basis of a prosecution," writing, "[j]udicial supervision in this area ... entails systemic costs of particular concern ... [it] delays the ... proceeding, threatens to chill ... enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* at 607–08. The same "substantial concerns ... [that] make the courts properly hesitant to examine the decision whether to prosecute," *id.* at 608, apply here and likewise counsel against discovery into State Officials' mental processes in exercise of their prosecutorial roles.

At bottom, State Officials should be entitled to the *full* protections of the absolute immunity granted to them by this Court, including not being subjected to individual discovery depositions regarding their prosecutorial roles that would distract them from their duties and furthermore risks allegations of shade or taint upon their later decisions.

**III.   Alternatively, the Director is qualifiedly immune for investigative work.**

The Division Director functions as a prosecutor, and as such, she is absolutely immune. *See Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Prosecutors are entitled to absolute immunity for their decisions to prosecute, *their investigatory or evidence-gathering actions*, their evaluation of evidence, *their determination of whether probable cause exists*, and their determination of what information to show the court." (Emphasis added and cite omitted)). This Court concluded the same. Doc. 94. Accordingly, the

Division Director should not be subject to deposition, as set forth above. To the extent any of her work prior to the issuance of the probable cause letter may be construed as administrative, she remains qualifiedly immune and should not be subject to deposition for the same reasons.

The *Imbler* Court stopped short of deciding whether the protections of absolute prosecutorial immunity equally applied to a prosecutor's administrative or investigative functions. *Id.*, 424 U.S. 430-31. Later, the Supreme Court held that when a prosecutor functions as an administrator or investigator, she is qualifiedly immune. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993).

As indicated, *Harlow* codified the two-prongs of the qualified immunity analysis. 457 U.S. at 816-17. The State Officials' Motion to Dismiss (Doc. 64, p. 24-27), incorporated by reference herein, argues that the Division Director is entitled to the protections of qualified immunity because Plaintiffs fail to demonstrate she violated "clearly established" law. Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). Therefore, Plaintiffs should not be allowed to wield the most burdensome discovery tool: individual depositions. In *Williamson v. U.S. Dep't of Agric.,* 815 F.2d at 383, the Fifth Circuit reviewed the grant of summary judgment on a motion to dismiss, converted after the attachment of affidavits and other evidence. Due to the procedural posture, the party opposing summary judgment had not had discovery. Notwithstanding, the Circuit affirmed the grant of qualified-immunity to defendant government officials, as well as the denial of discovery since "the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery." *Id.,* 815 F.2d at 382 (relying on *Harlow*, 475 U.S. at 816-

18). Thus, an individual deposition is one of the "other burdens" the Division Director should not have to endure. *Ahmad v. Furlong*, 435 F.3d at 1198; *see Harlow*, 457 U.S. at 818.

### IV.    Commissioners should not be deposed regarding their quasi-judicial roles.

The Commissioners also act as judges, and Plaintiffs indicated they seek deposition testimony from them on their non-public, deliberative thought process and discussions pertaining to their quasi-judicial role in other cases. "It has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper." *Grant v. Shalala,* 989 F.2d 1332, 1344 (3rd Cir. 1993). It is for that reason that judicial officers may not be compelled to testify concerning their mental processes employed in formulating official judgments or the reasons that motivated them in their official acts. *State ex rel. Kaufman v. Zakaib*, 207 W. Va. 662, 670, 535 S.E.2d 727, 735 (2000). Since the Commissioners act in a quasi-judicial capacity, they should not be deposed regarding their mental impressions consistent with the Supreme Court's decision in *Morgan*.

The *Morgan Doctrine* arose in the context of a quasi-legislative proceeding where the Secretary of Agriculture issued an order setting rates for market agencies at the Kansas City Stockyards. Under the operative statute, the regulated agencies were entitled to a full hearing with procedural safeguards. However, due to unusual and unique circumstances, the Secretary was required to be an arbiter of rates for past years. The lower court permitted deposition of the Secretary, which the Supreme Court found was inappropriate since the proceeding before the Secretary bore the hallmarks of a judicial proceeding.

