IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02074-WYD-STV

MASTERPIECE CAKESHOP INCORPORATED, a Colorado corporation, et al.
    Plaintiffs,
v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her official capacity, et al.,
    Defendants.

## DEFENDANTS' SUPPLEMENTAL BRIEF RESPONDING TO THE PARTIES' JOINT STATEMENT REGARDING DISCOVERY DISPUTES

The State Officials, through undersigned counsel, submit the following Supplemental Brief Responding to the Parties' Joint Statement Regarding Discovery Disputes.

### ARGUMENT

**I.    None of the cases Plaintiffs cite establishes that they are entitled to depose individually immune decision-makers regarding their mental impressions, deliberative processes, characteristics, views, or beliefs.**

Plaintiffs seek the depositions of the Division Director and individual Commissioners, who have to-date acted as prosecutors, and each of whom this Court determined are entitled to the protections of prosecutorial immunity. Doc. 94, p. 3-41. In addition, the Commissioners have a role yet to fulfill in this case as judges, in a quasi-judicial capacity. Although Plaintiffs claim their inquiry is limited to the prior exercise of prosecutorial discretion, what they actually request encompasses both the prosecutorial, as well as the judicial functions of the Commission, as they also seek to discover the Commissioner's mental impressions regarding their quasi-judicial

decisions in other matters.[1] The risks of permitting such inquiry are significant, including: likely chill to future frank deliberation amongst state officials; inhibiting valid prosecutions under CADA; discouraging qualified individuals from public service due to the risk of intrusive inquiry into their characteristics, views, and beliefs; and a flood of unsubstantiated claims of bias and bad faith by those who seek to avoid state administrative proceedings, which will in turn inundate the federal courts with requests to probe the hearts and minds of quasi-prosecutorial and quasi-judicial officers.

At the outset, no one disputes that in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n* (*Masterpiece I*), 138 S.Ct. 1719, 1732 (2018), the Supreme Court found a prior panel of the CCRC failed to act with the requisite neutrality. That holding was tethered to statements made by some of the prior commissioners during their on the record public deliberations. As a result, their decision was overturned. *Id.* Thus, *Masterpiece I* reiterated that state bodies are obliged to treat the parties before them with due respect. The State Officials respect and honor the Court's decision in *Masterpiece I*. But as significant as what *Masterpiece I* decided, is what it did *not* decide.

- It did not establish that the CCRC could not enforce CADA.
- It did not establish that motivations of future panels of the CCRC should be imputed with the failings of the prior panel.
- It did *not* establish that a party to a state administrative action may have carte blanch access to place individual government officials under oath in order to probe their private mental processes and interrogate their personal characteristics, beliefs, and views, predicated upon that party's mere allegations of bias.

---

[1] Plaintiffs' proposal to depose the State Officials limited to their prosecutorial role is unworkable. Plaintiffs cite no analogous case where a court permitted inquiry into only the prosecutorial role but shielded the judicial role. That is likely because courts understandably recognize that agency members cannot neatly fit their answer into one role and block out the other. For this reason, Plaintiffs' proposed limit will be impossible to administer.

It is undisputed that none of the current Commissioners participated in the adoption of the ALJ's decision in *Masterpiece I*, during which the offending remarks were made. Yet, Plaintiffs ask this Court to impute the poor conduct of a prior body in another case to the current Commission's consideration of Ms. Scardina's charge, in a bid to probe the subjective motivations of current panel. More so, Plaintiffs ask this to Court strip away the well-established protections of immunity, despite the Court's own prior finding. Doc. 94, p. 3-41.

Plaintiffs provide neither admissible evidence nor on-point, controlling legal authority in support of their request. Plaintiffs submit only their allegations of bad faith, predicated primarily upon their imputation theory. But, mere allegations, even if sufficiently well-plead to survive a motion pursuant to Fed. R. Civ. P. 12(b)(1), are insufficient to overcome the well-established authority which stands for the proposition that whether as quasi-prosecutors or quasi-judicial officers, the State Officials should *not* be subject to individual deposition. Their argument to the contrary ignores the presumption that applies to government actors – a "presumption of legitimacy" is accorded to government officials' conduct. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *accord McGarry v. Sec. & Exch. Comm'n*, 147 F.2d 389, 393 (10th Cir. 1945). Yet Plaintiffs seek to apply the *opposite* presumption—that certain of the State Officials will necessarily act with impermissible hostility because his or her predecessors did so. That backwards presumption has no basis in law or fact. Indeed, even when there is a reversal and remand to the *same* trial-level adjudicator, the appellate courts presume that the adjudicator will correctly and lawfully apply the appellate court's binding guidance on remand. *See Chianelli v. Env't Prot. Agency*, 8 F. App'x 971, 979 (Fed. Cir. 2001) (concluding reassignment request was properly denied because appellant "failed to overcome the presumption of honesty and

