1

1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
2
  Case No. 18-cv-02074-WYD-STV
3  _____

4  MASTERPIECE CAKESHOP INCORPORATED, et al.,

5       Plaintiffs,

6  v.

7  AUBREY ELENIS, et al.,

8       Defendants.

9  _____

10          Proceedings before SCOTT T. VARHOLAK, United States

11  Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 10:58 a.m., February 5,

13  2019, in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17  _____

18                        APPEARANCES

19          JAMES CAMPBELL, Attorney at Law, appearing for the

20  plaintiffs.

21          GRANT T. SULLIVAN, VINCENT MORSCHER, JACQUELYN

22  RICH FREDERICKS and MICHAEL McMASTER, Attorneys at Law,

23  appearing for the Defendants.

24  _____

25                     DISCOVERY CONFERENCE

2

```
 1              P R O C E E D I N G S

 2          (Whereupon, the within electronically recorded

 3  proceedings are herein transcribed, pursuant to order of

 4  counsel.)

 5          THE COURT:  This is 18-cv-2074.  Can I have entries

 6  of appearance, please.

 7          MR. CAMPBELL:  Good morning, Your Honor.  James

 8  Campbell on behalf of the plaintiffs.

 9          THE COURT:  Good morning.

10          MR. SULLIVAN:  Good morning, Your Honor.  Assistant

11  Solicitor General Grant Sullivan.  With me is Senior

12  Assistant Solicitor General Vince Morscher, Jacqueline Rich

13  Fredericks and Assistant Solicitor General Michael McMaster.

14          THE COURT:  Good morning.  So I've reviewed the

15  briefing by the parties.  Let me tell what my preliminary

16  thoughts are and where I struggle with this case.  And it's

17  this, and I think it's phrased best by a case which is not

18  directly on point.  I don't believe any of the cases cited by

19  any party, nor my own independent research has really found

20  that case that is directly on point to what we're dealing

21  with here.

22          The closest I can find at least in balancing the

23  analysis is a case entitled Metro Pony, LLC v. City of

24  Metropolis, and that's a Southern District of Illinois case

25  from 2011.  It's at 2011 Westlaw 2729153, and it dealt with
```

1    absolute immunity in the legislative context.  So I

2    acknowledge initially that it's not directly on point, but

3    the sentence that I think best exemplifies the problem that I

4    have with this is the following, which says that some courts

5    have applied broadly the testimonial privilege that a

6    company's legislative immunity while there is a balanced

7    legislative independence protected by the privilege with the

8    need for full development of the facts.  And it's that

9    struggle that I deal with here.

10         Judge Daniel has already concluded a couple things

11   in his motion to dismiss.  The first is that the defendants,

12   at least the commissioners, are entitled to absolute

13   immunity, and there is case law out there that indicates that

14   when absolute immunity is asserted, that discovery should

15   cease until that decision can be decided.  And the basis for

16   that is that we should not be interrupting the activities of

17   somebody who has asserted immunity in order to be engaged in

18   a discovery process because ultimately that discovery need

19   not be undertaken.

20         Now, plaintiff tries to distinguish that by saying

21   we've already determined immunity decision here, and that's

22   true, but that sort of -- that somewhat renders that line of

23   cases meaningless in that if the point of avoiding discovery

24   while the immunity question is pending is that you may

25   ultimately not need to reach that level of discovery, then

4

 1    that implicitly suggests that if the immunity question is

 2    decided in favor of immunity, that that discovery shouldn't

 3    take place.

 4         I also struggle with the issue of allowing

 5    questioning into the decision makers who are acting in

 6    essentially a judicial capacity as to their thought process,

 7    and I struggle with that because I think that the -- they are

 8    in a quasi-judicial function here, and I don't know of a

 9    single case where we would allow the deposition of a judge on

10    why the judge rendered the decision that the judge rendered,

11    and certainly not a decision that would go into the judge's

12    own personal feelings.

13         And the hypothetical that I pose is the following:

14    Assume a pro se plaintiff brings a case in front of me for a

15    1983 case alleging racial discrimination against an employer,

16    and I issue certain rulings that go against that pro se

17    plaintiff.  The pro se plaintiff then brings a second case.

18    The first case is not completed yet.  It's ongoing and I've

19    issued discovery decisions against that pro se plaintiff.

20    The pro se plaintiff then brings a second case alleging that

21    the reason I have -- 1983 case alleging that the reason that

22    I have ruled against him is because I have racial animus

23    against him.  And let's say that the allegations -- and

24    again, in this case we're just beyond the 12(b)(6) stage,

25    let's assume the allegations in my hypothetical are

1    sufficient to survive plausibility.  Now, hopefully they're

2    not true, but let's assume that they're plausibly pled and

3    you have to accept as true what's pled -- what is in there.

4              In that scenario should the pro se plaintiff be

5    entitled to depose me on why I reached the discovery

6    decisions that I made previously and going further to what

7    plaintiff wants in this case any views that I have on race or

8    if it was a discri- -- you know, religious discrimination

9    case on religion or any of those other things, and it strikes

10   me as going much too far.

11             So those are my thoughts on the defendant's side of

12   this case.  I don't think that the distinction that plaintiff

13   tries to draw, which is that this slippery slope isn't really

14   that slippery because the -- this is a unique case where the

15   commissioners who are also acting in a prosecutorial role and

16   they only want to get into the prosecutorial decision is all

17   that persuasive of a distinction because, again, take my

18   hypothetical, but change it a little bit.

19             Let's assume that a prosecutor is bringing a

20   prosecution against an individual.  That prosecution is

21   ongoing and the individual being prosecuted brings a 1983

22   case against that prosecutor alleging that that prosecutor's

23   prosecution decision is motivated by some improper purpose.

24   I don't see how -- when we have that factual scenario we

25   would allow that prosecutor to be deposed, but I don't see

6

1    how that's distinguishable from the instant case.

2            On the flip side, and this is where again I

3    struggle with this decision, is we have an opinion from Judge

4    Daniel I think concluding that there is sufficient evidence

5    of bad faith in this case to avoid the Younger abstention and

6    move this case forward.

7            The issue then becomes how does plaintiff

8    ultimately prove that aspect of bad faith without some

9    discovery into the grounds for the decision.  Now, I think --

10   and I'll certainly allow plaintiff to argue.  I think

11   plaintiff goes too far in suggesting that they should be able

12   to depose on -- the commissioners on their personal beliefs

13   on any of these topics because, again, the relevance of that

14   I find to be much less than the relevance of the question of

15   why they made a particular decision.

16           I see the relevance of why they made a particular

17   decision.  I think it is much more attenuated, their own

18   personal beliefs, to the relevance of this case, and I think

19   that that limited relevance is overcome by the desire to

20   protect the immunities involved in this case.  But when we

21   get into the grounds for the decision, to the extent that

22   we're making an as-applied challenge here, I do see how the

23   grounds for the decision can be relevant to the ultimate

24   question of whether the statute as applied is constitutional,

25   and I don't know how they get the information to support that

7

1  without some limited discovery into that what that

2  decision-making was.

3          Now, whether that limited discovery is depositions

4  or whether it is 30(b)(6) or whether it is e-mail

5  documentation, that's something that I'm trying to determine

6  here, which gets me back to the Metro Pony analysis, which is

7  the balancing at a legislative, in this case,

8  quasi-prosecutorial, quasi-judicial independence protected by

9  the privilege with a need for developing the facts.

10          So I lay that all out there because that's my

11  preliminary thoughts.  I've not made a decision yet as to

12  what I'm going to do with this so I want to hear further

13  argument, but I want at least those concerns to be addressed

14  by -- by each side, because I think that each side makes

15  valid points, and they're very difficult competing interests

16  and I don't see a case that's directly on point that deals

17  with anything quite like this.

18          I'll hear from plaintiff first.

19          MR. CAMPBELL:  Thank you, Your Honor.  I would like

20  to focus really on the fact that this is key information that

21  we need to prove our case.  At the heart of our case is an

22  allegation that there is the same sort of antireligious

23  hostility that the Supreme Court just struck down in the

24  Masterpiece One case.  In particular --

25          THE COURT:  Let me ask that because I want to get

1    to that a little bit to fully understand what is the heart of

2    this case.  Obviously the -- you're making two challenges.

3    You're making a facial challenge to the statute and an

4    as-applied challenge to the statute.  The facial challenge I

5    think has nothing to do with -- I think the information you

6    seek, the discovery you seek is completely irrelevant to the

7    facial challenge in this case because is the statute itself

8    facially constitutional or facially unconstitutional.

9           Getting to the as-applied, as I indicated, I see

10    some relevance to this information, but I'm not sure it has

11    important -- to say that it's the heart of this because I

12    think heart of this is, is it being applied in a

13    discriminatory manner, and that doesn't necessarily mean that

14    the commissioners have some sort of personal animus or even

15    necessarily there is subjective rationale for it.

16           For example -- and I equate it to a

17    disparate-impact-type analysis, that they may have a

18    completely arguably nondiscriminatory thought process as to

19    why they're doing this, but that nonsubjective

20    discriminatory -- and nondiscriminatory subjective thought

21    process results in a discriminatory outcome as applied by the

22    statute.

23           So I think that there -- again, I'm not saying

24    there is no relevance to this because if they're acting with

25    outright animus as a result of religion, that's relevant to

9

1    the -- to the as-applied, but I don't think it's necessarily

2    the entire tee of the as-applied challenge in this case.