> [T]he short of the business is that the Secretary should never have been subjected
> to this examination. The proceeding before the Secretary has a quality resembling
> that of a judicial proceeding. Such an examination of a judge would be destructive
> of judicial responsibility. We have explicitly held … that it was not the function

> of the court to probe the mental processes of the Secretary. Just as a judge cannot
> be subjected to such a scrutiny, so the integrity of the administrative process must
> be equally respected. It will bear repeating that although the administrative
> process has had a different development and pursues somewhat different ways
> from those of courts, they are to be deemed collaborative instrumentalities of
> justice and the appropriate independence of each should be respected by the other.

*Morgan*, 313 U.S. at 422. Thus, *Morgan* stands for the principle that when a government

official's duties take on a judicial quality—as here—there is no right to depose them. *See*

*also Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985).

The Commissioners act quasi-judicially. "[I]mmunity is justified and defined by the

functions it protects and serves, not by the person to whom it attaches." *Valdez v. City and*

*County of Denver*, 878 F.2d 1285, 1287 (10th Cir.1989) (internal cites omitted). Under CADA,

the Commission may "hold hearings upon any complaint issued against a respondent pursuant

to section 24-34-306;… subpoena witnesses and compel their attendance;… administer oaths

and take the testimony of any person under oath; and… compel such respondent to produce for

examination any books and papers relating to any matter involved in such complaint." §24-34-

305(1)(d)(I), C.R.S. Without a doubt, the Commissioners' ability to hold hearings, issue

subpoenas, administer oaths, and compel the production of evidence, mirror those of judicial

officers. Later, the Commission is duty-bound to adjudicate any charge that goes to hearing.

§24-34-306(10-11), C.R.S. (if respondent violated CADA, the Commission "shall issue… an

order requiring… respondent to cease and desist from discriminatory or unfair practice;" if

respondent did not engage in discriminatory conduct, the Commission "shall issue… an order

dismissing the complaint"). The Commission will eventually consider Ms. Scardina's charge.

Duties such as these are integrally related to the judicial process. *See Whitesel v. Sengenberger*,

222 F.3d 861, 867 (10th Cir. 2000). Since the administrative proceedings have judicial qualities,

the Commissioners are entitled to the full panoply of protections afforded by quasi-judicial immunity, and should not be deposed regarding their non-public, deliberative thoughts on this and other proceedings.[7]

### V.   State Officials' mental impressions are protected.

The State Officials' mental impressions remain protected, regardless of the Court's decision with respect to *Younger* abstention. The Court should prevent Plaintiffs from inquiring into the State Officials' non-public, deliberative thought processes and discussions pertaining to Plaintiffs in either *Masterpiece I* or the ongoing administrative case(s).

Under *Morgan* and its progeny, high-ranking government officials' thought processes and discretionary acts of are not subject to inspection under the spotlight of deposition because decision-makers enjoy a mental process privilege. *In Re United States of America,* 985 F.2d 510, 512 (11th Cir. 1993); *Kyle Eng'g Co. v. Kleppe,* 600 F.2d 226, 231-32 (9th Cir. 1979); *In Re Office of Inspector General,* 933 F.2d 276, 278 (5th Cir. 1991); *United States v. Merhige,* 487 F.2d 25, 29 (4th Cir. 1973); *United States v. Miracle Recreation Equip. Co.,* 118 F.R.D. 100, 104-06 (S.D. Iowa 1987). The *Morgan* Court found that the Secretary's "strong views on matters" did not "unfit him for exercising his duty" in later proceedings. 313 U.S. at 421. "[T]he Secretary merely indulged in a practice familiar in the long history of Anglo-American litigation, whereby unsuccessful litigants and lawyers give vent to their disappointment in tavern or press." *Id.* at 421. Likewise, no exception to the mental process rule

---

[7] Plaintiffs should also be prohibited from obtaining the details of the State Officials' mental impressions via written discovery. *See U. S. Bd. of Parole v. Merhige,* 487 F.2d at 29. Although the State Officials do not interpret Plaintiffs' Interrogatories to seek such information, the State Officials wish to preserve their objection to the extent they may plausibly be read otherwise.

applies here and the Court should prohibit inquiry into the mental processes of individual State Officials.