3

integrity that accompanies administrative adjudicators"); 73A C.J.S. Public Admin. Law & Procedure § 497 n.19 (courts must presume that administrative officials faithfully followed its remand instructions).

*The administrative proceedings are ongoing.* Plaintiffs cite no case from *any* jurisdiction where a court permitted inquiry into the thought processes of either a quasi- prosecutorial or judicial officer when the proceedings were *ongoing*. The cases they cite pertain to the *completed* quasi-legislative actions, *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005)[2]; *Denver First Church of Nazarene v. Cherry Hills Vill.*, No. 05-CV-02463-WDM-MEH, 2006 WL 7354733 (D. Colo. July 19, 2006), or deliberations which motivated industry regulators' decisions, like the FDA. *See Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995);[3] *Tummino v. ConEschenbach*, 427 F.Supp.2d 212 (E.D. N.Y. 2006); *Inforeliance Corp. v. U.S.*, 118 Fed.Ct. 744 (Fed. Cl. 2014).[4] The closest they come is *Tri-State*

---

[2] The *Lake Cty. Bd.*, court expressly found that immunity (legislative) did not apply, and the court expressly found that deliberative and mental process privileges were not intended to apply to "routine" personnel decisions, as in that case. *Id.* In addition, plaintiffs there came forward with "some evidence" of misconduct, beyond mere allegation, which included a letter and a particular sequence of events. *Id.*

[3] *Texaco P.R.*, dealt solely with documents, not testimony. Furthermore, the court made express findings of "bad faith over a lengthy period of time" based on evidence of "arbitrariness and discriminatory motives." *Id.* at 885. As set forth below, Plaintiffs have not submitted any evidence in support of their mere allegation of bad faith. In addition, the current panel of Commissioners has no history with Plaintiffs. Finally, Plaintiffs cite this case for the proposition that the benchmark to overcome deliberative process privilege is to "demonstrate sufficient evidence." *See* Joint Statement, p. 6, fn. 3. But, under *Texaco P.R.*, the standard is actually a "strong showing" rather than one predicated upon sufficiency. *Id.* at 885.

[4] *Inforeliance Copr.*, was a procurement protest case wherein the plaintiff sought to supplement the administrative record. The court required plaintiff to set forth "well grounded" allegations of bias, resting on "hard facts" rather than "mere[] innuendo or suspicion." *Id.* at 748. The facts alleged via declaration in that case included that a fellow member of the team evaluating the competing proposals witnessed advocacy like conduct by the chairperson and another team

*Hosp. Supply Corp. v. U.S.*, 2005 WL 3447890 (D.D.C. Dec. 16, 2005). But even there, the underlying state case was completed, and only documents were sought. It was not until later that the federal plaintiffs brought abuse of process and malicious prosecution claims in federal court. Those claims are not present here.

The same is true with *McGoldrick v. Koch*, 110 F.R.D. 153 (S.D. N.Y. 1986). There, the police department's quasi-judicial role was completed – the officers had already been dismissed. Importantly, that case says that mere assertions of bad faith are not enough to get discovery. *McGoldrick*, 110 F.RD. at 155, 157 (a "prima facie showing" of impropriety is required; "mere assertions" do not suffice; "general allegations" are not sufficient to intrude into mental processes). Further, *McGoldrick* cited to *Andrew v. Knowlton*, 509 F.2d 898, 906-07 (2d Cir. 1975), for the proposition that a party must present "a more specific evidentiary basis" to obtain discovery. In *Andrew*, the Second Circuit upheld a refusal to allow depositions of the West Point Board of Officers despite statistical evidence showing the extreme rarity with which the Board ruled in favor of a cadet in disciplinary proceedings. Although *McGoldrick* ultimately permitted limited deposition of a trio of prosecutors, the underlying case was concluded, the depositions were limited to written question, and it was only after the plaintiffs in that case presented facts via affidavit that they personally overheard the prosecuting attorney state that the case never should have proceeded and was only being pursued for political reasons. Yet, even under those facts, the court found that "plaintiffs here have met [their] burden [to present a specific