3            MR. CAMPBELL:  Your Honor, I think there are two

4    ways to establish the hostility.  One is through objective

5    evidence of unequal treatment, which is something that the

6    Supreme Court considered in Masterpiece One, but I think also

7    there is -- there could be evidence of outright antireligious

8    animus, in internal discussions and other things of that

9    nature.  So I think it's -- I don't know that one or the

10   other -- they're exclusive.  I think that they're -- we can

11   proceed one way or we can proceed another way.

12           THE COURT:  So why can't you get that through the

13   30(b)(6) deposition?  In other words, what you want to know

14   is why a certain decision was made.  The -- and again, this

15   case is, you know, procedurally a unique position and what

16   you have remaining is the commissioners who are in their

17   official capacity, not in their individual capacity.  So --

18   and a commissioner sued in their official capacity is the

19   same as suing the State, in -- which is essentially what --

20   why did the State make this decision.

21           If that's the case, why isn't the 30(b)(6) witness

22   sufficient to answer that?  The 30(b)(6) witness must know as

23   required to be fully prepared on the 30(b)(6) deposition why

24   the State made the decision, and, therefore, I think the

25   30(b)(6) witness needs to speak to each commissioner and say

1    why do you believe this to be -- again, assuming that --

2    because we're in between the prosecutorial stage and the

3    adjudicatory stage.

4         So the question that they would need to ask each

5    commissioner is why did you believe there was probable cause

6    to believe that the refusal to bake the case was

7    discriminatory?  And each commissioner is going to need to

8    ask, and then that 30(b)(6) witness is going to need to

9    prepped on that question.

10        Why isn't that sufficient to get to your question

11   of are they acting in a discriminatory manner?

12        MR. CAMPBELL:  I think two things.  First of all,

13   the defendants have taken the position that the 30(b)(6)

14   witness would only testify about process and procedures,

15   (inaudible) which was practices and processes and we don't

16   think that that's sufficient.  So that's the first one.

17        THE COURT:  What does that mean exactly?

18        MR. CAMPBELL:  I'm not sure.  That's just the

19   language in their -- in their portion of the position

20   statement.

21        The other thing I would say is I don't -- Your

22   Honor, I don't know that it's sufficient to just allow us to

23   inquire into why the commissioners made the decision to file

24   the formal complaint.  I think it's also important to allow

25   to us inquire into the discussions that they had about it.

11

1    That to me is -- is very relevant to see their motivation,

2    because whatever their motivation might be stated now through

3    a 30(b)(6) witness might be very different than what they

4    might have said in an e-mail or in a communication somewhere

5    during the process.  So --

6              THE COURT:  Well, that's -- well, let's press that

7    a little bit.  There is two different possibilities.  There

8    is the first which is that during the deliberative process

9    they initially thought one thing.  Okay, let's take it out of

10   this case.  Let's take it to -- let's assume it's a warrant

11   that's brought before me, a search warrant, and it's

12   submitted and I e-mail my clerk and I say, you know, I don't

13   think this has probable cause because I think it's missing

14   this element.  My clerk then writes me back, sends me a case

15   law that says, No, that element is not needed or, No, this is

16   sufficient is, and then I ultimately issue the probable cause

17   determination.

18             What's relevant is why I issued the probable cause

19   determination, not necessarily that at one point earlier I

20   thought something else was relevant or something else was

21   irrelevant.  What matters is why I issued the probable cause

22   determination.

23             So the one possibility is that you're arguing that

24   no, no, what's relevant is everything leading up to it even

25   if they were later disabused of some earlier notion.  The

12

1    second thing you could be argue is that what the 30(b)(6)

2    witness is now saying is the grounds is not truly the grounds

3    and the 30(b)(6) witness is essentially committing perjury.

4            So which of those two are you -- are you arguing as

5    to why the 30(b)(6) witness is not sufficient?

6            MR. CAMPBELL:  Your Honor, I think it's the first

7    one.  It's the fact that whatever the 30(b)(6) witness might

8    say doesn't reflect all that went into the -- all that went

9    into the decision-making process.

10           And I think what's particularly important is when

11   we have objective evidence of bad faith, which is what we

12   have here, the State has taken the position that all we have

13   are allegations of bad faith.  I think that's not true.  I

14   think we have objective evidence of bad faith.  I think that

15   allows us more leeway to inquire into these things like the

16   discussions that commissioners and division officials had

17   about their decision to move forward with this case.

18           THE COURT:  Okay.

19           MR. CAMPBELL:  And, Your Honor, specifically on the

20   bad faith question, I would -- I would point the Court to --

21   I would focus specifically on disparate treatment.  This is

22   something that the Supreme Court specifically focused on in

23   Masterpiece One.  It said that one of the indicators of

24   hostility in that case was the difference in treatment

25   between how the State was treating Mr. Phillips and how it

1    was treating other cake shops that were allowed to decline

2    requests for cakes that had express messages in conflict with

3    their -- with their beliefs.

4            Now, when Judge Daniel looked at the bad faith

5    question, he focused specifically on that disparate treatment

6    analysis, and he said, and I quote on page 20 to 21 of his

7    order, As explained in Masterpiece One, this disparate

8    treatment reveals that Director Elenis and the defendant

9    commissioners' hostility -- I'm sorry, reveals Director

10   Elenis's and defendant commissioners' hostility towards

11   Phillips, which is sufficient to establish that they are

12   pursuing the discrimination charges against Phillips in bad

13   faith motivated by Phillips's suspect class, his religion.

14           So to dismiss everything that we've alleged about

15   bad faith and simply say that all it is is allegations, I

16   think that's -- that's not fair.  It's not fair to what Judge

17   Daniel said.

18           THE COURT:  No, I agree.  I think Judge Daniel went

19   further than simply saying allegations.

20           MR. CAMPBELL:  And, Your Honor, because of that I

21   believe that that's one of the reasons for getting more

22   information, whether you're looking at the deliberative

23   process privilege or the mental process privilege.  When

24   there are allegations and there is objective evidence of bad

25   faith, then that door opens to allow us to inquire into these

14

1    matters.

2          And so I would specifically focus on allowing us to

3    ask commissioners about their discussions concerning

4    plaintiffs and the decision to prosecute plaintiffs.  I think

5    that that is directly relevant to our case.  I think it goes

6    to the heart of again an aspect of our claims, the

7    hostility-based free exercise claim.

8          Your Honor, I'm trying to figure out the best --

9    the best place to go.  One of the other things that I would

10   raise at this point in time is that the defendants seem to be

11   taking a position -- I know that much of the position

12   statement and the supplemental briefing focused on

13   depositions, but there are a number of footnotes in the

14   position statement that go further that go to the issue of

15   written discovery.

16         So under their view, I think that they think that

17   documents, including documents that discuss between the

18   defendants discussing the plaintiffs would be immune from --

19   from discovery, and we think that that's going too far.

20   Under their view, an e-mail from a defendant disparaging

21   plaintiffs would be shielded from disclosure.  Even -- they

22   make the argument based on qualified immunity and

23   administrative and investigative functions, that even

24   administrative and investigative documents should be off

25   limits.  So it has left us wondering what documents they

15

1    believe are actually subject to discovery in this case.

2         Your Honor, we -- we firmly believe that

3    particularly in light of that there really is no way for us

4    to get this information about what the defendants considered,

5    what they discussed and the motivation that they had in going

6    forward with this pending state proceeding without a

7    discovery of those -- without a deposition of those

8    officials.  Nothing that they point to -- pointed to is being

9    sufficient is.  As I explained already, we don't believe that

10   the Rule 30(b)(6) is.  There are limits on that witness's

11   knowledge, and we don't think that that would suffice given

12   the circumstances that we have here.

13        THE COURT:  Why are there limits on that witness's

14   knowledge?  I mean, again, putting aside for a minute what

15   they want to limit because I'm not exactly sure what

16   practices and processes mean, but if I were to allow the

17   30(b)(6) to be deposed on the reasons for the decision in

18   this case to prosecute, why is that 30(b)(6) witness's

19   knowledge limited?  They're required to be prepared on that

20   topic.

21        MR. CAMPBELL:  Well, Your Honor, I think they're

22   inherently limited in terms -- well, again, we're looking for

23   not just the motivation, but also the discussions concerning

24   it, and I don't think that their knowledge on discussions is

25   going to encompass everything that the other commissioners

16

 1   talked about with others concerning this case.

 2            THE COURT:  Okay.

 3            MR. CAMPBELL:  We also believe that the documents

 4   that are still to be produced given the positions that the

 5   plaintiffs have taken will also be insufficient to enable us

 6   to establish the things we need to show in order to pursue

 7   the bad-faith claim and the hostility claim.

 8            Your Honor, you talked a little bit at the outset

 9   about the role of immunity in this.  I think you fairly

10   characterized our position when you said that we believe that

11   those immunity cases only apply to damages claims, and now

12   that the damages claims are gone, there is no longer a role

13   for those immunity cases.

14            THE COURT:  Do you have any case that says that?

15            MR. CAMPBELL:  Your Honor, we cited -- we cited

16   cases in our -- in our position statement that -- or, I'm

17   sorry, in our supplemental brief yesterday.

18            THE COURT:  Yeah, but I don't -- I don't think that

19   those cases are directly on point because I don't think that

20   they get to the underlying -- I don't think they get to

21   the -- go so far as to say you can therefore depose anybody

22   about their rationales for making a prosecutorial decision,

23   which is what -- which is what you want to do in this case.