Permitting depositions of the Commissioners qua judges also risks allegations of taint upon the subsequent administrative process. In a federal case, arising from Georgia a criminal defendant declared his intention to call several judges as witnesses because they participated in an allegedly biased jury selection system by selecting jury foremen, and sought dismissal of the indictment against him. The defendant argued that the judges should be recused from consideration of his case because he wanted to call them as witnesses. One of the judges in question found that the defendant's theory was flawed, writing, "judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed." *United States v. Cross,* 516 F. Supp. 700, 707 (M.D. Ga. 1981), *aff'd,* 742 F.2d 1279 (11th Cir. 1984). A federal case arising from Louisiana likewise points out the dangers of forcing a judge to testify. There, the former governor declared his intention to call the judge as a witness, which prompted the judge to note that "[n]either counsel nor a party may seek recusal of a judge by announcing that they intend to call the judge as a witness." *United States v. Edwards,* 39 F. Supp. 2d 692, 705 (M.D. La. 1999) (citing *United States v. Diana,* 605 F.2d 1307 (4th Cir. 1979); *Cross,* 516 F. Supp. 700). Correspondingly, individual depositions of the Commission is problematic and risks arming Plaintiffs with grounds to later seek recusal of the only body with authority to adopt or reject the ALJ's decision.

These cases "counsel great caution in allowing a party facing state disciplinary… proceedings to subject agency heads, investigators, and decision makers to cross-examination

while a state proceeding is pending… and before the state body has made its decision." *Sica v. Connecticut*, 331 F. Supp. 2d 82, 88 (D. Conn. 2004). In *Sica*, the court denied the civil plaintiff the opportunity to question "through deposition, interrogatories, or otherwise" those members of the medical board responsible for overseeing the administrative case, and noted that "it would be an affront to this state agency to have subjected Board members to cross-examination on issues that they will shortly be called upon to decide at the upcoming hearing." *Id.* The State Officials urge the same result herein and for each of these reasons Plaintiffs' should be prohibited from inquiring into their mental processes.

### VI.   State Officials' personal characteristics, beliefs, and views are irrelevant.

To the extent this Court permits Plaintiffs to depose the individual State Officials, any inquiries should be narrowly tailored to *exclude* from inquiry any questions pertaining to the State Officials' creeds, membership within any protected classes, personal characteristics ("characteristics"), personal beliefs regarding religious and LGBT issues ("beliefs"); and their personal views regarding religious freedom ("views").

The State Officials' characteristics, beliefs, and views are irrelevant. *See* Fed. R. Evid. Rules 401, 402, and 404(a)(1). *See also id.* 610 ("Evidence of a witnesses' religious beliefs or opinions is not admissible to attack or support the witnesses' credibility."). It is unclear what purposes these lines of inquiry would serve, and permitting them risks harassment and embarrassment of the State Officials. Characteristics and beliefs do not establish bias. *See Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) ("The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination… is, therefore, so biased that he or she could not

hear the case, comes nowhere near the standards required for recusal. Indeed, if background or sex or race of each judge were, by definition, sufficient grounds for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with distinguished law firm or public service backgrounds.").

In *Com. of Pa. v. Local Union 542, Int'l Union of Operating Engineers*, 388 F. Supp. 155, 157 (E.D. Pa. 1974), the plaintiff class in a race discrimination case sought recusal of the trial judge based in part upon his African American race, as well as because he gave a speech at a luncheon meeting of the Association for the Study of Agro-American Life and History, a group composed of "black historians" and during that speech he criticized two then-recent Supreme Court decisions regarding racial discrimination; he previously presented himself as "a leader in the future course of the black civil rights movement;" he believed there had been social injustices to African Americans; and he was a "celebrity" in the African American community. *Local Union 542*, 388 F.Supp. at 157-58. The allegations were legally insufficient to justify disqualification. *Id.* at 159.