---

member on behalf of certain proposals, and that when another team member called out the behavior, he was chastised. *Id.* As set forth below, Plaintiffs provide *no* "hard facts" in support of their allegations of bias, which this Court previously found wanting.

evidentiary basis], but just barely." *McGoldrick*, 110 F.R.D. at 156. Plaintiffs here made no such showing and the risk of harm to the ongoing State proceedings is paramount. It bears restatement that the likely reason that such inquiries are not permitted when a state administrative case is ongoing is to avoid any taint to the process, which may lead to later broad requests for recusals by agency members.

*Persuasive versus precedential authority.* Plaintiffs rely heavily on out of circuit district court cases and unpublished authority. Indeed, of the 16 cases relied upon by Plaintiffs in their Sections I (1-4), only *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 409 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) and *Franklin Sav. Corp. v. U.S.*, 180 F.3d 1124 (10th Cir. 1999) are published precedent. And both are distinguishable as set forth herein. The remaining cases are both nonbinding, and distinguishable.

In *Franklin*, the Tenth Circuit considered a claim pursuant to the FTCA. Although Plaintiffs cite *Franklin* in support of undermining *Morgan, see* Joint Statement, p. 11, it does no such thing. Initially, the language attributed by Plaintiffs is not the case's holding. Rather, the out of context passage reflects the Tenth Circuit discussing the distinctions between qualified immunity under *Harlow* and the *Morgan* rule. Ultimately, the *Franklin* Court ruled that while "it is sensible to allow judicial inquiry into bad faith and subjective decision making in a few exceptional cases under the APA" the same was not true of other contexts where such inquiry would be "peculiarly disruptive." *Id.*, 180 F.3d at 1140. For that reason, *Franklin*, undermines rather than supports Plaintiffs' position.

The only case Plaintiffs rely upon in Section I(5) is *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1229 (10th Cir. 2007), but that case is inapposite for two reasons. First, it fails to

6

include a prior immunity finding, as in this case. Second, it related exclusively to production of documents rather than deposition testimony. Here, Plaintiffs are being provided documents. Moreover, the case actually affirmed that all opinions contained within the subject documents were properly subject to the protections of deliberative process. Meanwhile, Plaintiffs seek to inquire quite broadly beyond mere factual recitations and into the subjective motivations of the State Officials, a result *Trentadue* does not support.

Sections II-V rest exclusively upon the *Masterpiece I* decision, which as set forth above, did not reach issues of discovery and does not otherwise suggest that individual depositions of the immune State Officials regarding their subjective motivations, mental impressions, deliberative-process, or characteristics, views, and beliefs are appropriate. To the contrary, *Morgan* controls, and the State Officials should not be subject to individual depositions.

*Immunity.* The bulk of the cases Plaintiffs cite are limited to addressing deliberative process. But, the thrust of the State Officials' position is that they are quasi-prosecutorially and judicially immune, and thus, not subject to discovery in the first instance. Secondarily, the State Officials claim the protections of both the mental process privilege set forth in *Morgan*, and deliberative process privilege. Most of the cases Plaintiffs rely upon avoid any discussion of immunity as it applies to the matter of discovery. The lone exception is *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. at 527. In that case, the defendant asserted legislative immunity, which the court determined was inapplicable. Once immunity applies, it is not lost simply because the plaintiff happens to allege misconduct by other officials. *North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1122 (N.D. Cal. 2003) (discussing legislative immunity).

*Mental process privilege.* Of the nearly two-dozen cases relied upon by Plaintiffs in their position statement, the majority address only deliberative process or other privileges not at issue herein. Only *Lake Cty.* (discussed above) and *North Pacifica*, which is distinguishable, address the mental process privilege. In *North Pacifica*, plaintiff brought suit alleging violation of its equal protection rights related to the imposition of a condition on the approval of its condominium project. *Id.* at 1120. The court recognized that intrusion into mental processes presents a greater imposition that merely inquiring into their deliberations. *Id.* Such intrusion is appropriate, only where a "strong showing" of bad faith or improper behavior has been made. *Id. citing Overton Park*. Plaintiffs here make no such showing. And it is only the most "extraordinary instances" where members of a decision making body might be called to testify regarding their decisions. *Arlington Heights*, 429 U.S. at 268. This is not such a circumstance. The plaintiffs in *North Pacifica* were also limited to inquiring into the *objective* manifestations of the concluded decision making process, and the court required them to abstain from inquiry regarding the "subjective uncommunicated thoughts" and beliefs of the City Council, *Id.* at 1125. Plaintiffs, here, by contrast, desire to probe precisely that.