24            MR. CAMPBELL:  Your Honor, I think that the cases

25   that we cite stand for the basic proposition that, for

1    example, the Supreme Court in the 1980 decision, and we cite

2    this on page 4 of our supplemental brief.  The decision is

3    Supreme Court of Virginia vs. Consumers Union of the United

4    States.  There the Supreme Court said the prosecutors enjoy

5    absolute immunity from damages liability, but they are

6    natural targets for Section 1983 injunctive suits since they

7    are the state officers who are threatening to enforce and who

8    are enforcing the law.  So cases like those, and that well

9    established principle.

10          THE COURT:  I agree it's well established principle

11    that you can seek to enjoin them.  Nobody is arguing that in

12    this case.  It's that step further of and, therefore, you get

13    to depose them about their rationale for doing something that

14    is the step further that you're seeking to go in this case

15    and I think the cases that you've cited.

16          MR. CAMPBELL:  Well, Your Honor, I do think that

17    there are cases that are close.  Certainly, this procedural

18    posture is unique and I would say for two reasons we think

19    that's the case.  One is findings of bad faith exception to

20    Younger are uncommon, and so that being the first point.  And

21    the second point being that most of the time States, while

22    they combined prosecutorial and adjudicative functions in the

23    same agency, most of the time these agencies will separate

24    those among people.  The thing that is unique here is that

25    the State has combined those in the commissioners, and

18

1    that we believe they shouldn't be able to hide behind that

2    now as a basis to insulate the commissioners from -- from

3    deposition.

4            But a few cases that I would point the Court to

5    with the acknowledgment that there are no cases directly on

6    point.  First case that I would point to is McGolrick vs.

7    Coke (ph).  That is a decision that we cited in our portion

8    of the position statement.  It's I believe a 1984 decision.

9            There it was dealing with a police officer who

10   challenged procedures by which they were dismissed for

11   brutality charges, and they were allowed written deposition

12   of some officials and they were allowed oral deposition of

13   others, and those officials included individuals who provided

14   over -- presided over the proceeding during which they were

15   dismissed, the prosecutor at that hearing and an assistant DA

16   who assisted citizens in suing those plaintiffs.  We believe

17   that that case provides support for what we're seeking to do

18   here.

19           I would also point the Court to North Pacifica vs.

20   City of Pacifica.  That's another case that we cited in our

21   position statement.  There it was involving a land developer

22   that was suing a city agency regarding an equal protection

23   violation.

24           Now, there they were allowed to inquire at trial

25   into the decision-making process, including the motive and

1    intent of the commissioners or board members in that

2    instance.  And this included asking questions about the

3    objective manification [sic] -- manifestations of the

4    decision-making process, and so what the Court said there,

5    for example, the plaintiff may ask the city council members

6    about what they said to others about the plaintiff, what they

7    heard, what they read, what they were told and so forth.

8         Now, the Court did say that they couldn't inquire

9    into just their subjective views, so candidly it did not go

10   exactly where we're asking this Court to allows us, but it

11   certainly did go far further than the plaintiffs want to

12   allow.

13        Your Honor, as a technical matter, while we review

14   and try to analyze the defendants' arguments, we seem them

15   coming in sort of two different waves.  The first wave is an

16   immunity-based argument, which I talked a little bit about

17   before and why we think that argument doesn't apply because

18   the damages claims are now gone, but the second wave of

19   argument is the deliberative process privilege and the mental

20   process privilege, and we think that those are -- I mean,

21   it's well established that those are qualified immunities --

22   or those are qualified privileges, I'm sorry.

23        Under the circumstances here, we think that they

24   are clearly overridden by the need for the information, the

25   inability to get it elsewhere and some of the other -- the

20

1   significance of the constitutional issues at stake and a

2   number of the other factors that the Courts have laid out

3   when considering this balancing.

4          It's interesting to us that the defendants have not

5   engaged with those factors.  They haven't even made an

6   argument to say why this qualified immunity shouldn't be

7   overridden under these circumstances, and I think there is a

8   strong argument, particularly in light of the objective

9   evidence of bad faith based on the disparate treatment, that

10  should allow us to engage in some of the discovery that we've

11  requested here.

12         Your Honor, the last point I'll make is just to

13  engage in what I believe is one of the defendants' primary

14  arguments.  They say that depositions are unwarranted because

15  the administrative proceedings are ongoing and that the

16  depositions might have an adverse impact on those.  There are

17  three responses to that.

18         The first one is, as we have said, we want to focus

19  on the commissioners' procedural work.  That's the intent

20  here.  We're not intending to ask them questions.

21         THE COURT:  Well, you want to ask them why they

22  think your client engaged in discriminatory practices,

23  correct?

24         MR. CAMPBELL:  We want to ask them and how they

25  arrived at the decision to file the formal complaint against

1   them.

2          THE COURT:  Which involves the question of why they

3   believe it's discrimination necessarily, which is also the

4   ultimate question that they're going to be asked in their

5   judicial role.

6          MR. CAMPBELL:  Your Honor, the ultimate question

7   that they're going to be asked is going to be based on all

8   the evidence that's before them at that time.  What we want

9   to know is what their thinking was based on the evidence that

10  was before them when they made the prosecutorial decision.

11         To me it's a distinction between forward looking

12  and backward looking.  We want to ask them about what they

13  said, what they thought, what they knew at that time.  We're

14  not asking them about what they're going to say, what they're

15  going to think or what they're going to do, and that's why we

16  think it's a workable line to allow us to inquire into the

17  prosecutorial functions and into the prosecutorial

18  discussions and motivations while leaving off the table the

19  yet-to-come discussions and considerations on adjudication.

20         THE COURT:  Okay, let's put this -- let's again

21  take this out of this context but into a similar context.

22  Prosecutor brings a -- files a complaint.  Let's assume they

23  don't need to go through an indictment process, where one of

24  the states where they can just file a felony complaint.

25         They file a felony complaint against an individual

1    alleging felony charges, robbery.  The individual who is

2    claiming files a separate federal lawsuit saying that it's

3    being brought out of some improper purpose.  Are you telling

4    me that that prosecutor can be deposed about the charging

5    decision, but that that charging decision, which necessarily

6    has to be based on some set of facts that were before the

7    prosecutor when they brought the charging decision is not

8    going to impact how the prosecutor may try the case down the

9    road?  I know that's not exactly the same because the

10   commissioners aren't trying it, they're deciding it, but

11   those facts are necessarily going to be intertwined and

12   necessarily going to get into how ultimately that prosecutor

13   tries the case.

14          MR. CAMPBELL:  Well, Your Honor, I think what --

15   one thing that is an important distinction is that neither

16   the commissioners nor the division director, the folks that

17   we want to depose, are involved in that prosecutorial process

18   from here forward.

19          THE COURT:  I get that, but nonetheless, the

20   same -- at least many of the same facts that is going to be

21   brought before them in their adjudicative role were

22   presumably the same facts that they used to make the -- for

23   lack of a better term, the probable cause decision in this

24   case.  So how do you question them about that probable cause

25   decision and the facts that they relied on there without

1   necessarily impacting what their ultimate decision is going

2   to be down the road because it's many of the same facts?

3   Maybe not all of them, but many of them.

4          MR. CAMPBELL:  Well, Your Honor, I think that goes

5   to the difference in the information that's in front of them

6   at the time.  They have different information when they make

7   the prosecutorial decision than they do when they make the

8   ultimate decision once an ALJ has rendered a proposed

9   decision.  And that to us is what makes it different.

10          In addition, when you -- when you consider what

11   we're -- what we're looking at specifically, we want to know

12   the discussions they've had, we want to know the things they

13   were considering, the information that they had available to

14   them at that time.  That again -- the discussions they had in

15   the past are different from the discussions they might have

16   when they're -- when they're seeking to ultimately decide

17   this case.

18          And the one other factor that I think distinguishes

19   this from your hypothetical is again the objective evidence

20   of bad faith.  The disparate treatment is something that is

21   objectively observable and something that Judge Daniel

22   already found and I think it's something that gives us leeway

23   to inquire into these matters.

24          And last point on that, Your Honor, is that the

25   defendants are concerned that allowing these depositions or

1    any of this sort of discovery will potentially taint the

2    state proceeding and we would say that the state proceeding

3    has already been tainted by the disparate treatment that

4    Judge Daniel recognized in his ruling.  That's all I have at

5    this point, Your Honor.

6          THE COURT:  Thank you.  I'll hear from defendants.

7    And in particular, and maybe to start with, what discovery

8    you agree is appropriate under, you know, the tag line

9    practices and processes, what exactly that entails.  Does it

10   entail e-mails in the past about that maybe indicates some

11   sort of hostility towards plaintiff or hostility towards

12   plaintiffs' religion or rationale for making that decision?

13         MS. FREDERICKS:  Yeah, Your Honor.  Just to begin,

14   because your clerk previously requested it, I'm Jacqueline

15   Rich Fredericks on behalf of the State officials.  And I

16   will -- I will go ahead and take your question with respect

17   to what -- what we do consider to be available in this

18   instance.

19         I think that we stand very firmly on the immunity

20   that's previously been awarded to each of our clients.  They

21   have been found to be prosecutorially immune because they act

22   quasi-prosecutorially as set forth in the briefing.  We also

23   believe that they're entitled to that quasi-judicial immunity

24   that the Court spoke of earlier.