Characteristics and beliefs are not disqualifying. *See Local Union 542*, 388 F.Supp. at 163 ("I concede that I am black. I do not apologize for that obvious fact. I take rational pride in my heritage, just as most other ethnics take pride in theirs. However, that one is black does not mean, ipso facto, that he is anti-white; no more than being Jewish implies being anti-Catholic, or being Catholic implies being anti-Protestant."). Here, regardless of whether State Officials adhere to the same creed as Plaintiffs, a different creed, or no creed at all, that does not render them anti-Christian. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 660 (10th Cir. 2002) ("[C]ourts have consistently held that membership in a church does not

create sufficient appearance of bias to require recusal.") (Collecting cases). In *Bryce*, the plaintiffs sought recusal of District Court Judge Brimmer related to his membership in the Episcopal Church. The Tenth Circuit affirmed denial of the motion to recuse, and wrote "religious beliefs or membership affiliation are presumed not to be relevant." (Internal cites omitted). Similarly, regardless of whether the State Officials are members of the LGBT community or not, does not render them anti heterosexual or cis-gendered, nor would their identity counsel their recusal. *See SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471, 484-86 (9th Cir. 2014). Similarly, dissenting views regarding religious freedom or other legal issues are also not disqualifying. *See Local Union 542*, 388 F.Supp. at 174-76.

Accordingly, Plaintiffs should be prohibited from inquiring regarding State Officials' characteristics, beliefs, and views.

Respectfully submitted this 29th day of January, 2019.

*Attorneys for Defendants*

*Jacquelynn Rich Fredericks*
LeeAnn Morrill
First Assistant Attorney General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6159
Facsimile: (720) 508-6041
leeann.morrill@coag.gov

Grant T. Sullivan
Assistant Solicitor General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6349
Facsimile: (720) 508-6041
grant.sullivan@coag.gov

Vincent E. Morscher
Senior Assistant Attorney General
Civil Litigation and Employment Law
Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6588
Facsimile: (720) 508-6032
vincent.morscher@coag.gov

Jacquelynn Rich Fredericks
Senior Assistant Attorney General
Higher Education Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6603
Facsimile: (720) 508-6041
jacquelynn.richfredericks@coag.gov

*Attorneys for Plaintiffs*

*s/ James A. Campbell*
James A. Campbell (Arizona Bar No. 026737)
Jonathan A. Scruggs (Arizona Bar No. 030505)
Roger G. Brooks (North Carolina Bar No. 16317)
Jacob P. Warner (Arizona Bar No. 033894)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
rbrooks@ADFlegal.org
jwarner@ADFlegal.org

Nicolle H. Martin (Colorado Bar No. 28737)
7175 West Jefferson Avenue, Suite 4000
Lakewood, CO 80235
(303) 332-4547
(303) 425-3201 (facsimile)
nicollem@comcast.net

32

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, the foregoing document was emailed to Magistrate Judge Varholak at Varholak_Chambers@cod.uscourts.gov and to opposing counsel listed below:

LeeAnn Morrill
First Assistant Attorney General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6159
Facsimile: (720) 508-6041
leeann.morrill@coag.gov

Vincent E. Morscher
Senior Assistant Attorney General
Civil Litigation and Employment Law
Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6588
Facsimile: (720) 508-6032
vincent.morscher@coag.gov

Grant T. Sullivan
Assistant Solicitor General
Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6349
Facsimile: (720) 508-6041
grant.sullivan@coag.gov

Jacquelynn Rich Fredericks
Assistant Attorney General
Higher Education Unit
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6603
Facsimile: (720) 508-6041
jacquelynn.richfredericks@coag.gov

*Attorneys for Defendants*

*s/ James A. Campbell*
James A. Campbell