*Documents versus testimony.* Similarly, most of the cases Plaintiffs rely on, pertain to requests for documents, rather than the significantly more burdensome and intrusive request for individual depositions. *See e.g. In re Sealed* Case, 121 F.3d 729 (D.C. Cir. 1997); [5] *Holmes v.*

---

[5] *In re Sealed Case*, dealt solely with a subpoena seeking documents not depositions and did not address issues of prosecutorial or quasi-judicial immunity. Also, the D.C. Circuit simply ordered the district court to review the requested materials *in camera* but did not order their production. Finally, the quote Plaintiffs attribute (Joint Statement, p. 5) is not the holding, but dicta parsing the nuances between deliberative process privilege and presidential privileges.

*Hernandez*, 221 F.Supp. 3d 1011 (N.D. Ill. 2016).[6] Those which do address deposition are factually and legally distinguishable as set forth herein. *See Newport Pacific, Inc. v. Country of San Diego*, 200 F.R.D. 628 (S.D. Ca. 2001);[7] *Tummino v. ConEschenbach*, 427 F.Supp.2d 212.[8]

*There is no actual evidence of bad faith or bias*. Plaintiffs' position rests primarily upon their mistaken belief that the Court affirmatively determined that the State Officials act in bad faith and are biased. The Court has made no such finding. Rather, this Court narrowly found that because it was obliged to accept Plaintiffs' allegations consistent with Fed. R. Civ. P. 12(b)(1), they had sufficiently alleged bad faith to withstand the State Officials Motion to Dismiss. Doc. 94, p. 15, 23. Notably, the Court found the investigation was not in bad faith. Doc. 94, p. 22. Regardless, the Court's preliminary finding that Plaintiffs sufficiently alleged bad faith does *not* equate with either a factual or a legal determination that the State Officials have *actually* acted in bad faith. Plaintiffs have not come forward with evidence establishing their allegations of bad faith.

---

[6] *Holmes v. Hernandez*, dealt solely with documents, not testimony where the mother of a police shooting victim sought records of an internal investigation. Although it addressed deliberative process, it did not consider mental impressions. The process therein was not ongoing and there was no consideration of prosecutorial or judicial immunity.

[7] *Newport Pacific*, was a challenge to the denial of a developer's plan under the FHA, which included some civil rights claims. The developer sought documents and was permitted to obtain the testimony of legislative aids. However, the underlying process was concluded and there was no assertion of prosecutorial or judicial immunity.

[8] *Tummino* was an APA review of the denial of approval to make Plan B birth control an over the counter medication. Plaintiffs therein sought documents and testimony. The court permitted the taking of three depositions only after plaintiffs make a "strong showing" in support of their claim of bad faith. *Id.*, 427 F.Supp. 2d at 230-31. Significant facts included that the decision maker confessed that he had already made up his mind prior to issuing his decision and that two members of the advisory committee resigned in protest over the decision-making process which was involved. *Id.* at 233. No such facts are present here.

This Court did not find sufficient allegations – let alone evidence – of bias, and Plaintiffs submit no evidence substantiating the same. Initially, bias and bad faith are not equivalent. Although the Court found Plaintiffs had sufficiently alleged bad faith to withstand dismissal pursuant to Fed. R. Civ. P. 12(b)(1), it abstained from any finding pertaining to bias. Doc. 94, *ibid*; Transcript of Dec. 18, 2018 Hearing at p. 13, ln. 16-17 ("I'm not so sure I agree that there is bias…"); p. 17, ln. 14 ("I don't really think there's bias.").