25         In those instances, plaintiffs are not entitled to

```
 1    discovery; however, we have agreed to and are in the process

 2    of producing and will be producing today answers to

 3    plaintiffs' interrogatories and as well as their request for

 4    production.  They are receiving today 700 documents

 5    comprising thousands of pages that are responsive to the

 6    request that they have remitted.

 7           The parties actually discussed and agreed

 8    previously that no party would inquire of the other prior to

 9    June 26, 2017.  So plaintiffs indicate in their brief that we

10    are drawing a unilateral line and saying it's good enough for

11    one side and not the other.  We can engage in discovery from

12    your client, but you can't engage in discovery our client.

13    That is incorrect.  The parties are mutually engaged in the

14    process of discovery, the give and take of information as

15    contemplated under the federal rules.  And in this instance

16    we are providing responsive materials.

17           The parties agreed that materials between the

18    clients and their attorneys would not be produced pursuant to

19    attorney/client privilege, and at this time the parties have

20    agreed to hold off on logging that in order to foreground

21    pushing out to one another the most responsive materials that

22    we can.

23           So at this point they're receiving 700 pages -- 700

24    documents.  In addition, my clients have responded to their

25    interrogatories, which include:  Are you involved in any of
```

1    these many number of outside organizations?  We don't really

2    think that their participation or membership in those

3    organizations is relevant, much as the Tenth Circuit decided

4    when Judge Brimmer's affiliation with the Episcopal Church

5    was called into question and the Tenth Circuit said it's not

6    surprising that --

7              THE COURT:  Again, I agree with you on the issue of

8    personal participation in organizations and personal

9    subjective beliefs.  I think that that goes too far.  And I

10   think it goes too far, one, because I think that its

11   relevance is suspect for many of the same reasons the Tenth

12   Circuit said in that case, and two, because I think to allow

13   discovery into those type of matters sets a dangerous

14   precedent that will deter individuals from participating in

15   prosecutorial functions, judicial functions,

16   quasi-prosecutorial, quasi-judicial functions, so you don't

17   need to argue that because I agree with you on that point,

18   but that's different than what is being -- the more narrow

19   information sought here.  So let me ask a specific question.

20             If there is an e-mail from one commissioner to

21   another saying, I will never allow plaintiff to -- or I will

22   never turn down an allegation of discrimination against

23   plaintiff where he's asserting his Christian right because I

24   hate Christians, okay.  Is that discoverable under your view

25   of it?  And if the answer is, no, because of immunity, do you

27

 1   have any cases that say where bad faith has been found,

 2   because I think Judge Daniel found bad faith and I'm bound by

 3   his decision, and two, where the -- it's essentially a case

 4   against the official in their official capacity where a Court

 5   has shut down discovery or anything with respect to that

 6   component?  Because the cases that both sides are citing to

 7   me I think are not on point.

 8            Plaintiff is citing me a long series of cases that

 9   say that absolute or qualified immunity does not bar a suit

10   against an official in an official capacity.  I think that is

11   very well settled.  You are citing me a bunch of cases that

12   say an individual sued in their individual capacity when

13   given -- when asserting absolute or qualified immunity

14   discovery should be stayed, I agree with that as I indicated

15   at my last hearing.

16            What we have is that middle ground where we have an

17   individual being sued in their official capacity who has

18   immunity in their individual capacity, but not in their

19   official capacity, and whether discovery should proceed on

20   that.

21            Do you have any case that says, no -- that's not me

22   faulting you because also in my limited -- in the research

23   I've conducted, I can't find any case directly on point

24   either.  Again, the closest I found is the one that I said,

25   which in the legislative-immunity context has said we need to

28

1   balance the need for the discovery versus the need for the

2   privilege, and that's the closest I can find.

3           So do you have any case -- two it's a two-part

4   question.  The first is:  Do you have any case that says what

5   is at issue in this case?  And the second is:  If not, that

6   e-mail that I proposed, should that be turned over to the

7   plaintiff?  And if no, why not?

8           MS. FREDERICKS:  I'll answer your questions in the

9   order you framed them, Your Honor.

10          THE COURT:  If you can remember them.

11          MS. FREDERICKS:  Yes, absolutely.

12          THE COURT:  This is the downside --

13          MS. FREDERICKS:  I may ask you to repeat them, I

14   may circle back.

15          THE COURT:  This is how I conduct my hearings in

16   that I ask the question as it pops to my mind, and I know it

17   puts you all in a tough position, but I'm trying to get the

18   right answer.

19          MS. FREDERICKS:  That's all right.  It's a

20   wonderful mental exercise.

21          The short answer to your first question with

22   respect to directly on point of authority is, no, Your Honor.

23   I spent a significant amount of time over the past two and a

24   half weeks, and actually prior because we knew that this

25   would become an issue, researching that very issue, and I

1   have not found a case that is directly on point.

2           What I have found is the well-settled authority

3   with respect to immunity and why it applies and the

4   rationales.  And what I have done is extrapolated, as the

5   Court has similarly, the purposes and the public policy which

6   underlies that well-established authority, is that once

7   immune they should not be able to obtain discovery?

8           And as the Court rightly pointed out before, it is

9   very clear, and as this Court previously ruled, that until

10  immunity is settled, discovery should not be had.  In this

11  instance, immunity is settled and it is settled in favor of

12  the defendants who at this point remain only in their

13  official capacities, and as such discovery should not be had

14  from them on this settled issue, but I cannot provide the

15  Court with any particularly on-point case that is actually

16  tailored this exact circumstance, despite my best efforts and

17  quite a few hours.

18          THE COURT:  I can't find one either, so -- but

19  that's why I want to make sure that I wasn't missing one that

20  was in the brief --

21          MS. FREDERICKS:  Surely.

22          THE COURT:  -- somewhere that you believe to be

23  directly on point.

24          MS. FREDERICKS:  Surely.  And many of the Court's

25  hypotheticals and examples cut directly to defendants'

30

1    position here, and that is that the rationales which underlie

2    immunity are there and in place to afford officials to

3    conduct their business, and because as a matter of public

4    policy we want the free exchange of ideas and we want rich

5    discussion between and amongst those officials, and just as

6    you gave the example of, if you e-mail with a member of your

7    team and say, This is my initial thought and they e-mail back

8    and say, well, Let's consider this, and then you make your

9    ruling, our position is, that's fine, just as anyone in the

10   public can have a copy of this Court's final order, we are

11   willing to give over a copy of my client's decisions and have

12   and are reproducing those same materials in this instance.

13            THE COURT:  But what about the rationale for the

14   decision?

15            MS. FREDERICKS:  Yeah, and I think that this goes

16   to -- if we're talking about mental process privilege and

17   deliberative process privilege under Morgan and its progeny

18   and Overton Park, which is that narrow abrogation of Morgan

19   and its progeny where plaintiff has kind of staked their

20   claim, I believe that we fall in the Morgan camp.  We do not

21   fall in the Overton Park camp because Overton Park is very

22   narrow.  And in this instance, the reason that Overton Park,

23   the exception exists drilling down on that is because in that

24   instance there was not factual findings.  It was, this is my

25   decision and there was nothing that underlined that.  That's

1    not what we have here.

2         What we have here is probable cause determination

3    by the division director.  It is singled space a number of

4    pages in length and it sets out these are the facts as each

5    side has provided them.  This is the authority.  When I apply

6    this to that, I arrive at this conclusion, I find that there

7    is probable cause.  And so it's not a blank slate.  It's not

8    similarly positioned as an Overton Park, and it is for that

9    reason that the matter is distinguishable.

10        And so we believe that even under -- setting aside

11   the immunity analysis that we cleave to that decision and

12   believe that we are entitled -- my clients are entitled to

13   the protections of immunity, even if we get into Morgan, if

14   we get into these cases discussing that narrow abrogation of

15   Morgan and the mental process privilege, this is not that

16   situation because there is a holistic record.  Materials that

17   will be provided which provide the opportunity to inquire

18   into this, the probable cause determination, the division's

19   investigative file, including the daily entries into that

20   investigative file, the materials from both of the parties,

21   so both Ms. Gardenia (ph) as well as Mr. Phillips and their

22   respective counsels, all of those materials are being

23   provided.

24        In addition, they're receiving a probable cause

25   determination.  They're receiving the recommendation of the

1    division.  They have a copy of the complaint that was filed

2    on behalf of this Gardenia charge in the office of

3    administrative courts and that provides a rich explanation of

4    that charge.

5            At the end of this matter they will receive the

6    final findings of the administrative law judge, and then the

7    adoption or rejection of that by my clients in a public

8    meeting.

9            And so there is a richness of documentation that is

10   being provided and that evidentiary we -- is going to permit

11   plaintiffs to make that analysis of objectivity and whether

12   there is actual evidence of bad faith, but what they are

13   talking about is not that objective piece, but the subjective

14   piece, which is the mental processes, the thoughts, views,

15   beliefs and characteristics of my clients, which are not

16   relevant, and they don't get to inquire into.

17           THE COURT:  Why not?  Why are they not relevant?

18   In other words, if the allegation here is that the statute

19   facially -- and as I indicated, I think that the facial

20   attack, I agree with you, your client's subjective beliefs

21   are not relevant, but it's also being argued that it's as

22   applied is unconstitutional.