Plaintiffs' allegations of bias are thin. Plaintiffs allege that Commissioner Aragon once posted an image of the White House lit up in rainbow colors on Facebook, and *formerly* sat on the board of the National LGBTQ Task Force, an organization that was one of the nearly 100 amici in *Masterpiece I*. Doc. 51 ¶260-61; Doc. 103 ¶260-61. It is unsurprising that someone willing to serve as a Commissioner is involved in their community and has participated on the board of another organization. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 660 (10th Cir. 2002); *see also In re Apollo*, 535 Fed. Appx. 169, 173 (3d Cir. 2013) ("Judges are often active members of their communities. As a result, tangential connections to the individuals and entities involved in a particular case are not uncommon"). But an affinity for public service and community involvement is hardly the stuff of bad faith or bias. Moreover, if allegations of one time participation with an organization that filed an amicus brief in *Masterpiece I* is disqualifying, then every person who ever been a member of the American Bar Association or the Denver Metro Chamber of Commerce, as well as all employees of Amazon.com, Inc., Apple, Marriott International, Inc., PricewaterhouseCoopers LLP, and even those who drive for Lyft Inc. and Uber Technologies, Inc. must be excluded from future service

on all state boards. These allegations are insufficient to establish bad faith or bias sufficient to overcome immunity.

Plaintiffs also allege that in January of 2013 Commissioner Pocock tweeted the phrase "cake hater." Doc. 51 ¶259. However, neither that social media post or any other referenced Mr. Phillips, the Masterpiece Cakeshop, or *Masterpiece I*. None of her posts denigrates or even discusses Plaintiffs' faith. And the post Plaintiffs quote out of context was made on January 23, 2013, while Ms. Pocock – well prior to her service as a Commissioner – observed a hearing before the senate judiciary committee pertaining to Senate Bill 13-11. Doc. 103 ¶259. Mr. Phillips did not testify during that hearing, nor was his name mentioned. *Id.* Again, historical community involvement is unsurprising and hardly speaks of bad faith or bias. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d at 660; *see also In re Apollo*, 535 Fed. Appx. at 173. Even if Commissioner Pocock had tweeted about Mr. Phillips – which she did not – that would not establish bad faith or bias. *See United States v. Morgan,* 313 U.S. 409, 421 (1941) ("… litigants and lawyers give vent to their disappointment in tavern or press."); *Phelps v. Hamilton*, 59 F.3d 1058, 1063 (10th Cir. 1995) ("*Phelps I*") (demonstrated history of "personal animosity" between a prosecutor and a defendant is not, by itself, sufficient to allege that a state prosecution was commenced in bad faith).

To the extent Plaintiffs believe that any individual Commissioner is biased, they may seek recusal of that individual under Colorado's version of the APA. §24-4-105(3), C.R.S. To-date, Plaintiffs have not done so. Having failed to avail themselves of that option, Plaintiffs should not be permitted to levy unsubstantiated allegations of bias in order to probe the mental

processes and subjective motivations of prosecutors and judges in contravention of the decision-makers' immunity.

*The Overton Park exception is inapplicable*. Plaintiffs' reliance on *Overton Park* and its progeny is misplaced. The narrow exception established by that case does not apply here. Instead, *Morgan* remains good and controlling law. In *Overton Park*, pursuant to the APA, the Court considered whether the Secretary of the Department of Transportation properly exercised his "own independent judgement" to administratively approve the expenditure of federal funds to construct a highway through a public park. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 409 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). While the Secretary tendered an affidavit arguing the his decision was supportable, a citizen's organization tendered contrary affidavits and then sought the deposition of a former highway administrator. The district and circuit courts ruled formal findings were not required and refused to order the deposition. The Supreme Court affirmed that no findings were required, but reversed and remanded the case so that the district court could conduct its review predicated upon the "full administrative record that was before the Secretary at the time he made his decision" because the "bare record [did] not disclose the factors that were considered…" *Id.* at 420. In that limited circumstance, the court might "require some explanation" to "determine if the [government] acted within the scope of his authority." *Id.*

The factual and legal dissimilarities are legion. Unlike the Secretary in *Overland Park*, the State Officials have not acted in an administrative capacity; rather, they have up to now acted as prosecutors, and soon the Commission will act as judges, a role much more analogous to that considered by the *Morgan* Court. While the citizen's organization in *Overland Park* lacked a

"full administrative record" and "formal findings," Plaintiffs here have obtained the Division and Commission's files, which include the Director's written probable cause determination. Further materials are forthcoming in the State Officials' written discovery responses. And while the *Overland Park* Court was tasked with ascertaining whether the Secretary acted within the scope of his statutory authority, Plaintiffs' challenge in this case pertains to whether CADA, facially and as applied, violates their First and Fourteenth Amendment rights. Most importantly, the quasi-legislative, "nonadjudicatory" decision in *Overland Park* was fully concluded (save review under the APA). *Id.* at 415. Here however, the administrative complaint regarding Ms. Scardina's charge is very much ongoing, unresolved, and winding its way through a quasi-judicial process, wherein the Commission has not yet considered its merits.