23           MS. FREDERICKS:  Sure.

24           THE COURT:  And if -- and part of that as-applied

25   challenge may be that the commissioners have a bias towards

33

1   my client based on his religion and, therefore, they are

2   applying the statute in a way that shows hostility towards

3   religion as the Supreme Court in Masterpiece One found was

4   being applied.  I mean, that was the basis for the

5   Masterpiece One decision, is that the commissioners -- I know

6   they're different commissioners, but the commissioners in

7   that case had applied the statute with an outward hostility

8   towards plaintiffs' religion.

9           If these commissioners are taking the same action,

10  are doing the same exact thing, why is that not necessarily

11  relevant as determined by the Supreme Court in Masterpiece

12  One?  In other words, why is it that they are prohibited from

13  taking the same line of attack that proves successful in

14  Masterpiece One and now Masterpiece Two?

15          MS. FREDERICKS:  They can, but what the High Court

16  found was that the objective statements, the public

17  statements in the duly noticed public meeting when the ALJ's

18  decision came back to my client clients for their final

19  decision-making, there is a public meeting, they engage in

20  debate, that is something that any member of the public can

21  attend, the parties, Joe Smith off the street can attend

22  that.

23          During that hearing that's where those statements

24  were made.  We don't have that at this point.  Those

25  objective statements they can have.  What they cannot have --

34

1    if this Court says something from the bench, for example,

2    that is a part of the record.  If this Court says something

3    in its written decision, that's part of the public record.

4    What they don't get to do is come in and say, I want to know

5    what you and your clerk talked about or I want to know what

6    your rough draft of your decision ultimately did not go with

7    looked like and why.

8            THE COURT:  Right, but the difference is that

9    the -- the difference is we have the finding by Judge Daniel

10   in this case of bad faith in that the Supreme Court in

11   Masterpiece One says that the on-the-record statements showed

12   hostility, but they didn't base it -- they based it on the

13   on-the-record statements, but not because it was on the

14   record.  In other words, they relied on on-the-record

15   statements to conclude there was hostility, but there was

16   nothing in the opinion that said that had those statements

17   been made privately or had those statements been made -- one

18   of them may have even been made to the TV media that they

19   would have reached a different outcome.

20           So if on the record they are showing a -- the

21   commissioners are showing a neutrality, but behind the scenes

22   are basing their decision on a hostility towards religion, I

23   think that Masterpiece One comes out the same way.  If

24   those -- if the judge in that case had allowed discovery

25   into -- and I know it's -- I know that it's a different case

 1    and different procedural posture in that case, but let's

 2    assume in Masterpiece One that the statements weren't made on

 3    the record, but plaintiff had evidence -- defendant in that

 4    case, had evidence that that was basis for the decision

 5    because they had a bunch of e-mails that had these exact same

 6    comments in them, but they weren't made on the record, I

 7    don't think Masterpiece One reaches a different outcome, do

 8    you?

 9            MS. FREDERICKS:  I don't think that they would have

10    those e-mails because those e-mails -- and this calls me to

11    address your second point in part, and here is why.

12            THE COURT:  I know you're saying the privilege

13    applies, but answer my question first.  Let's assume that

14    they had those e-mails.  Do you think the Supreme Court in

15    Masterpiece One reaches a different conclusion if those exact

16    same comments relied on by the Supreme Court in Masterpiece

17    One were off the record as opposed to on the record?

18            MS. FREDERICKS:  Potentially.

19            THE COURT:  Why?  How does that change the

20    rationale at all?

21            MS. FREDERICKS:  Yeah, because that cuts more to --

22    it would depend on -- classic, it depends from law school.

23    It would depend on the contents of the e-mail.  I think that

24    the factual findings in Masterpiece One are very fact

25    specific and they go to whether there was fairness and

1   neutrality in the decision that was made.  If someone is

2   expressing my belief -- in an e-mail, my belief system says

3   something different with respect to this, but I'll have to

4   set that aside when we make this decision, I don't think it

5   comes out the same way.

6          THE COURT:  But that's -- but that's not what I'm

7   proposing.  What I'm proposing is they make the same exact

8   comments in behind the records.  They don't have the

9   qualifier that you just put on it and that, you know, but my

10  belief system has something different, but the same exact

11  comments relied upon by the Court in Masterpiece One is in a

12  behind-the-scenes e-mail saying, This is why I'm reaching

13  this decision.  I'm reaching this decision because, you know,

14  the one that's cited is religion has been used to justify all

15  kinds of things.

16          So there is an e-mail out there that says just

17  that:  I'm reaching this decision, I don't buy this religion

18  defense because religion has been used to justify a whole

19  bunch of things, and that's in an e-mail from one

20  commissioner to the other commissioner.  And the Supreme

21  Court has that.  Do you think their decision is any

22  different?

23          MS. FREDERICKS:  Not fighting the hypo, in that

24  example, no, I do not.

25          THE COURT:  Okay.

1          MS. FREDERICKS:  However, I would say that they

2     still should not be able to obtain e-mails.  And perhaps I

3     should just address e-mails generally since we're very

4     focused on that --

5          THE COURT:  Sure.

6          MS. FREDERICKS:  -- because I think that might

7     alleviate this particular example.

8          THE COURT:  Okay.

9          MS. FREDERICKS:  Under Open Meetings Law in the

10    state of Colorado, the communications of the commissioners

11    have to take place in a duly noticed public meeting.  So

12    pursuit to Open Meetings Law, they are not to be e-mailing

13    about matters that are before them.  The only e-mails

14    sanctioned under open meetings on the state of Colorado are,

15    I can't be at next month's meeting, my kid has got something,

16    or, I'm going to be out of town, can I dial in?  Those are

17    the correspondences blessed by Colorado's Open Meetings Law.

18          Any kind of substantive discussion regarding

19    something that is before the Commission under Open Meetings

20    Law is obliged to take place at the duly noticed public

21    meeting.

22          THE COURT:  And is that verbal communications also?

23          MS. FREDERICKS:  I'm sorry.

24          THE COURT:  Is that verbal communications also?

25          MS. FREDERICKS:  Correct, because in the state of

38

 1    Colorado when it comes to public meetings for state public
 2    bodies, any discussion or meeting between two or more members
 3    on something of substance regarding a matter before them must
 4    take place in a duly noticed public meeting.  There is an
 5    exception for local public bodies, they get three.  State
 6    public bodies we have a higher standard, it's two.
 7            So the idea that there are rampant offline
 8    discussions is severely undermined by the reality that the
 9    commissioners handle public business at a public meeting.
10    They put up a notice on their website, they say, We're
11    discussing cases X, Y and Z on this date at this time.
12    Public can come to those meetings.  And so I think that that
13    addresses a large part of that.
14            So the e-mails that are being produced in response
15    to requests would be any e-mails to third parties.  It would
16    not include any e-mails with counsel because those -- the
17    parties have agreed and the long-standing privilege is, which
18    the Court is well aware, that those are privileged by
19    attorney/client privilege, but this idea that there is this
20    body of communication outside of a duly noticed public
21    meeting is simply inconsistent with the reality of how open
22    meetings work.
23            THE COURT:  So -- so then in theory, if I were to
24    order you to turn over any correspondence, including e-mail
25    correspondence, regarding plaintiff in this case, other than

1    ones protected by the attorney/client privilege, there should

2    be no problem with that because it's either going to be an

3    e-mail that says, I can't make this meeting, an e-mail to a

4    third party, or an e-mail that was submitted in violation of

5    the open records act, open records law and, therefore,

6    arguably isn't privileged anyways because it's done in

7    violation of Colorado law.

8            MS. FREDERICKS:  The Court doesn't have to make any

9    order with respect to that because they've actually

10   propounded an interrogatory and a request for production that

11   cuts directly to that, and we are Bates-labeling, (inaudible)

12   on point this afternoon and producing those very materials.

13           THE COURT:  Okay.  So you're not -- you're not

14   withholding any e-mails other than those on attorney/client

15   privilege with respect to that interrogatory -- or that

16   request for production, excuse me?

17           MS. FREDERICKS:  Attorney work product is also

18   being withheld --

19           THE COURT:  Okay.

20           MS. FREDERICKS:  -- if we weigh in on a draft of

21   something.

22           THE COURT:  Okay.

23           MS. FREDERICKS:  But I believe that's correct, Your

24   Honor.

25           THE COURT:  Okay.

1            MS. FREDERICKS:  And I -- there is a team of us who

2     reviewed several thousand pages and so I can't state

3     unequivocally that no one else saw something of that nature.

4            THE COURT:  Okay.

5            MS. FREDERICKS:  I would say that if there is an

6     assertion of deliberative process with respect to a

7     particular e-mail that arose outside of OML's mandates, then

8     we would have to assert that privilege with respect to that

9     particular document and that's something that the parties

10    would have to take on case-by-case basis.

11           THE COURT:  Okay.

12           MS. FREDERICKS:  But I'm not personally aware as I

13    stand here at the podium of that particular scenario.

14           THE COURT:  Okay.  And so then the next question

15    related is if the -- well, let's take the simplest example.

16    If the commissioners were deposed on the questions of

17    discussions that you've had about plaintiff outside of open

18    meetings, the answer should be:  I have -- and

19    attorney/client, so take those two situations out, either an

20    open meeting or an attorney/client privilege communication --

21    the answer should be:  I have not had any such discussions.