Under this remarkably dissimilar legal and factual posture, and in the absence of the requisite administrative record, the *Overland Park* Court held that testimony from the administrative officials "explaining their [prior and concluded] action" was permissible, in order to conduct "effective judicial review." *Id.* at 420. Even then, the Court counseled that where, as here, "there are administrative findings [like the Division Director's probable cause letter] that were made at the same time as the decision, as was the case in *Morgan*, there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Overland Park*, 401 U.S. at 420. No such showing has been made. For each of these reasons, *Overland Park* is inapposite.

*The hearts and minds of judges and prosecutors.* Plaintiffs argue that they must depose the State officials pertaining to their decision to prosecute Ms. Scardina's charge, via filing of the

13

administrative complaint. This position presents a slippery slope for which Plaintiffs offer no sufficient limits.

Plaintiffs' position is equivalent to the argument that a criminal defendant should be permitted to depose the district attorney assigned to his prosecution.. But, more distressingly, contextualized here, Plaintiffs urge that a criminal defendant should be permitted to depose the new prosecutor assigned to a second action because an appellate body reversed a prior prosecution, helmed by a different prosecutor, predicated upon the first prosecutor's misconduct in the first action. Plaintiffs' position requires this Court to impute the bad faith of a prior decision-maker, in a preceding matter, to a succeeding prosecutorial body in a second prosecution. This argument is countermanded by the well-established presumption in favor of the neutrality of government officials. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. at 174; *accord McGarry v. Sec. & Exch. Comm'n*, 147 F.2d at 393. Indeed, even if on remand from an appeal, the presumption is in favor of the neutrality of the decider. *Id.*

*Alternatively, the State Officials' characteristics, views, and beliefs should be off limits.*

Plaintiffs cite *no* authority in Section IV of their argument that supports inquiry into the personal views of quasi-judicial or quasi-prosecutorial officers on the topics of religion or LGBT issue. The State Officials are aware of none. Also, because the Commission must act as a body corporate, the individual members' personal views and beliefs are irrelevant. *See Lofton v. Secretary of Department of Children and Family Services,* 358 F.3d 804, 824 n. 22 (11th Cir. 2004) (in rejecting proffered deposition testimony from agency personnel, noted that "even if those statements of personal opinion could be charged" to the Department of Children and Family Services, the opinions would be irrelevant to whether the state legislature properly

enacted the challenged statute); *United States v. Ebens,* 800 F.2d 1422, 1442 (6th Cir.1986) (found no error where trial court excluded as irrelevant a letter written by the United States Attorney expressing his personal opinion that there was insufficient evidence to support the Department of Justice's prosecution in that case), *abrogated on other grounds,* 485 U.S. 681 (1988); *c.f. Pennzoil Co. v. Department of Energy,* 680 F.2d 156, 161 n. 8 (Temp.Emer.Ct.App.1982) ("The 'interpretation given by an individual member of a Board or its attorneys is not, we think, to be taken as that official kind of interpretation to which courts must pay attention'").

DATED: February 4, 2019.

PHILIP J. WEISER
Attorney General

*s/ Jacquelynn N. Rich Fredericks*
GRANT T. SULLIVAN*
Assistant Solicitor General
VINCENT MORSCHER*
JACQUELYNN RICH FREDERICKS*
MICHAEL MCMASTER*
Senior Assistant Attorneys General
State Services Section
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
*Counsel of Record
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, I served a true and complete copy of the foregoing **SUPPLEMENTAL BRIEF** upon counsel of record as otherwise indicated below:

kwaggoner@ADFlegal.org
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org

kanderson@ADFlegal.org
dcortman@ADFlegal.org
nicollem@comcast.net

*/s Leslie Bostwick*
Leslie Bostwick