22           MS. FREDERICKS:  Correct.

23           THE COURT:  And if there were any such discussions,

24    then arguably that's not privileged because it's not being

25    conducted -- it's at least being conducted in violation of

1   Colorado's open record -- or Open Meetings Law?

2          MS. FREDERICKS:  I'm not comfortable going that

3   far, Your Honor.

4          THE COURT:  Okay.

5          MS. FREDERICKS:  But arguably there should not

6   be --

7          THE COURT:  Okay.

8          MS. FREDERICKS:  That's not how Open Meetings Laws

9   work.

10         THE COURT:  Okay, and if --

11         MS. FREDERICKS:  -- in the state of Colorado.

12         THE COURT:  And so then if we go one last step

13   further, if a 30(b)(6) witness were properly prepared and

14   spoke with every single commissioner about any discussions

15   that commissioner had with individuals about plaintiff, the

16   answer -- again, outside of attorney/client and outside of

17   open meetings, the answer should be that none of these -- you

18   know, nobody had any such discussions?

19         MS. FREDERICKS:  Two brief points and I'll answer

20   directly.

21         THE COURT:  Okay, sure.

22         MS. FREDERICKS:  The first is, I think because of

23   immunity, that type of question should not be asked.  I

24   believe that under Morgan, that that is an effort to pierce

25   both deliberative process and mental process for which there

42

1    is no on-point exception that plaintiffs have pled into at

2    this point, and then thirdly, I don't think that that's an

3    appropriate generally 30(b)(6) topic because an institution

4    is not obliged to necessarily know all the communications,

5    conversations or offline discussions for each of its

6    employees or members.  However, in a 30(b)(6) deposition, a

7    proper topic for the deposition would be with respect to what

8    is your process and was it followed here or what are your

9    procedures and what is your timeline and in matters of that

10   nature that go to the institutional knowledge of the agency

11   or of the board, of the division, and how they objectively

12   discharge their duties, not subjectively how they

13   discharge -- you know, what was the factor you considered

14   here -- did you consider -- you know, in this particular case

15   because I think that cuts directly to the heart of both

16   mental process and deliberative process and that those are

17   not proper topics for deposition for the individuals and not

18   an appropriate topic for a 30(b)(6) institutional deposition.

19          Does that answer the Court's question?

20          THE COURT:  Sort of.  I mean, it's -- again, in

21   theory, if they're not supposed to be having any discussions

22   outside of the open meetings, then if they -- if each of the

23   commissioners have complied with their -- with the law, then

24   the 30(b)(6) answer should be nobody had such discussions,

25   right?  I'm not asking you if that is the answer.  I'm not

1   asking you to waive any privilege or say that is the answer,

2   but in theory under Colorado law that should be the answer to

3   the question.

4           MS. FREDERICKS:  I think that's correct.

5           THE COURT:  Okay, all right.  I've interrupted you

6   plenty.  If there is anything further that you wish to add.

7           MS. FREDERICKS:  I just wanted to note because

8   plaintiffs rested essentially on the authority of McGolrick

9   as well as North Pacifica, and in addition to being out of

10  circuit, they're not on point.  They are cases interpreting

11  the exception, the Overland park exception to the Morgan

12  doctrine, they don't address immunity.  Factually those cases

13  were both -- underlying matters were concluded and so they

14  are factually dissimilar to this case.  And so for those

15  reasons I don't think that they are on point or dispositive

16  of this issue.

17          In addition, I do want to briefly address if I

18  belabor my time at the podium just a bit longer.

19          THE COURT:  No, no, that's fine.

20          MS. FREDERICKS:  I do want to address the issue of

21  factual findings versus allegations.  I don't dispute that

22  Judge Daniel made a finding that pursuant to 12(b)(1) the

23  plaintiffs in this case adequately alleged bad faith.  I

24  reserve the right to dispute that they have established

25  jurisdiction both before the district court and on any later

44

1    appeals, and so I want to make that clear.  I'm not

2    confessing or conceding any defenses that my client may have

3    and that we believe that they are entitled to under the law,

4    but what I am recognizing and what my client recognizes is

5    the Court made a decision pursuant to 12(b)(1) that there

6    were adequate allegations, but the standard set forth in

7    Overland Park and its progeny, in order to overcome mental

8    process and deliberative process is not mere allegation.  And

9    I wanted to provide, if I could, just some brief points with

10   respect to that.

11          In Info Reliance Corporation cited in both of the

12   parties' briefs at page 748 what was required was, quote,

13   well-grounded allegations based on, quote, hard facts and

14   more than innuendo or suspicion.

15          Under McGolrick, which plaintiffs have pointed to

16   at page 157, a prima facie showing of impropriety is

17   necessary.

18          Under Convertino vs. U.S. Department of Justice,

19   674 F.Supp.2d at 105 and that's DDC 2009, what was required

20   was other than allegations, that there were facts that the

21   employee -- other than allegations alleging that the

22   employees disliked the plaintiffs, there was no evidence of

23   misconduct, and to find otherwise and to permit discovery

24   would render the privileges meaningless based on those mere

25   allegations.

```
 1          A couple more cases that I would put forth for the
 2   Court's consideration with respect to what is that standard
 3   in order to overcome, in Hinckley vs. U.S., 140 F.3d 277 at
 4   285, which is DC Circuit 1998, there was a denial of the
 5   request for documents because, quote, no colorable showing,
 6   end quote, was made that the reviewing board in that instance
 7   had acted with impropriety, so there the standard was a
 8   colorable showing.
 9          Under Franklin Savings Association vs. Ryan, which
10   is 922 F.2d 209, 211 to 12, Fourth Circuit 1999, what was
11   required was a clear showing of misconduct.  And under Thomas
12   v. Cate 715 F.Supp.2d 1- -- I'm sorry, 1012 at 1022, which is
13   Eastern District of California 2010, what was required was,
14   quote, a strong showing, end quote, to overcome.
15          THE COURT:  And I agree with you that it's more
16   than just the basis of the allegations, but I think that
17   Judge Daniel's opinion goes further because what he relies
18   upon in finding this hostility is two things.  One, that the
19   Division and Commission brought this case because in spite of
20   the fact that Phillips declined to create the blue and pink
21   cake because of the religious objections to the cake's
22   messages, I don't think that's really truly in dispute in
23   this case.  Obviously the case had been brought.  I don't
24   think there is any denial that the stated grounds for
25   refusing to bake the cake is Phillips's stated religious
```

46

1   objections to it.  And the fact that Colorado has allowed

2   other cake artists to decline request to create custom cakes

3   that expresses messages they deem objectionable, and I don't

4   think that's in dispute on this -- in this case.

5         And so those are the two grounds that Judge Daniel

6   concludes demonstrate animus, and I don't think those two

7   grounds are truly in dispute in this case.

8         Now, what is in dispute is whether that is, in

9   fact, animus, but what Judge Daniel says, as explained in

10   Masterpiece One, the disparate treatment reveals Director

11   Elenis's and defendant commissioners' hostility towards

12   Phillips, and Judge Daniel is one level higher than me.  I

13   can't overrule that decision even if you want me to.  So I'm

14   bound by that decision as well as by Masterpiece One, and I

15   agree with you that simply the allegations may not be enough,

16   but I don't think those allegations relied on by Judge Daniel

17   are truly in dispute in this case.  Am I wrong on that?

18         MS. FREDERICKS:  I don't think you're wrong;

19   however, I do think that we're at a different stage.  There

20   was a decision made by Judge Daniel, and I'm not asking you

21   to overrule that, I understand -- I understand that would be

22   a bad call for everyone in the room, and I don't overrule my

23   boss either.

24         THE COURT:  I might not be in this job that much

25   longer.

1          MS. FREDERICKS:  Surely, and I would not be either.

2     I understand that and so I respect that, although I reserve

3     the right as I previously stated to disagree with it moving

4     forward throughout the litigation; but the decision made at

5     that stage under 12(b)(1) with respect to Younger is a

6     different analysis than the analysis that has to be made

7     currently under Morgan and it's a different standard.

8          The Court previously ruled that they have met the

9     threshold showing for an exception to Younger under 12(b)(1).

10    We're done with that at this point.

11         What we are arguing about today and what we urge

12    the Court to consider is that the standard for bad faith

13    under Morgan is a different standard than the standard for

14    bad faith that the Court analyzed under 12(b)(1) for Younger,

15    and so there must be another decision made under the

16    standards of proof that are required for those doctrines.

17         And what I would urge is that under the authority

18    that I did read out and under the standard of Morgan itself,

19    plaintiffs have not met that threshold showing, and so I am

20    not in any way asking you to dispute or take issue with that

21    prior showing.  I am simply saying that at this stage for

22    this purpose plaintiffs have not met the required showing to

23    move forward with what they're seeking at this time.

24         May I have a moment, Your Honor?

25         THE COURT:  Sure.

48

1          MS. FREDERICKS:  Does the Court have any further

2    questions for me with respect to that point or any other?

3          THE COURT:  I don't, I don't, thank you.  What I'm

4    going to do is I'm going to take a brief recess of hopefully

5    no more than ten minutes, and then I'll come back out and

6    issue my decision.

7          (Recess was taken).

8          THE COURT:  Okay.  Let me first state where I think

9    the law is on this, which is, as I think everybody indicates,

10   very unsettled with no clear guidance from any case, and then

11   I will turn to the -- ultimately what I'm going to do in this

12   case, which will probably make neither side happy, but I hope

13   balances the competing interest in this case.

14          There is essentially two immunities that are -- two

15   sets of immunities that are at issue here.  The first is

16   absolute immunity.  And here, as I indicated in oral

17   argument, both sides have presented me with cases that I

18   think set forth truth as to where the law is right now, but

19   don't cover the exact situation, and I don't fault the

20   parties for that.  I think the parties put quite a bit of

21   time in this and cited the most applicable cases that they

22   could find, but unfortunately, we're in, I think, unchartered

23   territory.  So I don't make any of this as a criticism to the

24   parties, because I think that the briefing was good, the

25   argument was very helpful here today.  We're just in

1    unchartered territory.

2              And the two truisms are, one, that absolute or

3    qualified immunity applies to an individual in their

4    individual capacity, but not to an individual in their

5    official capacity, and, two -- and that's the defendants'

6    position.  And two, that when an individual is sued in their

7    individual capacity and cites qualified or absolute immunity,

8    that discovery should be stopped, and that's the plaintiffs'

9    position.  And I think both of those are very settled

10   principles of law.

11             But what happens when we have what we have here,

12   which is an individual is sued in their official capacity and

13   they are granted absolute immunity or assert absolute

14   immunity?  And I don't think it much matters the difference

15   between the two, because I don't agree with the distinction

16   plaintiff is trying to make, which is once we have a decision

17   the protections from discovery simply go away.

18             And here I equate it to an individual, because

19   they're sued in their official capacity is essentially

20   being -- it's essentially the State being sued.  And there

21   needs to be some level of discovery that occurs to know why

22   the State made its decision, but I think some of the

23   protections at least, or at least some of the rationale for

24   why the immunity doctrine is there to begin with, which is to

25   allow -- and why discovery is stayed when the immunity is

50

1    raised, which is that these are governmental officials and

2    discovery can be disrupted, I think that that rationale still

3    holds to some extent.

4             And so my ultimate decision today attempts to

5    balance those two competing concerns, which is to protect

6    officials from disruptive discovery and to still allow

7    discovery into the rationale of the State's decision.

8             The second immunity that is at issue is the

9    deliberative process or mental process privileges.  And as

10   both sides indicate, those can be qualified, and one way in

11   which those can be qualified is if there is a finding of bad

12   faith.  And here I think that Judge Daniel has made that

13   finding.  Now, I agree with the defendants that it was based

14   on a different standard of the -- based on the pleadings in

15   the complaint.  And in certain cases that could be a very

16   important distinction.

17            I'll go back to one of the examples I used earlier,

18   which is the situation where I'm sued by a pro se plaintiff.

19   The pro se plaintiff may be able to avoid a motion to dismiss

20   by sufficiently alleging that I am bias, yet in order to

21   get -- to get past the mental process or deliberative process

22   privilege, in order to get to my communications with my law

23   clerks, they need to show more and submit something that

24   shows that I have the biases that alleged in the complaint.

25   And so I agree with defendants that those are different

1    standards.

2              The problems that the defendant has here is the

3    findings that Judge Daniel makes on page 20 and 21 is largely

4    based on undisputed facts in this case, and as a result,

5    while the standards are different, I think they're met

6    under -- I think Judge Daniel opinion concludes essentially

7    that they're met under either standard.  And so as a result,

8    then, we get into a situation where the need for the evidence

9    needs to be balanced against the government's interest in

10   confidentiality.

11             And then I go back to the Metro Pony case that says

12   this is ultimately what the Court needs to do is balance this

13   protection that is at issue with the need for the

14   information, and so how do we do that?  And this is how I am

15   going to do it.

16             I am going to deny plaintiffs' request without

17   prejudice to depose the commissioners, and I am going to

18   deny -- well, deny it in part with prejudice and in part

19   without prejudice.  I'm going to deny it with prejudice to

20   the extent that plaintiff seeks to inquire into the

21   commissioners' personal feelings about religion, about gay

22   rights, about the topics that are -- underlie the competing

23   Fourteenth Amendment and First Amendment issues here.

24             And I do so because I think that there is strong

25   precedent and there must be strong precedent that somebody

52

1    acting in either a prosecutorial or a judicial capacity must

2    have the ability to set aside those personal beliefs in order

3    to fairly make a prosecutorial or a judicial decision.  And I

4    think absent some finding, some clear showing, which we don't

5    have here, that these commissioners in -- that were involved

6    in this decision have a personal animosity or personal belief

7    that is so strong that it could not be overcome in making a

8    decision in this case, that I am not going to allow discovery

9    into those personal thought processes.  I think that creates

10   a very dangerous precedent and I think that it will

11   discourage individuals from going into prosecutorial

12   positions, judicial positions, quasi-prosecutorial or

13   quasi-judicial positions, because to subject your own

14   personal beliefs to such a deposition where there has been no

15   showing that these commissioners made a decision based upon

16   those personal beliefs I think will discourage that.

17        I am going to deny it without prejudice to

18   questioning these commissioners on decisions, discussions

19   that they had about this particular case, similar cases,

20   however we define that, and because I'm denying it without

21   prejudice, I need not define it here today, or plaintiff in

22   general.  And I'm doing that because I'm attempting to

23   balance the concerns of avoiding disruptive discovery, which

24   is at the heart of an immunity protections, with the needs of

25   plaintiff in this case.

53

1          Right now what I know is that the one side of this,

2    which is the avoiding disruptive discovery, weighs in favor

3    of not allowing that discovery.  What I don't yet know is the

4    need for that discovery because we're not far enough along in

5    this case yet, which turns to what I am going to allow.

6          I am going to allow a 30(b)(6) deposition that goes

7    into the rationale for the decision that was made and any

8    conversations that the commissioners had with each other

9    outside of open meetings and exclusive of attorney/client

10   communication.  So they can't ask about attorney/client

11   communications.  They can ask about discussions that are had

12   in open meetings, but those are -- that's in an open meeting,

13   so presumably they already have that; but any conversations

14   that occurred between commissioners outside of the open

15   meetings I'm going to allow, and I'm going to do it because,

16   one, I think that the relevance of that, if it exists, is

17   relevant.  If there are discussions that the commissioners

18   are having about why they are making a certain decision, that

19   goes potentially to the heart of the case.

20         That coupled with the bad faith that again I

21   believe Judge Daniel has found, overweighs any privilege

22   because, one, the privilege may very well be waived by the

23   fact that discussion shouldn't have occurred because it

24   violates the Colorado's Open Meetings Law, and two, to the

25   extent it's not waived, it's minimized because the purpose of

54

1   the Open Meetings Law is that all such discussions should be

2   occurring in open meetings and not behind closed doors.

3           Now, there may not be any discussions.  This

4   commissioner may have completely complied with the Open

5   Meetings Law in which case there are no such discussions and

6   the answer in the 30(b)(6) is, We haven't had any; but to the

7   extent that there have been, then I think that's waived.

8           I encourage, but I'm not making a finding on this,

9   for the 30(b)(6) deponent to also be prepared to address

10  discussions that any of the commissioners may have had with

11  third parties exclusive of things such as a spousal privilege

12  that would apply.

13          I don't know the answer to this, which is why I'm

14  not making a finding.  It may be that there were no such

15  discussions or very limited such discussions such that a

16  30(b)(6) witness would be able to get up to speed on any such

17  discussions.  If that's the case, and the 30(b)(6) witness is

18  capable of answering any questions about discussions that

19  commissioners -- and I'm talking current commissioners, the

20  defendant commissioners -- had about this case, then -- and

21  they're able to answer all of those, then I would be less

22  inclined to open back up the commissioners to depositions in

23  this case on those topics.

24          On the other hand, I recognize that if we're

25  talking hundreds of conversations such that a 30(b)(6)

1    witness cannot be prepared to answer that, then they can

2    simply say it's overly broad, I cannot answer that question;

3    but this why I'm denying without prejudice the questioning of

4    the commissioners because then I think that this topic may be

5    relevant to the extent that they're discussing with third

6    parties, plaintiff or this case, and if they are, I don't see

7    how that's privileged because it's certainly not the

8    deliberative process.

9            And with respect to the absolute immunity, again

10   what I think I need to do with where we are on absolute

11   immunity is balance the need for it versus the relevance for

12   it, and I think that that information could be relevant and

13   there could be a need for it, but I'm trying to balance that

14   with the protection, and here the protection I think is more

15   limited because it's discussing it with third parties as

16   opposed to part of a deliberative process.

17           Because documents have been discussed in this case,

18   if there are any documents that are communications between

19   commissioners, e-mails or correspondence not protected by the

20   attorney/client privilege, then I'm ordering those to be

21   produced because, again, I think that they shouldn't have

22   occurred -- again, these are between commissioners,

23   nonattorney client privileged -- they shouldn't have

24   occurred, clearly relevant, and so weighing the relevance of

25   them, which I think is relevant -- and again, these are

56

1    communications that talk about plaintiff or this case --

2    they're relevant and the privilege is diminished if not

3    waived entirely because it shouldn't have occurred outside

4    the Open Meeting Law.

5              Now, again, there may not be any.  If they

6    completely complied with the Open Meeting Law there wouldn't

7    be any, but if there are any, I'm ordering those to be turned

8    over.  They can't be withheld on the deliberative process

9    protection.

10             So that is ultimately how I am attempting to strike

11   the balance in this case.  I recognize it may require us

12   going back to the deposition of the commissioners at some

13   point, but I think I need more information in order to

14   evaluate the need for that information because I don't know

15   what is going to be produced in the documents that are going

16   to be turned over and what is going to come out in the

17   30(b)(6), and I think I need to see that first before I can

18   properly balance that last component of this, which is the

19   need to actually depose the commissioners.

20             But again, absent something coming out in the

21   discovery here that shows that any of the commissioners acted

22   upon, made their decision based upon a bias that they had,

23   I'm not going to allow the subjective -- their subjective

24   personal beliefs on any of this, okay.

25             Any need for clarification of my order here today?

 1          MR. CAMPBELL:  Just to make sure it picks up, Your

 2     Honor.  One point of clarification is when you were talking

 3     about inquiries that could be made and documents that should

 4     be produced, you talked about communications between

 5     commissioners about plaintiffs, this case, or the pending

 6     state proceeding?

 7          THE COURT:  Correct, correct.

 8          MR. CAMPBELL:  What about -- so -- just so that --

 9     and then you had a separate statement about the statements

10     that they would make with third parties.

11          THE COURT:  Right.

12          MR. CAMPBELL:  And you said both of the -- so I

13     guess my one question is, on the document production, I think

14     you were clear on the 30(b)(6) deposition that we could ask

15     to inquire about the communications with third parties.  How

16     does that fall on the -- on the communications involving a

17     commissioner and a third party and a document?  Is that

18     something that you believe should be produced?

19          THE COURT:  Let me ask, Are there any such

20     documents?

21          MS. FREDERICKS:  I think if they exist, they're

22     already being produced.

23          THE COURT:  Okay, all right.  Well, there is the

24     answer, then, they're being turned over already.

25          Any clarification from the defendants?

1          MR. SULLIVAN:  Yes, Your Honor, thank you.

2    Grant -- this is Grant Sullivan, assistant solicitor general

3    for the state officials.  Your Honor, you said that -- on the

4    30(b)(6) representative, I heard you to say that you're

5    allowing inquiry in two areas, one the rationale for the

6    decision.  Do I understand Your Honor's ruling to be you're

7    only allowing inquiry into kind of the objective

8    manifestations of the rationale?  So if there is a memo that

9    one of the commissioners prepared or that division staff

10   prepared or there is a transcript from one of their hearings,

11   inquiry into those topics is allowed, but I understood Your

12   Honor's ruling to disallow questions about their subjective

13   feelings about why they might have voted one way or another.

14          And just to be clear, there is a transcript of the

15   hearing.  I don't know if it has been prepared, but there is

16   certainly a recording of the hearing where commissioners

17   voted to proceed with this case in the state hearing.  It's

18   currently protected by Colorado's Executive Session Law, so I

19   have a question about that as well if you're trying to pierce

20   that privilege.

21          THE COURT:  I am going to order that document

22   because I think that that document is necessary to get to the

23   rationale behind the prosecutorial decision.  At this point

24   I'm going to leave the 30(b)(6) to the objective basis for

25   the decision as well as any communications that may have

59

1   occurred.

2           MR. SULLIVAN:  Sure.

3           THE COURT:  I am not ruling out the possibility

4   once we get through that of allowing some inquiry into

5   subjective basis for each individual commissioner decision,

6   but I think -- I need to see where this first round of

7   discovery gets us and to whether or not there is a need for

8   that further inquiry.

9           MR. SULLIVAN:  Understood.  And then the -- I think

10  Your Honor cleared up my second point.  So you're allowing --

11  the second point was any conversations amongst the

12  commissioners --

13          THE COURT:  Right.

14          MR. SULLIVAN:  -- which again, there should be no,

15  if Open Meetings Law has been complied with, but you're also

16  allowing inquiry amongst conversations between a commissioner

17  and a third party?

18          THE COURT:  What I'm doing with that is I'm finding

19  that no privilege prohibits that.

20          MR. SULLIVAN:  Right.

21          THE COURT:  I'm not reaching whether or not the

22  separate question of whether it's overly broad to be

23  conducted in a 30(b)(6) is a proper objection to it.  That's

24  something that you may want to waive because, as I indicated,

25  if -- if it is, if there is too many conversations to have --

60

1          MR. SULLIVAN:  Right.

2          THE COURT:  -- I'm not saying I will, but I may

3    very well down the road then say, okay, fine, these are

4    clearly relevant and now the burden on the commissioner -- on

5    each individual commissioner is outweighed by the need to get

6    this information and I'm going to allow the individual

7    commissioner's deposition; but I don't know, it could be that

8    none of the commissioners have talked about this case, you

9    know, other than to their spouse, and, therefore, there

10   aren't any communications.

11         MR. SULLIVAN:  Right.

12         THE COURT:  It could be that somebody is walking

13   around having, you know, everybody they meet, they say, Hey,

14   I'm on the Masterpiece Cake case and you want to know my

15   personal thoughts?  I just don't know where we are at this

16   point on that and so that's -- that -- the overly burdensome

17   for a 30(b)(6) I'm not deciding yet --

18         MR. SULLIVAN:  Understood.

19         THE COURT:  -- because I don't know the answer to

20   that question.

21         MR. SULLIVAN:  Understood.

22         THE COURT:  Okay.

23         MR. SULLIVAN:  That's all I had --

24         THE COURT:  Okay.

25         MR. SULLIVAN:  -- as far as clarifying.  We do have

61

1    a couple housekeeping matters.

2              THE COURT:  Okay.

3              MR. SULLIVAN:  But --

4              MR. CAMPBELL:  One more clarifying point.  Thank

5    you, Your Honor.  One thing that the defendants talked about

6    was that they produced or that we already had access to the

7    administrative file.  A number of things that were provided

8    to us so far, and it might be that what they're going to

9    produce today isn't similarly redacted, but, for example,

10   there is a communications log.  It's part of the

11   administrative file that has names and other information

12   redacted.  I'm just -- I'm wondering how your order applies

13   to that.

14             THE COURT:  I don't -- I don't know what's redacted

15   or why.  I think I've made clear my view of the balancing

16   here.  And so if -- if -- it's going to apply to the

17   documents too, so if that affects anything that has been

18   redacted, the defendant should unredact it.  If it doesn't or

19   if they're being redacted on other grounds and there needs to

20   be a -- you know, you need me to conduct an in-camera review,

21   we'll get there, but I can understand that things may have

22   been redacted prior to today that now given my ruling aren't

23   redacted anymore, but I don't know the answer to that because

24   I don't know the grounds for that.

25             MR. CAMPBELL:  Your Honor, that's absolutely fair.

62

 1    And then just one other point that we know of a document

 2    that's out there that we haven't received yet is a draft of

 3    the proposal cause determinations.  The e-mail

 4    communications, the log that the Division has indicated that

 5    it went through some -- some drafting, and so that's

 6    something that we requested in our written discovery request

 7    and I'm just curious to where that might fall in what you've

 8    said today.

 9            THE COURT:  I'll hear brief argument from each side

10    on that.

11            MS. FREDERICKS:  With respect to the first point

12    that counsel raised, the redacted log, that wasn't produced

13    by us.  That's something that was produced in the underlying

14    administrative case.  Our production is forthcoming today,

15    and so I think it would be premature to make any rulings with

16    respect to that until we see what we've actually produced,

17    and then if there was some privilege asserted, address it

18    point by point.  I don't anticipate that the particular item

19    he's discussing would bear redactions in our production.  So

20    that's first point.

21            As to the second point, the draft of the probable

22    cause is protected by attorney/client privilege and attorney

23    work product.  Billy Seiber is counsel to the Commission.

24    He's an AAG with the Office of the Attorney General, and he

25    provided and weighed in on specific language, and so I

63

1    believe that that is very clearly well protected by both his

2    attorney/client privilege with respect to communications

3    between and amongst himself and his client seeking advice as

4    well as it is his work product weighing in on the probable

5    language.

6              THE COURT:  Okay.  Then at least preliminarily I'm

7    going to find that it's covered by attorney/client and work

8    product.  If you think that that's improperly being withheld

9    on that, we can address that at a different time.

10             MR. CAMPBELL:  Okay.

11             THE COURT:  Okay.  All right.

12             MR. SULLIVAN:  Your Honor, if we could address a

13   couple housekeeping matters.

14             THE COURT:  Sure.

15             MR. SULLIVAN:  So one issue, I will have to confer

16   my clients, I don't know if we'll want to seek Judge Daniel's

17   review of your ruling today, but in the event that we did,

18   could we ask that the briefs that have been submitted to you

19   by e-mail be filed on the docket?

20             THE COURT:  Sure, sure.

21             MR. SULLIVAN:  Thank you, Your Honor.  The other

22   issue is counsel has been negotiating a protective order in

23   advance of today's production.  I think we have a couple

24   issues we're going to discuss after today's hearing.

25   Hopefully we can reach agreement on those issues --

64

1          THE COURT:  Okay.

2          MR. SULLIVAN:  -- and then will file it for Your

3    Honor's entry.

4          THE COURT:  It will need to get referred to me, but

5    when they do, we turn them around in a day or so, so it will

6    be in place soon.

7          MR. SULLIVAN:  Great, thank you, Your Honor.

8          THE COURT:  Okay.

9          MR. CAMPBELL:  Nothing else from me.

10          THE COURT:  All right.  Thank you everybody,

11    appreciate it.

12          (Whereupon, the within hearing was then in

13    conclusion at 12:38 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF TRANSCRIBER

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                      February 8, 2019

8    Signature of Transcriber              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25